## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

AIDS VACCINE ADVOCACY COALITION, et al.,
Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,
Defendants-Appellants.

————————————

GLOBAL HEALTH COUNCIL, et al.,
Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,
Defendants-Appellants.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

## EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE
## STAY AND FOR STAY PENDING APPEAL

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3388*

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................. 1

STATEMENT ...................................................................... 4

ARGUMENT ....................................................................... 9

    A.    The Balance of Equities Demands a Stay Pending Appeal and an Immediate Administrative Stay ...........................9

    B.    The District Court's New Theory Remains Legally Flawed on the Merits..................................................................14

CONCLUSION......................................................................26

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Six months ago, the district court in these cases granted a sweeping preliminary injunction requiring the government to obligate billions in foreign-assistance funds, including over $10 billion that expires on September 30, 2025. The government appealed and requested a ruling by August 15, 2025, to allow sufficient time to comply with the injunction if it was upheld. This Court granted expedition and ultimately vacated. The panel concluded that plaintiffs cannot enforce the Impoundment Control Act (ICA)—a statute that establishes a complex scheme for inter-Branch negotiation regarding whether, and to what extent, the Executive Branch must expend appropriated funds.

After the en banc Court denied review, the President transmitted to Congress pursuant to the ICA's processes a proposed rescission of approximately $4 billion of foreign-assistance funds. The government meanwhile made clear its intent to obligate the remaining funds before they expired on September 30. Yet plaintiffs moved for a *new* preliminary injunction, again seeking to require the government to obligate expiring funds by September 30—including funds covered by the President's rescission proposal that Congress is now considering. With just a few weeks

remaining before that deadline, the district court granted the requested injunction.

This injunction is even more problematic than the one that this Court vacated. This time, the deadline is less than a month away, a period that the government has repeatedly made clear is inadequate and that does not allow for meaningful appellate review. This further brinkmanship threatens yet further disruptions to the appropriations process and to the separation of powers. And this time, there is a pending rescission proposal under consideration, meaning the injunction has thrust an Article III court into an ongoing dialogue between Congress and the Executive Branch about foreign-assistance spending. The district court tried to blame this emergency on the government—but the government sought and obtained relief from the previous injunction in an orderly fashion; equity should not indulge plaintiffs with an extraordinarily expedited do-over after their original theory failed.

On the merits, the district court's new theory does not correct the flaws of the original injunction, and piles more on top of them. Instead of attempting to enforce the ICA, this time plaintiffs asserted—and the district court accepted—that the underlying appropriations statutes themselves require the government to obligate all appropriated funds, including funds

for which the President has submitted a rescission proposal to Congress under the ICA's process.  The court rejected the government's understanding of the ICA and premised its injunction on that conclusion.

The district court's new injunction plainly is barred by this Court's prior decision, which makes clear that the proper understanding of the ICA is a matter for the political branches to resolve, not for courts to inject themselves into at the behest of private plaintiffs.  The court compounded its error by extending its injunction to funds that the government has every intention of obligating.  And the court's new analysis of the appropriations statutes, which undergirded all of its conclusions, is mistaken on its own terms; neither plaintiffs nor the court made any serious effort to show that the relevant provisions were *mandates* rather than *authorizations*.

In light of the exigencies, we request relief from this Court by **5 PM tomorrow.**  Absent relief from this Court, the Solicitor General intends to seek relief from the Supreme Court as early as practicable on Monday.[1]

---

[1] The government filed motions to stay the district court's preliminary injunction pending appeal.  *See* 25-cv-402 Dkt. No. 142.  We will inform this Court promptly when the district court acts on those motions.  Plaintiffs oppose a stay.

**STATEMENT**

1. Congress has established a statutory scheme for organizing and implementing the United States' foreign-assistance programs. These authorities confer broad discretion on the President to determine how to align foreign-assistance programs with the United States' foreign policy. *See, e.g.*, 22 U.S.C. § 2382(c).

Since establishing that framework, Congress has regularly appropriated funds to allow the Executive Branch to implement those programs. For Fiscal Year 2024, Congress appropriated foreign-assistance funds in Division F of the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, 138 Stat. 460, 729. In general, that statute appropriates large sums for carrying out broadly defined types of foreign assistance. For example, Congress has appropriated nearly $5 billion for "necessary expenses to carry out the provisions of section 491 of the Foreign Assistance Act of 1961 for international disaster relief, rehabilitation, and reconstruction assistance." 138 Stat. at 742. Some funds remain available until September 30, 2025; other funds remain available until later dates or until expended.

2. Through the ICA, Congress has sought to impose certain requirements on the Executive Branch's decisions whether to obligate and expend appropriated funds. That statute provides that the President must "transmit to both Houses of Congress a special message" whenever he "determines that all or part of any budget authority" "should be rescinded for fiscal policy or other reasons." 2 U.S.C. § 683(a). That message must contain various information about the proposed rescission, such as "the amount of budget authority" involved and "the reasons why the budget authority should be rescinded." *Id.*

Upon receiving a special message, Congress may consider a bill to rescind some or all of the relevant funds. The statute provides procedures to ensure timely consideration of any such rescission bill. *See* 2 U.S.C. § 688. But if Congress has not "completed action on a rescission bill rescinding all or part of the amount proposed to be rescinded" within 45 days, then the statute provides that the amount proposed to be rescinded "shall be made available for obligation." *Id.* § 683(b). The statute provides for various enforcement mechanisms by the Comptroller General, a Legislative Branch official. *See id.* § 687.

3. Plaintiffs—organizations that have received, or have members who have received, federal funds for foreign-assistance work—brought this suit challenging various government actions related to such funds and moved for preliminary relief. In March 2025, the district court granted that motion in part. As relevant here, the district court ordered that the government "shall make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024." A5.

The government appealed and sought expedition, explaining that it needed relief by August 15 to ensure sufficient time to comply with the preliminary injunction, if this Court affirmed it, before the funds expired on September 30. Consistent with that timeline, this Court issued a decision on August 13 vacating the preliminary injunction in relevant part. The Court held that plaintiffs could not bring suit to enforce the ICA provisions governing when the Executive Branch must make funds available for obligation.

The Court explained that where Congress establishes a "complex and delicate" scheme that provides for judicial review for only some parties, that scheme may "by necessary implication preclud[e]" other parties from

seeking review under the APA.  A79-80 (quotation omitted).  Here, "the ICA created a complex scheme of notification," potential "congressional action," and "suit by a specified legislative branch official" after notice to Congress. A80.  "[I]t does not make sense that the Congress would craft a complex scheme of interbranch dialogue but *sub silentio* also provide a backdoor for citizen suits at any time and without notice to the Congress of the alleged violation."  *Id.*  Thus, plaintiffs "have no cause of action to undergird their claim that the defendants have acted contrary to law by violating the ICA." A82.

The government requested that the Court issue the mandate and resolve plaintiffs' petition for rehearing en banc expeditiously.  The government explained that steps to comply from September 2 onwards would inflict added irreparable harm on the government by requiring foreign negotiations and congressional notifications that would be costly to reverse. *See* A49-52.

4.  Last Thursday, the en banc Court denied plaintiffs' petition for rehearing en banc.  The President then transmitted to Congress a special message under the ICA proposing the rescission of approximately $4 billion in funds relevant to this case.  *See* A135-56.  In accordance with the ICA, the

President included a justification for each proposed rescission.  He explained, for example, that certain proposed rescissions involved funds related to programs that had "conflicted with American values" or been "contrary to American interests," had "bankrolled corrupt leader[s]" of foreign countries, or "interfered with the sovereignty of other countries."  *See, e.g.*, A142; A156.  That proposal thus gave Congress more than a month to consider the proposed rescission before the expiration of the funds.

The next day, plaintiffs moved for a new preliminary injunction.  And last night, the court entered one, requiring the relevant defendants to "make available for obligation and obligate, by September 30, 2025," the "expiring funds Congress appropriated for foreign assistance programs" in fifteen specific categories of appropriations "unless Congress rescinds the relevant appropriation through duly enacted legislation."  A41-42.

The district court concluded that plaintiffs are likely to succeed on their argument that the relevant appropriations statutes, of their own force, require the Executive Branch to obligate all of the funds appropriated.  A21-22.  Based on that understanding of the statutes, the court concluded that failing to obligate all of the appropriated funds was contrary to law, A21-26; constitutes agency action unlawfully withheld or unreasonably delayed, A28-

29; and supports mandamus relief, A29-31. The court concluded that plaintiffs may "brin[g] an APA action to enforce the appropriations acts," even though this Court's previous decision precludes plaintiffs from bringing such a claim "for violations of the ICA." A14.

In addition, the court concluded that the obligation it located in the appropriations statutes applied even to funds that the President has proposed for rescission under the ICA. A31-33. According to the court, that claim "is completely independent of whether Defendants have complied or failed to comply with the ICA's requirements." A16. *But see* A31-33 (rejecting, based on the court's interpretation of the ICA, the government's argument that it need not obligate funds proposed for rescission).

## ARGUMENT

### A. The Balance of Equities Demands a Stay Pending Appeal and an Immediate Administrative Stay

An immediate stay is warranted here, because the district court's injunction requires billions of dollars to be obligated in less than a month, even though Congress is actively considering the President's proposal to rescind a large segment of those funds. There is no way for the government to comply with the injunction without creating major inter-Branch conflict and inviting severe foreign-relations harm. And this emergency is entirely

attributable to plaintiffs' decision to spend months defending a fundamentally flawed injunction. In these circumstances, equity forecloses relief, particularly where plaintiffs' only interest is preserving the mere *opportunity to compete* for funds they have no entitlement to receive.

1. The district court's injunction requires the government to obligate many billions of dollars in foreign-assistance funds in the next four weeks, including approximately $4 billion that the President has proposed that Congress rescind.

That direction unquestionably harms the government and the public by inserting an Article III court into sensitive foreign-affairs decisions. If the government ultimately prevails on appeal, there would be no guarantee that any funds that the government obligated or disbursed in the interim would be retrievable after the fact. *See Department of Educ. v. California*, 145 S. Ct. 966, 968-69 (2025). Those concerns are particularly acute given plaintiffs' representations about their financial insolvency and given that many grant recipients (or subrecipients) reside overseas.

The harms are even more stark with respect to the funds that the President has proposed rescinding. As to those funds, the injunction pretermits an ongoing inter-Branch dialogue pursuant to the ICA. Indeed, it

will force the government to take virtually irrevocable steps toward obligating these funds—and ultimately to obligate them—even if Congress is still mulling over the rescission proposal within the ICA's 45-day window. That doubly offends the separation of powers. Not only did the district court inject itself into a political process where the judiciary lacks comparative expertise, but it did so in the context of foreign policy decisions that have "long been held to belong in the domain of political power not subject to judicial intrusion or inquiry." *Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948). Indeed, the injunction threatens to override the public interest in ensuring that tax dollars are not spent towards foreign-aid projects that "conflic[t] with American values," are "contrary to American interests," and undermine the President's foreign policy. *See* A135-56.

And the harms that accompany pretermitting that inter-Branch process will arise immediately as the government attempts to comply with the injunction. As the government previously explained to this Court, the process of obligating the covered foreign-assistance funds will often "require direct negotiation" or consultation "with foreign states or international organizations" as well as separate consultations with, and notifications to,

Congress—and, to meet the September 30 deadline, those consultations and negotiations must begin nearly immediately. *See* A50-52. But it "would cause immense irreparable harm to the foreign policy of the United States to enter into negotiations to award a large sum of money to a foreign state or international organization" only "to renege at the last moment" if the government obtains relief or Congress rescinds the funds. *Id.* And an injunction requiring the agencies to notify Congress about proposed spending even as the President has notified Congress that he proposes to rescind the same funds creates obvious harm on the Executive Branch's ability to conduct the Nation's foreign policy with a single voice.

Although the district court held out the possibility of solving this self-created emergency by extending the availability period past September 30, *see* A42, that result would not alleviate the underlying separation-of-powers harm or ameliorate the problem created by requiring the government to take inconsistent steps to both pursue the pending rescission and comply with the injunction in the meantime. And regardless, at least where, as here, plaintiffs have no "right to an amount payable" from the funds at issue, 31 U.S.C. § 1502(b), it is far from clear that a court has that authority, *see Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024). The government

cannot be forced to mitigate the harms caused by one unlawful order by requesting another potentially unlawful order.

Even for the substantial funds that the government intends to obligate, the district court's injunction will irreparably harm the government. The court apparently intends to exercise significant oversight over the government's efforts to determine how best to expend the funds, once again inserting itself into sensitive foreign-affairs matters. The agencies "are making best efforts to obligate" the funds that are not included in the rescission package and "expec[t] to obligate substantially all these funds before their expiration," but it is possible—as it always is—that "some amount of" the covered funds may "laps[e] for operational or other reasons." A159-60. Although the district court clarified that "the injunction will not be violated if nominal amounts remain," A40, there is no basis for requiring the agencies to correctly predict—on pain of contempt—what the court will view as a "nominal" amount to leave unspent and what lapses may be properly justified.

2. As with the prior injunction, the directive in the current injunction is hardly tailored to address plaintiffs' asserted injuries, as it requires the government to obligate large swaths of funds that may or may not ultimately

redound to plaintiffs' benefit. Thus, even if plaintiffs have standing because they could theoretically compete for the funds, their claim that an injunction would redress irreparable harm remains unacceptably attenuated. Indeed, it is even more attenuated now, because the short time remaining before September 30 makes it impossible for the funds to be obligated through a competitive process; if necessary for compliance, the funds would be obligated through mechanisms such as pre-existing instruments with already-established foreign partners or foreign states. A159-60. There is no basis in equity for ordering the government to make available for obligation funds that plaintiffs would never be able to obtain.

### B.    The District Court's New Theory Remains Legally Flawed on the Merits

The district court's injunction covers two discrete sets of funds: (1) funds that the President has proposed to rescind under the ICA (and, thus, that the agencies do not intend to obligate while the ICA's processes play out); and (2) funds that have not been proposed for rescission and that the record shows the agencies do intend to obligate before expiration. According to the district court, the appropriations statute requires the agencies to obligate both sets of funds before they expire, and plaintiffs may

validly seek an injunction to enforce that obligation. The district court was incorrect on all fronts.

1. Plaintiffs have no cause of action to force the government to obligate funds that the President has proposed for rescission under the ICA, and they cannot end-run that problem through artful pleading.

Plaintiffs may not seek APA review if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). As this Court explained in this case, Congress may impliedly preclude some parties from seeking APA review by establishing a "complex and delicate" scheme that provides for judicial review only by others. A79-80 (quotation omitted). The ICA establishes just such a "complex scheme of notification," potential "congressional action," and "suit by a specified legislative branch official" after notice to Congress. A80. "[I]t does not make sense that the Congress would craft a complex scheme of interbranch dialogue but *sub silentio* also provide a backdoor for citizen suits at any time and without notice to the Congress of the alleged violation." *Id.*

Those principles preclude plaintiffs from obtaining an injunction requiring the Executive Branch to obligate funds *even as the Executive Branch pursues rescission of those funds through the ICA's framework*. Pursuant to that statute, the President has notified Congress of his proposal

to rescind certain funds and his reasons for doing so. And under that statute, the Executive Branch is not required to obligate the covered funds unless the statutorily prescribed 45-day period passes without Congress's enactment of a rescission bill. *See* 2 U.S.C. § 683.

During that period, Congress may respond to the President's proposal through any number of actions, including enacting a rescission bill for all or part of the proposal, acquiescing in the President's intent to withhold the funds through their expiration date, extending the period of availability for funds, or employing its own tools to pressure the President to obligate some or all of the covered funds. Any disputes between the President and Congress about these funds must be "hashed out in the hurly-burly, the give-and-take of the political process between the legislative and the executive." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 859 (2020) (quotation omitted).

Everything about that scheme suggests that Congress did not want private parties to interfere with that process by seeking an injunction requiring the obligation of funds just as Congress considers the President's proposal. Even more than prospective private enforcement (which this Court has already held precluded), any attempt by private parties to leverage the courts to pretermit a specific, ongoing rescission process plainly

disrupts the "complex scheme of interbranch dialogue" established by the ICA. A80.

In nonetheless concluding that plaintiffs' claim could proceed, the district court stated that plaintiffs' claim "is completely independent of whether Defendants have complied or failed to comply with the ICA." A16. That is plainly incorrect.

First, it is irrelevant whether plaintiffs' claim could be described or adjudicated without reference to the ICA. The relevant question is whether Congress intended to "foreclos[e] review" of the particular claim. *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984) (quotation omitted). On that score, this Court's previous analysis applies with additional force here. The district court nowhere explained how Congress could possibly have intended for courts to interfere in ongoing inter-Branch processes at the behest of private parties.

Moreover, the district court was wrong that plaintiffs' claim is independent of the ICA. The specific question presented as to these funds is whether, now that the ICA's procedures have been engaged, the Executive Branch is required—and can be compelled by court order—to obligate the funds before those procedures run their course. In (incorrectly) concluding

that such an obligation existed, the court entirely relied on its understanding of the ICA.  Thus, the court stated that "it is congressional action—not the President's transmission of a special message—that triggers rescission" under the ICA; that the government's contrary view "finds no support in the text of the ICA"; that such a result would "undermine the very purpose of the ICA"; and that, in these circumstances, the asserted obligation to make funds available "prevails over the privilege" granted by the ICA "to temporarily withhold the amounts."  A31-33 (quotation omitted).

Merits aside, plaintiffs' asserted entitlement to relief turns entirely on their understanding of the ICA.  Conversely, if the government is correct about the meaning of the ICA, then plaintiffs have no claim.  Either way, the district court's injunction is entirely bound up in the ICA, which this Court has already held plaintiffs may not enforce.

Even if plaintiffs could pursue such a claim, it would fail on the merits, because the ICA permits the Executive Branch to withhold funds included in a special message until after that statute's procedures run their course.  The statute makes clear that the President may "determin[e] that all or part of any budget authority" should "be rescinded" and that, if he so determines, he must transmit "a special message" to Congress.  2 U.S.C. § 683(a).  Once that

message is transmitted, the statute provides that the covered funds "shall be made available for obligation" if Congress fails to enact a rescission bill within a statutorily prescribed 45-day period. *Id.* § 683(b).

Thus, after transmission of a special message, the President is not required to make available funds for obligation unless and until the statutory period expires. Nor may courts subject agencies' decisions to withhold funds included in such a message to arbitrary-and-capricious review; the President has determined that the funds should be rescinded, and any decision to withhold funds in the meantime flows naturally from the President's transmission of the message. Any other result would conflict with the statutory text and interfere with the ICA's calibrated negotiating process.

Consistent with that understanding, GAO explained shortly after the enactment of the ICA that if the President transmits a special message "concerning amounts that [a]re near their date of expiration," the "President may withhold the budget authority from obligation for the duration of the 45-day period," even if that means the funds expire. *Impoundment Control Act—Withholding of Funds through Their Date of Expiration*, B-330330.1, 2018 WL 6445177, at *9 (Comp. Gen. Dec. 10, 2018) (recounting various GAO opinions from 1975 and 1976). If Congress wishes for the funds to remain

available, it "must take affirmative action to prevent the withheld funds from expiring." *Id.* Although GAO has more recently retreated from its contemporaneous understanding and overruled those opinions, *id.*, that contemporary understanding—together with Congress's failure in the ensuing decades to take GAO up on its suggestion to address this issue by amending the ICA—is indicative of the ICA's meaning.

The district court held otherwise based on its view that, under the ICA, congressional action on a rescission bill completes the process of rescinding funds. A31-32. That is true but irrelevant. As GAO recognized decades ago, the ICA necessarily contemplates that the President has authority to withhold funds pending Congress's consideration—for the full statutory period—of a rescission proposal. Consistent with that view, the ICA's text explicitly requires the obligation of funds only at the *end* of that period— whereas the injunction here requires obligation of funds in the meantime.

Nor was the district court correct that allowing the Executive Branch to withhold funds pending the completion of that process would "undermine the very purpose of the ICA." A32. As explained, the ICA allows for inter-Branch dialogue over the disposition of funds, and withholding funds for the statutory period advances the ICA's purpose by allowing Congress time to

consider its response to any proposal.  If the funds expire in the meantime but Congress would prefer that they be expended, Congress has ample political tools at the ready.  And in determining whether and how to enlist those tools in any particular dispute, Congress may properly calibrate any response.

2.  Plaintiffs' claims separately founder on their inability to identify any unlawful final agency action.  To justify a mandatory injunction, a court must first conclude that "an agency failed to take a discrete agency action that it is required to take."  *Norton v. Southwestern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases omitted).  Such a remedy is "normally limited to enforcement of a specific, unequivocal command."  *Id.* at 63 (quotation omitted).

Plaintiffs cannot evade this standard by challenging the government's "unilateral decision not to spend the funds Congress has directed in the appropriations acts."  A18.  That is a claim of "agency action unlawfully withheld," 5 U.S.C. § 706(1), not a challenge to any final agency action.  *See Nat'l Treasury Employees Union v. Vought*, No. 25-591, 2025 WL 2371608, *12 (D.C. Cir. Aug. 15, 2025) (the APA does not permit review of "an abstract decision 'wholly apart from' any 'specific agency action, as defined in the

APA'"").  And as the district court recognized, the record reflects that the government has made no such decision for funds that are not included in the rescission proposal.  *See* A19; *see also* A159-60.  As to those funds, the court did not even attempt to explain why the government should be held to have reached a final agency action, much less an unlawful one.  The government still must decide exactly how to obligate the funds, and there is no dispute that the government has until September 30 to do so.

Thus, as to these funds, there is plainly no reviewable APA action, let alone grounds for an injunction.  The district court could suggest otherwise only by lumping them in with other funds that the President proposes to rescind.  Plaintiffs' inability to identify any agency action that is unlawful even under their own theory should have led the district court to deny relief.

3.  As to all the relevant funds, the statutes at issue here do not provide the sort of "specific, unequivocal command," *Norton*, 542 U.S. at 63 (quotation omitted), that would be necessary to justify an affirmative injunction.  By and large, the Further Consolidated Appropriations Act of 2024 appropriates sums of money for broad purposes.  Among other things, Congress appropriated billions of dollars "[f]or necessary expenses to carry out" provisions of the Foreign Assistance Act "for global health activities";

"for international disaster relief, rehabilitation, and reconstruction assistance"; and for development assistance.  Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, div. F, 138 Stat. 460, 740, 742.  On their own, those broad appropriations are *authorizations* to spend; they generally lack any mandatory language directing the expenditure of funds.

The district court's contrary conclusion rested on the erroneous assumption that the mere fact of an appropriation generates a mandate to obligate and expend the appropriated funds.  As the government has previously explained, *see* Opening Br. 35-57; Reply Br. 10-24, that assumption is untenable.  It is no accident that the Appropriations Clause was phrased as a limitation on the Executive Branch's ability to draw money from the Treasury without an authorizing appropriation.  The concept of appropriations grew out of a concern by the English Parliament in the 17th century about overspending by the King.  *See Consumer Fin. Prot. Bureau v. Community Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 427-28 (2024).  The district court itself cited a case recognizing that the Appropriations Clause "was intended as a restriction upon the disbursing authority of the Executive department."  *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937).

The district court repeatedly invoked *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013), *see* A21-22, A26, but that case does not support reading the appropriations statute as an affirmative command to force expenditures. In *Aiken County*, this Court explained that a court can order "an agency to perform a statutorily mandated activity," even if the agency must spend money to fulfill that mandate, "so long as there is appropriated money available." 725 F.3d at 259-60. Here, plaintiffs are not seeking compliance with some underlying substantive obligation imposed by statute. Nor could they—Congress in the authorizing statutes recognized that the President may furnish foreign assistance "on such terms and conditions as he may determine." *See, e.g.*, 22 U.S.C. § 2151a(a)(1). That broad conferral of authority accords with the President's primary role in the conduct of foreign affairs. *See American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003).

Rather, plaintiffs and the district court essentially give dispositive weight to the fact of an appropriation by itself. For the reasons discussed, that approach is misguided. Indeed, it is telling that the district court relied on the ICA to support this background assumption. *See* A25. As its name suggests, the Impoundment Control Act was enacted to limit the President's authority to decline to expend funds appropriated by Congress by requiring

him to engage with Congress through the rescission process.  If every appropriations statute already placed such limits on the President by default, then the ICA would have served only to provide an expedited mechanism to rescind funds—clearly not its intended function.

The district court's meager textual analysis of some of the language in the relevant appropriations act fares no better.  The court cannot derive a mandatory requirement to obligate and spend from the commonplace provision that funds be apportioned to specific agencies or available until specific dates.  *See* A24.  And the provisions stating that appropriations "shall be made available in amounts specifically designated" by a set of tables, Further Consolidated Appropriations Act of 2024, div. F, § 7019, 138 Stat. at 771, reflect Congress's desire to designate different portions of the top-line appropriations for particular purposes, not a direction that the Executive Branch expend all of the appropriated funds.  *See* 2 GAO, Principles of Federal Appropriations Law 6-30 to 6-31 (3d ed. 2006) (GAO Red Book) (explaining that the use of such "shall be available" language may reflect a floor or a ceiling or both depending on context).

The district court also noted that Congress "sometimes use[s] language" like "not to exceed."  A24-25.  This language generally imposes a

cap on the use of a lump-sum appropriation for particular purposes. *See* GAO Red Book 6-27 to 6-29. Like the "shall be made available" language, it thus provides Congress's views on how to divide up a broader appropriation among potential objects, not on whether some or all of the appropriation must be spent in the first place. In short, the court was wrong to liken this to a case where the relevant statutes directed that the funds be spent. *See Train v. City of New York*, 420 U.S. 35, 42-43 (1975). That faulty premise is yet another reason why the injunction cannot stand.

## CONCLUSION

For the foregoing reasons, the Court should grant an immediate administrative stay of the district court's order and a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney*
   *General*

DANIEL TENNY

 */s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7260*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3388*
   *sean.r.janda@usdoj.gov*

September 2025

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit Fed. R. App. P. 27, because it contains 5183 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
Sean R. Janda

# ATTACHMENTS

**TABLE OF CONTENTS**

Memorandum Opinion and Order (Sept. 3, 2025) ..............................................A1

Notice of Filing (Aug. 25, 2025) .........................................................A44

D.C. Cir. Amended Opinion (Aug. 28, 2025).................................................A54

Notice of Transmittal of Special Message (Aug. 29, 2025)...........................A135

Declaration of Jeremy Lewin (Aug. 31, 2025) .............................................A157

Notice of Appeal (Sept. 4, 2025) .....................................................A161

District Court Dockets ...................................................................A163

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AIDS VACCINE ADVOCACY
COALITION, *et al.*,

        *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

        *Defendants*.

Civil Action No. 25-00400 (AHA)

GLOBAL HEALTH COUNCIL, *et al.*,

        *Plaintiffs*,

    v.

DONALD J. TRUMP, *et al.*,

        *Defendants*.

Civil Action No. 25-00402 (AHA)

## <u>Memorandum Opinion and Order</u>

      This Court previously granted a preliminary injunction based in part on the conclusion that

Defendants violated the separation of powers by unilaterally declining to spend congressionally

appropriated foreign aid funds. On appeal, the D.C. Circuit panel vacated and remanded. The panel

did not express disagreement with the Court's constitutional analysis, but held Plaintiffs lacked a

cause of action to bring a constitutional claim. *Glob. Health Council v. Trump*, __ F.4th __, __,

No. 25-5097, 2025 WL 2480618, at *9 (D.C. Cir. Aug. 28, 2025). After a petition for rehearing en

banc and consideration by the full court, the panel amended its opinion to make clear that it did

not preclude Plaintiffs from pursuing statutory claims that Defendants' unilateral decision not to

spend funds as Congress directed in the relevant appropriations acts violated the Administrative Procedure Act ("APA"). *Id.* at *11 n.17. The Circuit accordingly remanded for consideration of those statutory claims.

On remand, the Court is first and foremost obligated to follow the Circuit panel's mandate. And the Court is also mindful of statements respecting en banc review recognizing the importance of expeditious consideration of Plaintiffs' appropriations-act based APA claims. *See* Order, *Glob. Health*, No. 25-5097, at 6–7 (D.C. Cir. Aug. 28, 2025) (Pan, J., dissenting from the denial of rehearing en banc) (noting that "the full court's decision is based, in large part, on the panel's revision of its original opinion" and that Plaintiffs "may well secure relief more quickly by pursuing a new preliminary injunction based on their APA or *ultra vires* claims"); *id.* at 8 (Garcia, J., statement respecting the denial of rehearing en banc) (observing that Plaintiffs' APA claim remained a "meaningful avenue to test the legality of the Executive Branch's unilateral actions" and "may be litigated expeditiously in the district court"). The Court heeds that mandate, too. This case raises questions of immense legal and practical importance, including whether there is any avenue to test the executive branch's decision not to spend congressionally appropriated funds. Appreciating that this Court is only one part of a review process that has yet to completely unfold— and that definitive higher court guidance now will be instructive as funds continue to reach their expiration dates in the future—the Court endeavors to address the remaining claims with both care and dispatch, to provide the necessary record and time for further review.

For the reasons described below, the *Global Health* Plaintiffs' new motion for a temporary restraining order, preliminary injunction, and partial summary judgment is granted in part and denied in part. The *AIDS Vaccine* Plaintiffs' motion for a preliminary injunction is granted.

## I.       Background

In March of last year, Congress appropriated over $30 billion to the State Department and

the U.S. Agency for International Development ("USAID"), to be spent on foreign aid. *See* Further

Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460, 740–49. Congress

specified fifteen categories toward which the funds should be spent. *See, e.g.*, 138 Stat. at 740

("For necessary expenses to carry out the provisions of chapters 1 and 10 of part I of the Foreign

Assistance Act of 1961, for global health activities, in addition to funds otherwise available for

such purposes, $3,985,450,000, to remain available until September 30, 2025, and which shall be

apportioned directly to the United States Agency for International Development . . . ."). Congress

also stated that "funds appropriated by this Act" under the relevant titles "shall be made available

in the amounts specifically designated in the respective tables included in the explanatory

statement." *Id.* at 771; *see Glob. Health*, ECF No. 125-11 (explanatory statement). The tables

referenced include more specific line items with amounts for particular purposes. *Glob. Health*,

ECF No. 125-11. Congress provided that, for most line items, State and USAID "may only deviate

up to 10 percent from the amounts specifically designated in the respective tables," and for global

health programs line items, the agencies may not deviate from the specified amounts at all. 138

Stat. at 772. Defendants have represented that approximately $11.5 billion in appropriated funds

from this act is set to expire on September 30, 2025. *Glob. Health*, ECF No. 135 at 1. Congress

passed appropriations acts with similar requirements in prior years. *See, e.g.*, Pub. L. No. 116-6,

133 Stat. 13, 307 (2019).

On January 20, 2025, the President signed an executive order titled "Reevaluating and

Realigning United States Foreign Aid." Exec. Order No. 14169, 90 Fed. Reg. 8619 (Jan. 20, 2025).

The order directed an immediate pause in "United States foreign development assistance." *Id.*

§ 3(a). It also directed responsible department and agency heads to review each foreign assistance

program and to determine within ninety days of the order "whether to continue, modify, or cease each foreign assistance program," in consultation with the Director of the Office of Management and Budget ("OMB") and with the concurrence of the Secretary of State. *Id.* §§ 3(b), (c).

In the days that followed, agency officials took actions to institute an immediate suspension of all congressionally appropriated foreign aid. On January 24, the Secretary of State issued a memorandum suspending all new funding obligations, pending a review, for foreign assistance programs funded by or through the State Department and USAID. *Glob. Health*, ECF No. 43 at 14. USAID officials also issued instructions to immediately pause all new programs, issue stop-work orders, and develop appropriate review standards. *Glob. Health*, ECF Nos. 58-1 to 58-4. OMB issued a memorandum ordering a temporary pause of all federal financial assistance, including assistance for foreign aid and nongovernmental organizations. *Glob. Health*, ECF No. 1 ¶ 47.

The Court granted a preliminary injunction to Plaintiffs based principally on two claims. First, it held Plaintiffs were likely to succeed on the merits of their claim that the agencies' blanket freeze of funds was arbitrary and capricious in violation of the APA. *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 134–40 (D.D.C. 2025). The Court had previously granted a limited temporary restraining order ("TRO") on this basis. *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 766 F. Supp. 3d 74 (D.D.C. 2025). After Defendants indicated they had not taken any steps to comply with the Court's TRO, the Court granted in part a motion to enforce compliance. Defendants sought emergency relief from the Circuit and ultimately the Supreme Court, claiming for the first time the timeline to comply was not feasible. *See Glob. Health*, ECF No. 39. The Supreme Court denied Defendants' application and, because the deadline to comply had passed in the interim, directed this Court to "clarify what obligations the Government must

fulfill to ensure compliance with the temporary restraining order, with due regard for the feasibility of any compliance timelines." *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 604 U.S. __, 145 S. Ct. 753 (2025). On remand, the record established that the number of payments Defendants had described as infeasible during their emergency appeal was, in fact, comparable to the number of payments "that USAID and State previously had been capable of processing . . . each day." *AIDS Vaccine*, 770 F. Supp. 3d at 132. In its preliminary injunction, the Court nonetheless ordered Defendants to process payments at a significantly lower rate. *Id.* at 154. Defendants did not appeal this aspect of the Court's preliminary injunction, which remains in effect.

Second, and relevant here, the Court concluded Plaintiffs were likely to prevail on their claims that Defendants were violating the separation of powers by unilaterally declining to spend congressionally appropriated foreign aid funds. *Id.* at 143–48. The Court found, based on the record before it, that Defendants had "no intent to spend" the funds Congress appropriated and that Defendants had "not disputed" their actions were "being undertaken to end foreign aid funding." *Id.* at 144–45; *see also id.* at 146 (observing Defendants "explicitly said" that "they are declining to spend appropriated funds based on policy objections"). The Court accordingly ordered that the agency Defendants were "enjoined from unlawfully impounding congressionally appropriated foreign aid funds and shall make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024." *Id.* at 155.

Defendants appealed the latter part of the preliminary injunction, requiring them to obligate congressionally appropriated funds. They did not seek a stay pending appeal. Instead, Defendants asked the Circuit to rule on the appeal by August 15, 2025, and represented that receiving a decision by that deadline would make it feasible to obligate funds expiring on September 30, 2025.

*See, e.g.*, *AIDS Vaccine*, ECF No. 138 at 33 (Defendants' counsel stating that "the historical experience shows that even on the time frame which has been sought from the Court of Appeals, there will be sufficient time to obligate the balances"); *Glob. Health*, ECF No. 99 at 14 (asserting that the agencies "have sufficient time to obligate funds well within the approximately six-week period from August 15, 2025 to September 30, 2025, and could exercise existing authorities that allow additional agency acceleration of contracting and grant-making processes"). Defendants also said their proposed timeline "was designed by the parties to leave room for additional decision making" or "additional review" after the panel's decision. *AIDS Vaccine*, ECF No. 138 at 31.

The Circuit panel issued an opinion on August 13, 2025. It held Plaintiffs could not bring a constitutional claim challenging the executive branch's refusal to spend funds that Congress appropriated. *Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021, at *6–9 (D.C. Cir. Aug. 13, 2025). Because Plaintiffs lacked a cause of action, the panel did not address the merits of "whether the government violated the Constitution by infringing on the Congress's spending power through alleged violations of the 2024 Appropriations Act, the [Impoundment Control Act ("ICA")] and the Anti-Deficiency Act." *Id.* at *12. The panel also concluded that Plaintiffs could not pursue their APA contrary-to-law or *ultra vires* claims premised on the ICA. *Id.* at *9–12. And the panel held that the other preliminary injunction factors did not "strongly favor" Plaintiffs. *Id.* (quoting *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)). The panel withheld the mandate until disposition of any timely petition for rehearing or rehearing en banc. Order, *Glob. Health*, No. 25-5097 (D.C. Cir. Aug. 13, 2025).

On August 15, 2025, Plaintiffs filed a petition for rehearing en banc and a motion to stay the panel's opinion and judgment pending en banc review. On August 28, 2025, the panel issued an amended opinion. The panel narrowed its holding regarding Plaintiffs' APA contrary-to-law

claims, explaining that "we need not and do not decide whether the ICA precludes suits under the APA to enforce appropriations acts." *Glob. Health*, 2025 WL 2480618, at \*11 n.17; *see also id.* at \*25 n.4 (Pan, J., dissenting) (amending dissent to note that "the majority leaves open [Plaintiffs'] APA claims based on the Appropriations Act" and that Plaintiffs "therefore are free to pursue that claim on remand"). The en banc Circuit simultaneously denied rehearing. Order, *Glob. Health*, No. 25-5097 (D.C. Cir. Aug. 28, 2025) (en banc). The denial was accompanied by statements advising that "the full court's decision is based, in large part, on the panel's revision of its original opinion to provide a pathway for [Plaintiffs] in this case to pursue relief under the Administrative Procedure Act," *id.* at 6 (Pan, J., dissenting from the denial of rehearing en banc), and that because this left Plaintiffs with a "meaningful avenue to test the legality of the Executive Branch's unilateral actions," the panel's amended opinion "allows that claim to proceed" and to be "litigated expeditiously in the district court." *Id.* at 8 (Garcia, J., statement respecting the denial of rehearing en banc). The Circuit accordingly issued its mandate.

Later that evening, the President transmitted a special message to Congress proposing that Congress rescind a portion of the funds, totaling approximately $4 billion, that it had appropriated in the relevant acts. *Glob. Health*, ECF No. 129; *see* ECF No. 129-1. To date, Congress has not acted on the proposal to rescind those funds.

The day after the mandate issued, the Court held a status conference to hear the parties' positions on next steps. Counsel for Defendants stated that the agencies plan to spend only a portion of the appropriated funds that expire on September 30, 2025. According to counsel, Defendants would obligate roughly $6.5 billion of those funds. *Glob. Health*, ECF No. 131 at 13. Counsel asserted that the agencies would not obligate the funds for which the President had proposed rescission regardless of whether Congress acted to rescind its appropriations. *Id.* at 12.

Later that night, the *Global Health* Plaintiffs moved to amend their complaint and for a temporary restraining order, preliminary injunction, and partial summary judgment. *Glob. Health*, ECF Nos. 132, 133. The Court set an expedited briefing schedule to allow for prompt resolution of the motions and to ensure the parties can swiftly seek appellate review of the important issues raised in this case. The *AIDS Vaccine* Plaintiffs have since joined the *Global Health* Plaintiffs' request for preliminary injunctive relief. *AIDS Vaccine*, ECF No. 143.

## II.    Discussion

The Circuit has remanded for this Court to consider in the first instance Plaintiffs' ability to pursue remaining claims. As members of the Circuit recognized, the claims asserted in this case ultimately raise the question whether there is any "meaningful avenue to test the legality of the Executive Branch's unilateral actions" to decline to spend funds that Congress directs to be spent for specific purposes. Order, *Glob. Health*, No. 25-5097, at 8 (D.C. Cir. Aug. 28, 2025) (Garcia, J., joined by Millett, J., statement respecting the denial of rehearing en banc). The Court briefly summarizes the relevant claims and where each stands, in the interest of situating the remaining claims and aiding in any further review.

Plaintiffs have consistently asserted a constitutional claim that Defendants' refusal to spend congressionally appropriated aid infringed on Congress's spending power and therefore violated the separation of powers. That claim was considered and found likely to succeed in this Court's first preliminary injunction opinion. *AIDS Vaccine*, 770 F. Supp. 3d at 143–48. The Circuit panel has since held Plaintiffs have no constitutional cause of action to challenge the executive branch's decision not to spend appropriated funds because their constitutional claims were predicated on statutory violations. *Glob. Health*, 2025 WL 2480618, at *6–9. Plaintiffs continue to preserve their constitutional claims. *See Glob. Health*, ECF No. 133-1 at 26; ECF No. 137 at 18. This Court has no further role in adjudicating them and, given the panel's decision, any further argument must be

addressed to the en banc Circuit or Supreme Court. The same is true of Plaintiffs' APA and *ultra vires* claims to the extent they are premised on noncompliance with the ICA.

Plaintiffs also assert APA, mandamus, and *ultra vires* claims premised on noncompliance with the appropriations acts, and the panel's amended opinion does not resolve those claims. *See Glob. Health*, 2025 WL 2480618, at *11 n.17. On remand, Plaintiffs accordingly move for relief on the bases that the Executive's unilateral decision to not spend a large portion of the funds Congress appropriated for specific purposes (1) is contrary to law—namely, the appropriations acts—in violation of the APA; (2) is arbitrary and capricious in violation of the APA; (3) constitutes unlawfully withheld or unreasonably delayed agency action in violation of the APA; and (4) violates a clear duty warranting mandamus relief. *Glob. Health*, ECF No. 133-1 at 11–25; *AIDS Vaccine*, ECF No. 143-1 at 1–2.[1]

Consistent with the Circuit's mandate, the Court addresses each of these claims. The Court pauses first, however, to assure itself of Plaintiffs' standing.

### A. Plaintiffs Have Standing

"To establish Article III standing, the plaintiff must have 'suffered an injury in fact' that 'is fairly traceable to the challenged action of the defendant' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Banner Health v. Price*, 867 F.3d 1323, 1333–34 (D.C. Cir. 2017) (quoting *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000)). This Court's preliminary injunction opinion found Plaintiffs had standing to challenge the foreign aid freeze because of the direct impact on "Plaintiffs' pocketbooks and their ability to fulfill their organizational missions." *AIDS Vaccine*, 770 F. Supp. 3d at 134. Thereafter on appeal, Defendants did not dispute that Plaintiffs have Article III standing

---

[1]    Plaintiffs do not seek a preliminary injunction based on their *ultra vires* claims.

"except as it relates to the appropriate scope of relief granted." *Glob. Health*, 2025 WL 2480618, at *4. And given the Circuit's conclusion that Plaintiffs have standing, Defendants make clear in their instant briefing that they do not "further dispute Plaintiffs' standing to proceed." *Glob. Health*, ECF No. 135 at 9.

The Court nonetheless has "an independent obligation to assure that standing exists." *Glob. Health*, 2025 WL 2480618, at *4 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)). Here, it does. As the panel opinion explained, "a plaintiff may be harmed by denial of the opportunity to compete for a pool of funds for which they are able and willing to compete." *Id.* at *5; *see also Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1015 (D.C. Cir. 2022) (petitioner had standing based on showing that "(1) it was ready, willing and able to perform the construction contracts for which it wished to compete, and (2) the challenged action deprived the company of the opportunity to compete for the work" (internal quotation marks and citation omitted)). The panel reached the conclusion that Plaintiffs have standing based on this harm, relying on declarations in the record. *Glob. Health*, 2025 WL 2480618, at *5 (explaining that "the declarations make clear the degree to which [Plaintiffs] are financially dependent on appropriated foreign assistance funds"). This Court agrees and observes that, on remand, Plaintiffs have further supplemented their earlier proffer, offering additional evidence showing they depend on appropriated foreign assistance funds to keep their organizations afloat. *See, e.g.*, *Glob. Health*, ECF No. 133-5 ¶ 10 (stating that 89% of plaintiff's annual revenues in prior years came from USAID or foreign assistance funding from State Department); ECF No. 133-6 ¶ 9 (same for nearly 80% of plaintiff's annual revenues); ECF No. 133-7 ¶ 11 (same for more than 95% of plaintiff's annual revenues). As the panel reasoned, "even the prospect of a 'single dollar' can 'effectuate a partial remedy' and thereby 'satisf[y] the redressability requirement.'" *Glob. Health*, 2025 WL

2480618, at *5 (alteration in original) (quoting *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021)). Plaintiffs' evidence, which went unrebutted at the preliminary injunction stage and remains so, establishes standing.

**B. Plaintiffs Are Entitled To Preliminary Injunctive Relief**

The preliminary injunction factors are familiar to all at this point in the litigation, but have no less force: "A preliminary injunction is an extraordinary remedy never awarded as of right" and, to the contrary, "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). A plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. On remand, Plaintiffs seek preliminary relief based on their claims that the agency Defendants' noncompliance with appropriations acts violates the APA and the Mandamus Act. The Court concludes Plaintiffs are entitled to preliminary relief on those claims.

*1. Plaintiffs Are Likely To Succeed On The Merits Of Their Claims*

The Court first considers Defendants' argument that judicial review of whether agency action complies with the appropriations acts is foreclosed by the ICA. After concluding that it is not, the Court considers Plaintiffs' likelihood of success as to each remaining claim asserted, as well as Defendants' defense that it need not comply with appropriations due to the pending rescission proposal irrespective of whether Congress takes action to rescind them.

*a. The APA Allows Judicial Review Of The Legality Of An Agency's Decision Not To Spend Congressionally Appropriated Funds*

On appeal, the Circuit held Plaintiffs cannot assert violations of the ICA, which sets forth its own "complex scheme" for notification and enforcement, through the APA. *Glob. Health*, 2025

WL 2480618, at *10. The panel left open for this Court to decide on remand whether the APA

provides judicial review premised on the appropriations acts. *Id.* at 11 n.17. Multiple Circuit judges

also highlighted the importance of the availability of this claim to the full court's decision not to

rehear the case en banc. *See* Order, *Glob. Health*, No. 25-5097, at 8 (D.C. Cir. Aug. 28, 2025)

(Garcia, J., joined by Millett, J., statement respecting the denial of rehearing en banc) (recognizing

that this remaining claim could provide a "meaningful avenue to test the legality of the Executive

Branch's unilateral actions" and that the panel's amended opinion "allows that claim to proceed");

*id.* at 6 (Pan, J., dissenting from the denial of rehearing en banc) (recognizing the significance of

"the panel's revision of its original opinion to provide a pathway for [Plaintiffs] in this case to

pursue relief"). This Court accordingly turns to that question. The Court concludes that under

governing principles, including those laid out by the panel opinion in this case, there is no

impediment to judicial review of an agency's unilateral decision not to spend funds through an

APA claim premised on appropriations acts.

"The APA confers a general cause of action upon persons 'adversely affected or aggrieved

by agency action within the meaning of a relevant statute' but withdraws that cause of action to

the extent the relevant statute 'precludes judicial review.'" *Glob. Health*, 2025 WL 2480618, at *9

(quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)). "Whether and to what extent a

particular statute precludes judicial review is determined not only from its express language, but

also from the structure of the statutory scheme, its objectives, its legislative history, and the nature

of the administrative action involved." *Id.* (quoting *Block*, 467 U.S. at 345).

The panel's application of these principles is instructive. As the panel recognized, case law

dictates a "presumption favoring judicial review of administrative action"; indeed, "[i]n some

cases, the Supreme Court has said that 'only upon a showing of "clear and convincing evidence"

of a contrary legislative intent should the courts restrict access to judicial review.'" *Id.* at 10 (quoting *Block*, 467 U.S. at 350). In reaching its conclusion that violations of the ICA process cannot be enforced using the APA, the panel specifically relied on the fact that Congress gave the ICA its own "complex scheme," which included "notification of the Congress, congressional action on a proposed rescission or deferral and suit by a specified legislative branch official if the executive branch violates its statutory expenditure obligations," as well as an enforcement mechanism specifying that the Comptroller General "may bring suit" for ICA violations in particular circumstances. *Id.* (discussing the "complex scheme[s]" both in *Block* and in the ICA). The panel accordingly concluded Congress's intent to preclude judicial review of ICA violations through suits by private parties was "fairly discernible in the statutory scheme." *See id.* at *10–11 (quoting *Block*, 467 U.S. at 351).

In opposing en banc review of the panel's initial opinion, Defendants acknowledged that nothing in that decision disturbed a private plaintiff's ability to enforce appropriations acts through the APA. As Defendants observed, "[n]either the ICA, nor the panel's ruling that plaintiffs cannot enforce the terms of that statute," affects a party's ability to enforce compliance with statutory obligations through an APA suit. Response to Petition for Rehearing En Banc, *Glob. Health*, No. 25-5097, at 16 (D.C. Cir. Aug. 20, 2025). In addition to representing that the ICA would not disturb that avenue, Defendants observed that under the Supreme Court's decision in *Train v. City of New York*, 420 U.S. 35 (1975), "a court could enjoin a refusal to spend appropriated funds where the relevant statutes required that the funds be spent." *Id.* at 15–16; *see also id.* at 16 (recognizing that "a court can order 'an agency to perform a statutorily mandated activity,' even if the agency must spend money to fulfill that mandate" (quoting *In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013) (Kavanaugh, J.))). Relying on these representations, Defendants assured the full Circuit that

plaintiffs "may generally enforce compliance with statutory mandates through suits under the APA," and the panel's decision therefore did not "authorize the Executive Branch to disregard statutory mandates with no judicial oversight." *Id.* at 1.[2]

The Court agrees that neither the text of the ICA nor the panel's decision impedes Plaintiffs from bringing an APA action to enforce the appropriations acts. While the panel concluded that the ICA's notification and enforcement mechanisms displace the presumption of judicial review for violations of the ICA itself, *see Glob. Health*, 2025 WL 2480618, at *9–11, it would be quite another thing to say the ICA eliminates judicial review and there is no "meaningful avenue" for relief when an executive agency unilaterally declines to spend funds in violation of appropriations acts. *See* Order, *Glob. Health*, No. 25-5097, at 8 (D.C. Cir. Aug. 28, 2025) (Garcia, J., statement respecting the denial of rehearing en banc). Indeed, the text of the ICA expressly provides that "[n]othing contained in this Act, or in any amendments made by this Act, shall be construed as . . . affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3).

In *Train*, a statute authorized appropriations "not to exceed" specified sums, and it provided that such sums "shall be allotted" by the EPA Administrator. 420 U.S. at 38–39. As here, the plaintiffs challenged the agency's decision to allot "less than the entire amounts authorized to be appropriated." *Id.* at 41. The Court held that the agency could not do so, rejecting the government's position that Congress intended to provide the Executive "with the seemingly limitless power to withhold funds from allotment and obligation." *Id.* at 46; *see also id.* at 41 n.8 (noting that the

---

[2]    Defendants made all these representations based on the panel's initial opinion. As discussed above, the panel's amended opinion was even narrower, expressly leaving open the question whether "the ICA precludes suits under the APA to enforce appropriations acts." *Glob. Health*, 2025 WL 2480618, at *11 n.17.

enactment of the ICA did not affect the case). Other courts likewise entertained challenges to an agency's refusal to spend funds. *See, e.g.*, *State Highway Comm'n of Missouri v. Volpe*, 479 F.2d 1099, 1118 (8th Cir. 1973) (holding that statute did not authorize Secretary of Transportation to withhold authority to obligate funds); *Guadamuz v. Ash*, 368 F. Supp. 1233, 1244 (D.D.C. 1973) (granting declaratory judgment that impoundment of certain funds was unauthorized by law).

While the panel held it is fair to discern that the ICA's notification and enforcement regime committed ICA compliance to the Comptroller General, it would upend the objectives of the ICA to hold that it enables the executive branch to unilaterally decline to spend funds in the face of Congress's contrary directives in appropriations laws. As the Circuit previously observed, the ICA "was passed at a time when Congress was united in its furor over presidential impoundments and intent on reasserting its control over the budgetary process," and it "contained several strong measures expressly designed to limit the President's ability to impound funds appropriated by Congress." *City of New Haven v. United States*, 809 F.2d 900, 906 (D.C. Cir. 1987). As it relates to appropriations acts, the Court cannot conclude "congressional intent to preclude judicial review" is "fairly discernible" in the ICA's statutory scheme. *Block*, 467 U.S. at 351.

Having conceded that Plaintiffs' claim to enforce statutory mandates in appropriations acts under the APA is one that exists, Defendants challenge Plaintiffs' ability to bring it in two respects. First, Defendants argue that Plaintiffs' appropriations-act based APA claim is precluded because, after the en banc Circuit denied rehearing to remand for further consideration of this APA claim, the President submitted a special message to Congress under ICA procedures, proposing rescission of a portion of the appropriated funds. *Glob. Health*, ECF No. 135 at 13; *see* 2 U.S.C. § 683(a) (providing that the President shall transmit a special message with certain information to both houses of Congress whenever he "determines that all or part of any budget authority will not be

required to carry out the full objectives or scope of programs for which it is provided or that such budget authority should be rescinded for fiscal policy or other reasons"). That argument is difficult to comprehend. It would make sense for the sending of a special message to Congress under the ICA to preclude an action premised on compliance with or violation of the ICA's procedures—the type of claim Defendants successfully argued could be asserted only by the Comptroller General and cannot be asserted using the APA. *Glob. Health*, 2025 WL 2480618, at *9–11. But Plaintiffs' APA claim based on the appropriations acts is completely independent of whether Defendants have complied or failed to comply with the ICA's requirements; they do not, for instance, challenge the validity of or seek to enjoin the President's transmittal of the special message. Plaintiffs' APA claim seeks to enforce compliance with the appropriations acts and, contrary to Defendants' argument, the transmission of the special message does not transform Plaintiffs' claim into a new one "premised once again on the ICA." *Glob. Health*, ECF No. 135 at 2. All agree that the relevant appropriations acts remain the law of the land, and those are the laws Plaintiffs seek to enforce in their APA claim—the claim Defendants conceded is valid.[3]

Second, Defendants say Plaintiffs cannot pursue an APA claim to enforce appropriations laws because they are not within the "zone of interests" of those laws. *Id.* at 14–15. That argument is not persuasive here. "The zone of interests test does not require that the statute directly regulate the plaintiff, nor does it require specific congressional intent to benefit the plaintiff." *CSL Plasma Inc. v. U.S. Customs & Border Prot.*, 33 F.4th 584, 589 (D.C. Cir. 2022). It requires only that the plaintiffs' grievances "arguably fall[] within the zone of interests protected or regulated by the

---

[3]    Defendants make a separate argument that the rescission proposal sent to Congress under the ICA is a defense to an APA claim to enforce appropriations laws. *Glob. Health*, ECF No. 135 at 28–32. As discussed later, that argument is unpersuasive because, absent Congress acting to rescind the appropriations, nothing in the ICA permits Defendants to withhold congressionally appropriated funds to run out the clock. *See infra* section II.B.1.e.

statutory provision or constitutional guarantee invoked in the suit." *Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). To satisfy that inquiry, there need not be "any indication of congressional purpose to benefit the would-be plaintiff." *Id.* at 1016–17 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)). "Rather, a plaintiff falls outside the group to whom Congress granted a cause of action only when its interests 'are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* at 1017 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). This test is "not a demanding one." *Id.*; *see also CSL Plasma*, 33 F.4th at 589 (describing the test as "lenient" (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014))).

The relevant acts appropriate foreign assistance funds across a variety of categories, and it is undisputed Plaintiffs not only compete for those funds but also have been the recipients of such funds for years. Plaintiffs have submitted declarations showing that they compete for funds within those categories and that those funds are essential to their organizational missions. *See, e.g.*, *Glob. Health*, ECF No. 133-4 ¶¶ 3–7, 9; ECF No. 133-5 ¶¶ 4–8, 10; ECF No. 133-6 ¶¶ 4–9. And Plaintiffs work in specific areas that overlap with the categories for which Congress has appropriated funds. *See, e.g.*, *Glob. Health*, ECF No. 133-8 ¶¶ 4, 6 (explaining that members work to address public health challenges and administer global health programs). On this record, the Court cannot find that Plaintiffs' interests are "marginally related to or inconsistent with" the statutes' purposes of appropriating funds for foreign assistance. Those interests go hand in hand, and Plaintiffs accordingly are within the relevant zone of interests.

    *b. Plaintiffs Are Likely To Succeed On Their Contrary-To-Law And Arbitrary-And-Capricious Claims*

The APA authorizes judicial review of "final agency action" and requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706(2)(A). Plaintiffs assert that the agency Defendants' failure to obligate all the foreign assistance funds appropriated by Congress is contrary to law—specifically, contrary to the appropriations acts—and arbitrary and capricious.

    *i. Plaintiffs Challenge Final, Discrete Agency Action*

"Agency actions are final if two independent conditions are met: (1) the action 'mark[s] the consummation of the agency's decisionmaking process' and is not 'of a merely tentative or interlocutory nature'; and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (alteration in original) (quoting *Bennett*, 520 U.S. at 177–78).

Here, Plaintiffs challenge Defendants' unilateral decision not to spend the funds Congress has directed in the appropriations acts. In its first preliminary injunction opinion, the Court found Defendants had no intention to spend the funds Congress had appropriated and Defendants had not disputed that. *AIDS Vaccine*, 770 F. Supp. 3d at 144–45 & n.13. The Court finds Defendants still have no intention to spend the funds Congress has appropriated. In recent hearings before the Court, Defendants have stated they do not plan to obligate the full amount of funds that Congress appropriated and continue to intend to allow a substantial portion of those funds to expire on September 30, 2025. *See Glob. Health*, ECF No. 131 at 12 (stating that roughly $4 billion in expiring funds "is not available for obligation"). According to Defendants, there is roughly $11.5 billion in expiring funds at issue that Congress appropriated in 2024, and they intend not to spend

$4 billion—or nearly 35%. *See id.*; *Glob. Health*, ECF No. 135 at 1–2; *see also* ECF No. 135-1 ¶ 6. The Court's finding is further supported by the President's recent rescission proposal, filed after the Circuit issued its mandate. *See Glob. Health*, ECF No. 129. And Defendants do not dispute that their intention not to spend would lead to a substantial reduction in spending across the broad categories and line items for which Congress appropriated funds.[4]

Defendants' decision not to spend all the expiring funds is thus final in any relevant respect. Far from tentative, Defendants have specifically represented to the Court that they have decided to spend only part of the appropriated funds and that they will not spend the remaining funds that are the subject of the President's rescission proposal. *Glob. Health*, ECF No. 131 at 12; ECF No. 135-1 ¶¶ 5–6. That decision plainly has a "direct and immediate . . . effect on the day-to-day business" of Plaintiffs, whose operations and very existence are in jeopardy absent an opportunity to compete for these funds. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (omission in original) (quoting *Fed. Trade Comm'n v. Standard Oil Co. of California*, 449 U.S. 232, 239 (1980)).

Defendants make three arguments in response, none of which is persuasive. First, they say their decision is not final within the meaning of the APA because the agencies "are actively engaged in the obligation process" as to the portion of funds they have chosen to obligate. *Glob. Health*, ECF No. 135 at 17. But that quite obviously misconceives the relevant agency determination whose legality is being challenged. Plaintiffs are not challenging the determination made as to any particular funds that are still in the process of being obligated; they are challenging

---

[4] Plaintiffs state, and Defendants do not dispute, that some foreign assistance funds from prior appropriations acts also expire on September 30, 2025. *Glob. Health*, ECF No. 133-1 at 5. The Court finds that Defendants also intend not to spend those funds given the representation that currently they plan to obligate only the $6.5 billion appropriated in 2024. *See Glob. Health*, ECF No. 135-1 ¶¶ 4, 6.

Defendants' determination that they can unilaterally choose not to spend a large swath of the funds that Congress has directed them to spend. Defendants do not dispute they have conclusively made that decision—indeed, they openly state that they have no intention to spend a substantial portion of the appropriated funds and intend to let them expire.

Second, Defendants argue that the President's special message to Congress cannot be reviewed under the APA because the President is not an "agency" within the meaning of the APA. *Glob. Health*, ECF No. 135 at 16 (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). But Plaintiffs do not ask the Court to review, enjoin, or vacate the President's special message; they seek judicial review of the agencies' determination to unilaterally decline to spend funds as they are directed to do by the appropriations acts. Defendants assert, without citation, that the agencies have made this decision to "respect the special message by withholding the funds from obligation and otherwise refraining from taking steps to obligate funds proposed for rescission." *Id.* But, as discussed later, Defendants simply assume that sending a rescission proposal fewer than forty-five days before funds expire permits agencies to withhold congressionally appropriated funds—an assumption that is not correct and is the very agency action Plaintiffs challenge. *See infra* section II.B.1.e; *see also Glob. Health*, 2025 WL 2480618, at *8 n.14 ("Presidential action may be reviewed through APA challenges to final agency action by subordinates implementing the President's directives where such review is not otherwise precluded.").

Third, Defendants briefly argue that Plaintiffs do not challenge a sufficiently "discrete" agency action, observing that the APA "precludes an amorphous, roving challenge to the entirety of USAID's and State's systems of obligating funds." *Glob. Health*, ECF No. 135 at 18. But Plaintiffs are not asserting any type of broad, programmatic challenge that the APA forbids. Their challenge is based on the very discrete requirement to spend the amount of funds that Congress

has appropriated for particular purposes, and Defendants have made the very discrete, conclusive decision not to do so. *Cf. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893–94 (1990) (noting that while challenges seeking "wholesale correction" of an entire program are not proper under the APA, judicial intervention, where appropriate, still "may ultimately have the effect of requiring a regulation, a series of regulations, or even a whole 'program' to be revised by the agency in order to avoid the unlawful result that the court discerns").

> ii. *Plaintiffs Are Likely To Succeed In Showing The Agency Defendants Acted Contrary To Law By Unilaterally Deciding Not To Spend The Funds Congress Appropriated To Their Agencies To Be Spent For Specific Purposes*

Plaintiffs argue that the agency Defendants' decision not to spend the specific amount of funds that Congress dictated for specific purposes in appropriations laws, and instead unilaterally decline to spend billions of dollars, is contrary to the appropriations laws. *Glob. Health*, ECF No. 133-1 at 17–18. Upon consideration of governing precedent, the Court agrees.

The Constitution "gives Congress control over the public fisc." *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 420 (2024). "By the time of the Constitutional Convention, the principle of legislative supremacy over fiscal matters engendered little debate," and it "was uncontroversial that the powers to raise and disburse public money would reside in the Legislative Branch." *Id.* at 431. The Appropriations Clause protects Congress's "exclusive power over the federal purse" and is "particularly important as a restraint on Executive Branch officers." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346–47 (D.C. Cir. 2012) (Kavanaugh, J.) (citation omitted); *see also Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (explaining that the Appropriations Clause "was intended as a restriction upon the disbursing authority of the Executive department"). Under "settled, bedrock principles of constitutional law," the President "must follow statutory mandates so long as there is appropriated money available and the President has no constitutional objection to the statute." *Aiken County*,

725 F.3d at 259 (emphasis omitted). And the President may not disregard a statutory mandate to spend funds "simply because of policy objections." *Id.*; *see also id.* at 261 n.1 (explaining that where a President has policy reasons "for wanting to spend less than the full amount appropriated by Congress for a particular project or program," it remains the case that "even the President does not have unilateral authority to refuse to spend the funds" and must propose a rescission to Congress for its approval).

In this round of preliminary injunction briefing, Defendants advance a new argument that they never previously raised (and, indeed, repeatedly resisted saying out loud). They ask this Court to reverse the longstanding, bedrock presumption and conclude that Congress's appropriations of funds to be spent for particular purposes are optional by default and mandatory perhaps never. *Glob. Health*, ECF No. 135 at 18–24. Throughout the TRO and earlier preliminary injunction litigation, Defendants consistently endorsed the position that the Executive's role with respect to appropriations is to exercise discretion as to *how* to spend the relevant funds within the purposes Congress specifies, but not *whether* to spend the funds. *See Glob. Health*, ECF No. 22 at 45 (responding to the Court's inquiry on this point by stating "this is a how-money-is-spent case"); ECF No. 34 at 33 (arguing that "the appropriations acts grant the President significant discretion in how to use these funds"). Indeed, during the last preliminary injunction hearing, the Court specifically inquired whether Defendants' position was "that the appropriations laws are just optional," and they repeatedly declined to take that position. *Glob. Health*, ECF No. 58 at 99–102 (declining to answer whether Defendants' interpretation was "that the appropriations laws are just optional" and reverting to arguments about standing). So too on appeal, Defendants resisted this position. *See* Oral Argument at 37:06, *Glob. Health*, No. 25-5097 ("When you have the appropriations that are just these sort of lump sum, we're appropriating all this money, the ICA

certainly makes clear that Congress expects that the Executive will expend the funds or will engage in the process contemplated by the ICA."); *id.* at 39:00 ("Our understanding is that the sort of general lump-sum appropriation, because of the ICA, Congress expects that that lump-sum appropriation will be substantially expended . . . ."). To the extent Defendants suggested there was leeway for the Executive not to spend the amounts appropriated in this case, that was premised not on the argument that appropriations are optional but explicitly and exclusively on the Executive's "vast and generally unreviewable" foreign affairs powers—an argument that this Court rejected and Defendants then abandoned on appeal. *AIDS Vaccine*, 770 F. Supp. 3d at 146 (citation omitted); *Glob. Health*, ECF No. 58 at 99 (responding to this inquiry by suggesting "in the domestic realm the relationship is very different"); *see Glob. Health*, 2025 WL 2480618, at *7 (noting that "[o]n appeal, the government disclaims any constitutional defense").

Even having now questioned whether Congress's exercise of spending power through appropriations laws should generally be interpreted as mandatory or optional, Defendants resist offering a full defense of that position. They assert that "many of the appropriations provisions on which Plaintiffs have relied simply permit[] but do[] not require the Executive Branch to spend funds," but do not identify which ones and how they make that determination. *Glob. Health*, ECF No. 135 at 19 (alterations in original) (internal quotation marks and citation omitted). And despite gesturing at a text-based argument that might overcome the bedrock understanding of appropriations laws, Defendants just assert, without explanation, that even when Congress uses mandatory language—that funds "shall be made available in amounts specifically designated"— that language contains ambiguity as to whether Congress intended it to reflect "a floor or a ceiling or both." *Id.* at 21–22. Such a superficial argument cannot overcome the understanding of appropriations laws upon which Congress has operated for centuries.

Proper textual analysis accounts for, rather than ignores, the background expectations Congress has when enacting law. *See generally Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). The Supreme Court's case law reflects those expectations. In *Train*, for instance, the Court addressed appropriations "not to exceed" specified amounts that "shall be allotted" for specific purposes, and it rejected the argument that the Executive had "the seemingly limitless power to withhold funds from allotment and obligation." 420 U.S. at 39, 46. The language Congress used in the relevant categories of foreign assistance in the 2024 Appropriations Act does not give the agencies discretion to decline to spend the funds and states, as typical throughout appropriations laws, that funds "shall be apportioned" or are "to remain available until expended." *E.g.*, 138 Stat. at 740 (funds for global health programs "to remain available" until September 30, 2025, and "shall be apportioned" to USAID).[5] Congress also expressly provided that foreign assistance funds "shall be made available in the amounts specifically designated" in appended tables. *Id.* at 771. To be sure, Congress can and does sometimes use language to make spending permissive, including by explicitly framing the amount appropriated as a discretionary ceiling. *See Cmty. Fin. Servs*, 601 U.S. at 442 (Kagan, J., concurring) (discussing examples of appropriations that "give[] the Executive leeway to decide how to allocate funds, up to a ceiling," by using language such as "'sums not exceeding' stated amounts for 'broad categories' of purposes" (citation omitted)). Congress did use that language elsewhere in the Act, indicating that it knew how to give agencies

---

[5]    *See also, e.g.*, 138 Stat. at 742 (funds for development assistance "to remain available" until September 30, 2025, and "shall be apportioned" to USAID); *id.* (funds for international disaster assistance "to remain available until expended" and "shall be apportioned" to USAID); *id.* at 743 (funds for democracy fund "to remain available" until September 30, 2025, and "shall be made available" to State Department bureau).

discretion not to spend the entire amount. *See, e.g.*, 138 Stat. at 739 (providing that funds "not to exceed $250,000 may be available for representation and entertainment expenses").

Defendants' argument that the appropriations can be cast as "ambiguous" and therefore a ceiling left to their discretion whether to be spent in whole, in part, or not at all would upend the way Congress legislates not just in appropriations acts themselves, at issue here, but also in other acts such as the ICA. The ICA "operates on the premise that when Congress appropriates money to the executive branch, the President is required to obligate the funds." GAO, B-329092, *Impoundment of the Advanced Research Projects Agency—Energy Appropriation Resulting from Legislative Proposals in the President's Budget Request for Fiscal Year 2018*, at 2 (Dec. 12, 2017). Indeed, if it were true that appropriations generally defer not just how, but whether, to spend money to the executive branch, it is hard to see what purpose would be served by the ICA's mechanisms allowing the President to submit a rescission proposal for budget authority—something the President has done multiple times in this context, including successfully in May 2025 as to some appropriations analogous to those at issue here and just days ago as to some of the appropriations at issue in this case. If the President could simply decline to spend those funds, there would be no need to propose a rescission and get Congress's approval—the President could simply do nothing and let the funds expire unspent.

Defendants' reasons for not developing an argument here over the numerous months and opportunities given may be many, including that, even having changed their position, there is not a plausible interpretation of the statutes that would justify the billions of dollars they plan to withhold. Whatever the reason, Defendants have given no justification to displace the bedrock expectation that Congress's appropriations must be followed and that absent a "claim of unconstitutionality that has not been rejected by final Court order, the Executive must abide by

statutory mandates." *Aiken County*, 725 F.3d at 259. Their decision not to do so is contrary to law in violation of the APA.

> iii. *Plaintiffs Are Likely To Succeed In Showing The Agency Defendants Acted Arbitrarily And Capriciously In Unilaterally Withholding Billions In Appropriated Funds Without Explanation Or Consideration Of Reliance Interests*

Plaintiffs assert that, even if one assumes the relevant appropriations are optional, Defendants' decision not to spend billions of dollars in foreign assistance funds and instead let them expire is arbitrary and capricious under the APA. *Glob. Health*, ECF No. 133-1 at 18–21.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, the court "must confirm that the agency has fulfilled its duty to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (internal quotation marks omitted) (quoting *State Farm*, 463 U.S. at 43). "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (alteration in original) (quoting *State Farm*, 463 U.S. at 43).

The Court previously concluded in granting a TRO and later a preliminary injunction that Defendants' blanket determination to freeze foreign aid funds was likely arbitrary and capricious. The Court explained that Defendants failed to provide "'a rational connection between the facts found and the choice made' to impose an immediate and wholesale suspension of foreign aid in order to review programs." *AIDS Vaccine*, 770 F. Supp. 3d at 138. And "nothing in the record suggested that Defendants considered and had a rational reason for disregarding the massive

reliance interests of businesses and organizations that would have to shutter programs or close their doors altogether." *Id.*

The same is true of the agency Defendants' decision to simply not spend billions of dollars in congressionally appropriated foreign aid across numerous categories and instead let those funds expire. Defendants have not offered any explanation for the decision to ignore billions of dollars in appropriated funds rather than obligate them in a manner that aligns with both Congress's stated purposes and the Executive's priorities. Nor do Defendants appear to have considered the reliance interests of Plaintiffs and other organizations, or the beneficiaries of their services, who have relied on the agencies' longstanding policies and practices.

Defendants suggest this argument disregards "the established role of the Executive Branch in formulating foreign policy." *Glob. Health*, ECF No. 135 at 24. This echoes Defendants' primary response to Plaintiffs' separation of powers claim, which was that the President has "vast and generally unreviewable" powers in the realm of foreign affairs. That argument fares no better here than it did there. In granting preliminary injunctive relief, the Court rejected Defendants' "unbridled understanding of the President's foreign policy power, which would put the Executive above Congress in an area where it is 'firmly established' that the two branches share power, where Congress is exercising one of its core powers, and where there is no constitutional objection to the laws it has made." *AIDS Vaccine*, 770 F. Supp. 3d at 148 (quoting *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 62 (2015) (Roberts, C.J., dissenting)). The Circuit panel did not cast doubt on that analysis, and Defendants' argument remains unpersuasive today for the same reasons. *See Glob. Health*, 2025 WL 2480618, at *12.

    *c.*   *Plaintiffs Are Likely To Succeed On Their Claim That The Agency Defendants' Actions Constitute Agency Action Unlawfully Withheld Or Unreasonably Delayed*

Plaintiffs assert another APA claim under 5 U.S.C. § 706(1), which requires courts to "compel agency action unlawfully withheld or unreasonably delayed." Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). "The legal duty must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'" *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (quoting *Norton*, 542 U.S. at 63–64).

Here, for the reasons already discussed, Defendants have a nondiscretionary duty to comply with the statutory commands in the appropriations acts by obligating the relevant funds. To be clear, no one disputes that Defendants have significant discretion in *how* to spend the funds at issue, and the Court is not directing Defendants to make payments to any particular recipients. But Defendants do not have any discretion as to *whether* to spend the funds.

Plaintiffs are also entitled to relief if the claim is construed as one to compel agency action unreasonably delayed. The Circuit has highlighted six factors that provide "useful guidance" in evaluating claims of unreasonable agency delay. *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024) (quoting *Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")). The first two factors "focus on the extent of and reasons for the agency delay." *Id.* at 816. Here, the extent of the delay is significant, as the date by which the funds must be obligated is less than a month away. And Congress provided a clear timetable to act, with specific expiration dates for the relevant funds.

The third and fifth factors address the interests affected by agency delay, including whether human health and welfare are at risk. *TRAC*, 750 F.2d at 80. That is plainly the case here, as

Plaintiffs have offered unrebutted evidence that the failure to obligate foreign assistance funds will cause serious harm to human health and welfare, while also jeopardizing the very existence of their organizations. *See, e.g.*, *Glob. Health*, ECF No. 133-4 ¶ 14; ECF No. 133-7 ¶ 15.

The fourth factor asks if "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. There is no indication that competing agency priorities have prevented Defendants from obligating the funds in question. Indeed, as Plaintiffs point out, "USAID has no other 'priorities' to pursue because Defendants have sought to abolish it." *Glob. Health*, ECF No. 133-1 at 23. And again, the question is not whether Defendants may permissibly allocate funds to one priority or another; the question is whether they have unreasonably delayed in failing to spend the funds at all.

The final factor concerns whether the agency delay involves bad faith. *Afghan & Iraqi Allies*, 103 F.4th at 820. But it is not necessary to "find any impropriety lurking" behind a delay to hold that it is unreasonable, so the Court need not make any finding that Defendants' failure to obligate the funds is in bad faith. *TRAC*, 750 F.2d at 80 (citation omitted). The balance of the other factors indicates that Plaintiffs are likely to succeed on their 5 U.S.C. § 706(1) claim on the grounds that Defendants have unreasonably delayed in spending the funds at issue.[6]

### d.  Plaintiffs Have Shown They Are Likely Entitled To Mandamus In The Alternative

Plaintiffs' final claim seeks mandamus relief ordering Defendants to comply with the appropriations acts. "Mandamus is an 'extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.'" *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670

---

[6]  Defendants oppose the *Global Health* Plaintiffs' motion for leave to file a second amended complaint on the grounds that adding this APA claim under 5 U.S.C. § 706(1) would be futile. *Glob. Health*, ECF No. 134; *see* ECF No. 132. For the reasons stated, the claim is not futile and the Court grants the motion to amend.

(D.C. Cir. 2022) (citation omitted). "A petitioner seeking mandamus must first establish that the agency has violated 'a crystal-clear legal duty.'" *Id.* (citation omitted). The petitioner must also show that it has "no other adequate means to attain the relief it desires." *Id.* (citation omitted). And the court must consider, guided by the *TRAC* factors, "whether the agency's delay is so egregious as to warrant mandamus." *Id.* (citation omitted).

For the reasons already discussed, Defendants have a clear, long-recognized duty to spend the funds Congress appropriates for specific purposes—that duty is and always has been clear, and it is mandatory. As then-Judge Kavanaugh explained in *Aiken County*: "where previously appropriated money is available for an agency to perform a statutorily mandated activity," there is "no basis for a court to excuse the agency from that statutory mandate." 725 F.3d at 260.

Defendants assert that Plaintiffs have no clear right to relief because the appropriations acts do not "impose an enforceable duty to them as private plaintiffs." *Glob. Health*, ECF No. 135 at 33. But in *Aiken County*, the petitioners had nuclear waste stored in their states due to the absence of a long-term storage site, and the court granted mandamus to compel the commission to resume processing a license application for such a site. 725 F.3d at 258. Here, Plaintiffs have an even more direct connection to the statutory mandate given their dependence on appropriated foreign assistance funds. And the appropriations acts impose a clear duty on the agency Defendants to make those funds available for obligation, allowing Plaintiffs and others to compete for them.

Consistent with the Court's above analysis of the *TRAC* factors, the agency Defendants' failure to heed Congress's mandates is also sufficiently egregious to warrant mandamus relief. That leaves the question whether Plaintiffs have any other adequate means to obtain the relief they seek. The Court has concluded that Plaintiffs are likely to succeed on their claims that the agency Defendants' refusal to obligate appropriated funds is unlawful under the APA and that they are

entitled to a preliminary injunction. Given that conclusion, issuing a writ of mandamus would not be appropriate. If, however, Plaintiffs do not have a cause of action under the APA, then the Court would conclude that they have no adequate means of recourse and are entitled to mandamus relief.

   e.   *The Rescission Proposal Does Not Allow Defendants To Evade The Statutory Command To Obligate The Funds*

Defendants' final argument is that their decision to simply not spend billions of dollars that Congress appropriated is not unlawful under any of the above theories because, following the denial of rehearing en banc and issuance of the Circuit's mandate, the President sent a rescission proposal to Congress that includes funds they decided not to spend. *Glob. Health*, ECF No. 135 at 8, 28; *see* ECF No. 129.

Plaintiffs' claims here are premised on Defendants' duty to comply with the directives of the relevant appropriations acts, in accordance with the APA and the Mandamus Act. There can be no question that if Congress rescinded or suspended those appropriations laws yesterday, today, or tomorrow, they would no longer impose a duty on the executive branch. If, on the other hand, "Congress has not altered the legal landscape," the appropriations acts remain the law of the land and the decision not to follow Congress's mandate would be "simply flouting the law." *Aiken County*, 725 F.3d at 259.

To date, Congress has not responded to the President's rescission proposal by rescinding the funds. And the ICA is explicit that it is congressional action—not the President's transmission of a special message—that triggers rescission of the earlier appropriations. The Act provides that if the President believes budget authority should be rescinded, he "shall transmit to both Houses of Congress a special message" providing certain details, including the amount proposed to be rescinded and the reasons. 2 U.S.C. § 683(a). And it says: "Any amount of budget authority proposed to be rescinded or that is to be reserved as set forth in such special message shall be made

available for obligation unless, within the prescribed 45-day period, the Congress has completed action on a rescission bill rescinding all or part of the amount proposed to be rescinded or that is to be reserved." *Id.* § 683(b). The Act further provides that "[n]othing contained in this Act . . . shall be construed as . . . superseding any provision of law which requires the obligation of budget authority or the making of outlays thereunder." *Id.* § 681(4).

It follows that, unless and until Congress votes to rescind the budget authority, the funds appropriated "shall be made available for obligation." *See* GAO, B-330330, *Impoundment Control Act—Withholding of Funds Through Their Date of Expiration*, at 9 (Dec. 10, 2018) (observing that the ICA "grants the President no authority whatsoever to rescind funds" and that "only Congress may rescind budget authority"); *see also Aiken County*, 725 F.3d at 261 n.1 (explaining that where the President has policy reasons for not wanting to spend funds, he "does not have unilateral authority to refuse to spend the funds," but rather "must *propose* the rescission of funds, and Congress then may decide whether to approve a rescission bill" (emphasis added)).

Setting aside that Defendants' position finds no support in the text of the ICA, it would prove far too much and, indeed, undermine the very purpose of the ICA by turning its protections against impounding funds into a mechanism for doing so. According to their theory, the executive branch can rescind appropriated funds at will—regardless of what appropriations laws say and how much money remains to be spent—provided the President proposes a rescission of the funds within the final forty-five days of the spending period. Take the circumstance here. It is undisputed the relevant appropriations acts have been valid law from the time they were enacted to today. For almost all that period, Defendants did not even dispute that the laws were mandatory and required them to spend the funds. The President never asked Congress to rescind the funds at issue even though he successfully sought rescission of analogous funds in May 2025. This was so despite

Plaintiffs' lawsuit and despite the fact that neither the TRO nor preliminary injunction impeded the President's ability to propose a rescission and give Congress the full period to answer (or not). Defendants, instead, several months after the preliminary injunction was issued, raised the possibility of proposing a rescission within the forty-five-day window, apparently on the theory that this would cause the funds to expire. *Glob. Health*, ECF No. 106 at 5–6. And Defendants would successfully achieve the effect of a rescission even though the appropriations acts remained the law of the land throughout this period, even though the very law contemplating the rescission proposal states funds must be "made available for obligation" absent congressional action to rescind them, 2 U.S.C. § 683(b), and even though Congress could—and has not—enacted the rescission proposed. This would be quite a departure from the ICA given that, as the Circuit has explained, "the '*raison d'etre*' of the entire legislative effort was to assert *control* over presidential impoundments." *City of New Haven*, 809 F.2d at 907 (citation omitted). "It is simply untenable to suggest that a Congress precluded from achieving this goal would have turned around and ceded to the President the very power it was determined to curtail." *Id.*; *see also id.* at 908 (rejecting argument that was "completely at odds with Congress' expressed intention to *control* rather than *authorize* presidential deferrals"); GAO, B-330330, *Impoundment Control Act—Withholding of Funds Through Their Date of Expiration*, at 8 (concluding that, in the context of a rescission proposal within the final forty-five days of the spending period, "the requirement to make amounts available for obligation in this situation prevails over the privilege to temporarily withhold the amounts").[7]

---

[7]  Defendants rely heavily on 2 U.S.C. § 684(a), which provides that a deferral "may not be proposed for any period of time extending beyond the end of the fiscal year in which the special message proposing the deferral is transmitted to the House and the Senate." Defendants suggest this provision "shows that Congress considered the possible effects of withholding funds close to

The appropriations acts remain law and, notwithstanding the rescission proposal, "Congress has not altered the legal landscape." *Aiken County*, 725 F.3d at 259. Defendants accordingly remain under a duty to comply with the appropriations laws unless and until Congress does change the law.[8]

### 2. *Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief*

The Court concludes that, on the record before the Court today, Plaintiffs have shown that they will suffer irreparable harm absent a preliminary injunction.

On appeal, the Circuit observed that some of the plaintiff organizations "are almost entirely financially dependent on funding from foreign-aid appropriations" and that, in light of the time that had passed following the large-scale termination of grants and other awards, the record was "simply less developed about how long [Plaintiffs] could financially continue without the opportunity to compete for impounded funds as opposed to the funds from existing contracts and why being denied immediate relief as to that opportunity would cause harm [Plaintiffs] would not suffer anyway." *Glob. Health*, 2025 WL 2480618, at *13. The Circuit accordingly could not conclude that the record strongly favored an injunction. *Id.*

On remand, Plaintiffs have supplemented the record. The Court finds based on the whole of the evidence, including the supplemental evidence, that Plaintiffs are on the brink of existential financial threat that jeopardizes their missions. Plaintiffs have adduced evidence showing that the

---

the end of the fiscal year and decided to limit such withholdings only for deferrals, not for rescissions." *Glob. Health*, ECF No. 135 at 30. Again, Defendants' argument contravenes the text of the ICA, which contemplates that funds proposed for rescission will be "made available for obligation" unless Congress rescinds them within the forty-five-day window. 2 U.S.C. § 683(b).

[8]    Defendants suggest that agency attempts to obligate funds proposed for rescission "would exceed apportionments approved by [OMB], which could entail risks under the Anti-Deficiency Act." *Glob. Health*, ECF No. 135 at 8. But OMB is a defendant here and therefore will be subject to the injunction requiring compliance with the appropriations acts.

organizations that have been able to survive this period will be permanently devastated if expiring appropriations are not made available. *See, e.g.*, *Glob. Health*, ECF No. 133-4 ¶ 14 (program's operations "will be permanently devastated" if "the expiring appropriations are not made available"); ECF No. 133-6 ¶ 10 (failure to obligate funds will require plaintiff to "further reduce our in-house resources and technical capabilities, severing employment and business relationships, reducing services, and diminishing our global competitiveness in a way that will be difficult to restore"); ECF No. 133-11 ¶¶ 14–15 (loss of opportunity to compete for funds will cause plaintiff's members to suffer harms including loss of unrecoverable revenues, terminating staff, and cutting programming).

Plaintiffs' declarations also describe the severe harms to their organizational missions that Plaintiffs have already experienced—and will only worsen—in light of the failure to spend appropriated funds, including closing or downsizing offices and eliminating jobs. *See, e.g.*, *Glob. Health*, ECF No. 133-8 ¶ 13 (describing cuts to staff). Several declarations discuss harms that organizations and the communities they serve will suffer if Defendants continue to refuse to spend congressionally appropriated foreign assistance funds. *See, e.g.*, *Glob. Health*, ECF No. 133-5 ¶ 13 (inability to compete for funds threatens "ability to implement vital programs that advance national security, food security, economic growth, and humanitarian assistance worldwide"); ECF No. 133-9 ¶ 11 (lost opportunity to compete for funds will require terminating staff and cutting programming); ECF No. 133-10 ¶ 9 (discussing loss of critical staff due to "uncertainty regarding appropriations"); ECF No. 133-11 ¶ 17 (member companies that will lose revenue due to expiration of funds "will need to make significant reductions in staffing" and "will not be able to meet their obligations to landlords and other vendors").

Defendants respond to Plaintiffs' evidence by asserting their organizations might benefit from current obligation plans, "such as where recipients of obligated funds enter into downstream contracts or grants with Plaintiffs." *Glob. Health*, ECF No. 135 at 34. They also say that, notwithstanding their withholding of several billions of dollars, "many appropriations are being obligated before expiration." *Id.* The Court finds Defendants' speculative assertions about the possibility Plaintiffs will benefit at some later time from downstream contracts, without any meaningful detail as to how the organizations here will benefit or how the obligation of funds relates to Plaintiffs' missions, does not overcome Plaintiffs' evidence.

Accordingly, while some organizations may have already been forced to shutter, the Court finds based on the evidence before it that Defendants' actions "threaten[] the very existence of [Plaintiffs'] business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). And Plaintiffs have shown that the "obstacles" created by Defendants' conduct "make it more difficult for [Plaintiffs] to accomplish their primary mission." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

### 3.  *The Balance Of The Equities And The Public Interest Favor Plaintiffs*

The remaining factors, balancing the equities and the public interest, generally "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016). These factors weigh in Plaintiffs' favor as well.

The Circuit has explained that "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters*, 838 F.3d at 12. "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* (internal quotation marks and citation omitted). Here, there is a substantial public interest in ensuring that Defendants comply with the appropriations laws

enacted by Congress. *Cf. Aiken County*, 725 F.3d at 267 (explaining that "our constitutional system of separation of powers would be significantly altered if we were to allow executive and independent agencies to disregard federal law in the manner asserted in this case").

Additionally, Plaintiffs have offered unrebutted evidence of massive harms that will result from Defendants' decision not to spend all expiring foreign assistance funds. Plaintiffs attest that their inability to compete for funds "will ultimately cause direct harm to some of the most vulnerable people around the world." *Glob. Health*, ECF No. 133-4 ¶ 14. Their organizations will not be able to provide "vital programs that advance national security, food security, economic growth, and humanitarian assistance worldwide." *Glob. Health*, ECF No. 133-5 ¶ 13; *see also, e.g.*, ECF No. 133-8 ¶ 14 (stating that "abrupt terminations in life-saving programs . . . would result from the failure to spend the appropriated funds"). And Defendants' actions will force organizations that rely on foreign assistance funds to lay off additional workers. *See, e.g.*, *Glob. Health*, ECF No. 133-5 ¶ 11; ECF No. 133-8 ¶ 13.

Defendants suggest that the Circuit's opinion is conclusive as to the proper balancing of the equities. *Glob. Health*, ECF No. 135 at 34. But the panel simply held that it had "no occasion to address whether there has been a constitutional or statutory violation because [Plaintiffs] lack a cause of action," so this factor did not "strongly" favor injunctive relief. *Glob. Health*, 2025 WL 2480618, at *13. As explained above, this Court now concludes Plaintiffs have a cause of action based on the avenue explicitly left open by the panel and have shown a clear statutory violation by Defendants.

Defendants also argue that Plaintiffs "would install the Court as an ongoing monitor of foreign assistance funding," which would "disrespect the role of the President in foreign affairs and would flout the separation of powers." *Glob. Health*, ECF No. 135 at 35. That is neither what

Plaintiffs seek nor what the Court grants. The requested injunction here simply requires that the agency Defendants comply with statutory commands from Congress to spend the funds appropriated for foreign assistance. The Executive retains the discretion to determine *how* those funds are spent. *Cf. Aiken County*, 725 F.3d at 257 ("The underlying policy debate is not our concern. The policy is for Congress and the President to establish as they see fit in enacting statutes, and for the President and subordinate executive agencies . . . to implement within statutory boundaries. Our more modest task is to ensure, in justiciable cases, that agencies comply with the law as it has been set by Congress."). The equities and the public interest weigh in favor of a preliminary injunction.[9]

## C.  Scope Of Relief

The Court must tailor the scope of relief to fit the challenged conduct and Plaintiffs' harms.

The Supreme Court recently held in *Trump v. CASA, Inc.*, 606 U.S. __, 145 S. Ct. 2540 (2025),

---

[9]    Although not part of this Court's balancing of the equities, the Court expresses concern that Defendants' litigation strategy in this case appears crafted with the specific goal of ensuring review at the highest levels occurs in an emergency posture. The TRO stage is one example. There, Defendants could not identify any concrete steps taken to comply with the TRO after nearly two weeks and, upon being given an additional thirty-six hours to comply, they filed an emergency appeal in which they represented—for the first time—that the ordered timeline was not feasible. As it turned out on remand, the number of payments that triggered the alleged emergency was in fact a quantity that the agencies were accustomed to processing in a single day. *See AIDS Vaccine*, 770 F. Supp. 3d at 131–32. Another example is Defendants' proposed timeline that brought the case to this point. After this Court's preliminary injunction ordered Defendants to obligate all congressionally appropriated funds, Defendants opted not to seek a stay. Instead, they affirmatively proposed to have the Circuit panel issue its opinion by August 15, leaving forty-five days until the expiration of funds and representing that this would provide sufficient time to obligate the remaining funds during the period, accounting for any further review. *See, e.g.*, *Glob. Health*, ECF No. 99 at 14. Yet Defendants later used the time crunch they proposed as a basis for filing an emergency application with the Supreme Court. *See* Application to Stay Injunction, *Trump v. Glob. Health Council*, No. 25A227 (U.S. Aug. 26, 2025). It is inevitable that there will be emergency postures in litigation, but it is quite another thing to create a strategy that prefers them. To the extent Defendants now have time pressure and billions of dollars to obligate, that is not an emergency but a circumstance of their own creation.

that in fashioning an injunction, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 2557. Heeding that mandate, this Court accordingly must ensure the relief ordered is no "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 2562–63. The Court thus limits its relief to only the categories of funds for which Plaintiffs are ready and able to compete. This scope of relief accords with the positions of both parties before the Circuit panel. *See Glob. Health*, 2025 WL 2480618, at *32 n.10 (Pan, J., dissenting) (noting counsel for Plaintiffs' representation at oral argument that his clients compete for "99 percent" of the funds in question but that the panel could affirm "only to the extent the injunction was . . . no broader than necessary to provide complete relief to the plaintiffs" (omission in original) (citation omitted)); Brief for Appellants, *Glob. Health*, No. 25-5097, at 63 (D.C. Cir. May 9, 2025) ("With respect to future funding obligations, plaintiffs have standing to seek at most an order as to programs or funds for which they are willing and able to compete.").

On remand, Defendants suggest that the scope of relief should be narrowed only to "those awards Plaintiffs have received historically" and not include all that they would be prepared to compete for. *Glob. Health*, ECF No. 135 at 36. However, Plaintiffs' harm stems from not only the awards they have not received but also the denial of the opportunity to compete in the future. *See Glob. Health*, 2025 WL 2480618, at *5. The group of plaintiffs here includes a broad assortment of aid grantees and associations that work across the spectrum of foreign aid. They have submitted unrebutted declarations attesting that they compete for funds across nearly all the categories of foreign assistance funds at issue in the relevant appropriations laws. *See Glob. Health*, ECF Nos. 133-4 to 133-11; *see also* ECF No. 133-2 (showing only eleven subcategories in which no plaintiff

would compete for funds). Plaintiffs represent that this will exclude roughly $500 million in appropriated funds from the scope of the injunction. *Glob. Health*, ECF No. 133-1 at 32. It is true that, although Plaintiffs' organizations appear to run the gamut of organizations who compete for such funds, Defendants' obligation of the funds may ultimately benefit nonparties; however, "that benefit [is] merely incidental." *CASA*, 145 S. Ct. at 2557 (alteration in original) (quoting *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring)).[10]

Even as to Plaintiffs, the Court is mindful that the preliminary injunction should be no broader than necessary given the claims asserted. The Court makes clear that although the relief afforded requires Defendants to obligate the full amount of funds consistent with appropriations acts, it does not impact Defendants' discretion to determine how to spend those funds. Defendants maintain all discretion the executive branch would ordinarily be afforded in determining how to spend the funds within the categories Congress has dictated. Defendants have also noted that it is typical, in the ordinary course, for a nominal amount of appropriated funds to go unspent, and Plaintiffs have not disputed this. While Defendants will be required to comply with appropriations, the injunction will not be violated if nominal amounts remain, as is ordinarily the case.

Finally, the Court makes clear that, although Congress has, to date, declined to act on the pending rescission proposal and the appropriations acts therefore remain the law, in the event

---

[10]   Defendants do not expressly ask the Court to require Plaintiffs to post security under Federal Rule of Civil Procedure 65; they suggest only that Plaintiffs "have not alleged they are able to satisfy the security posting requirement." *Glob. Health*, ECF No. 135 at 35. The Court finds that bond would not be appropriate here because it "would have the effect of denying the plaintiffs their right to judicial review of administrative action." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025) (quoting *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971)). Requiring resource-strapped organizations to post bond before they can obtain preliminary relief from likely unlawful government action that imposed financial strain on them would frustrate the goals of judicial review. Multiple courts in this District have declined to require security for similar reasons. *See id.*; *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 39 (D.D.C. 2025).

Congress acts to rescind all or part of the appropriations at issue, the injunction will not impose on Defendants any duty to obligate the rescinded funds.[11]

## III.    Conclusion

For these reasons, the *Global Health* Plaintiffs' motion for a temporary restraining order, preliminary injunction, and partial summary judgment is granted in part and denied in part. *Glob. Health*, ECF No. 133. Their request for a preliminary injunction is granted; their request for a temporary restraining order is denied as moot; and their request for partial summary judgment is denied without prejudice. The *AIDS Vaccine* Plaintiffs' motion for a preliminary injunction is granted. *AIDS Vaccine*, ECF No. 143. The *Global Health* Plaintiffs' motion for leave to file a second amended complaint is granted. *Glob. Health*, ECF No. 132.

Consistent with this opinion, it is hereby ordered:

- The agency Defendants—that is, all Defendants except the President—are enjoined to make available for obligation and obligate, by September 30, 2025, for the uses and purposes specified by Congress: (1) the expiring funds Congress appropriated for foreign assistance programs in the fifteen categories of appropriations specified in the *Global Health* Plaintiffs' motion from Title III and Title IV of the Further Consolidated Appropriations Act of 2024 and prior appropriations acts, unless Congress rescinds the relevant appropriation through duly enacted legislation; and (2) the minimum or specific expiring funds that Congress required the agency Defendants to obligate for particular uses and purposes in Section 7019(a) and Sections 7030–7061 of the Further

---

[11] The *Global Health* Plaintiffs also move for a temporary restraining order. That motion is denied as moot given that the Court grants preliminary injunctive relief. The *Global Health* Plaintiffs' motion for partial summary judgment is denied without prejudice to being refiled at the appropriate time.

Consolidated Appropriations Act of 2024 and prior appropriations acts, with the exception of the subcategories of funds for which no Plaintiffs would compete as identified in *Glob. Health*, ECF No. 133-2, unless Congress rescinds the relevant appropriation through duly enacted legislation. Defendants may not newly obligate expiring funds, or keep funds that are currently obligated in that status, and then de-obligate the funds after September 30, 2025, for the purpose of unilaterally withholding the funds.

Consistent with the Court's feasibility determinations at the prior preliminary injunction stage (which were then not appealed and never disputed), and the deference the Court has offered Defendants as a coordinate branch (including their proposal of the current schedule), the Court notes that if Defendants have concerns about the feasibility of their previously proposed schedule, the Court remains willing to consider a request to extend the relevant expiration dates of the funds on Defendants' motion. *See City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (discussing a court's equitable power to "simply suspend the operation of a lapse provision and extend the term of already existing budget authority" (quoting *Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977))). Defendants may file such a motion if the feasibility of obligating funds under the Court's injunction was affected by the three business days during which they were not under an order to make funds available for obligation, if they were mistaken in their expectation of the amount of time that would be required for further appellate review, or in light of any other feasibility concern that the Court may not be aware of that would warrant extension. *See Glob. Health*, ECF No. 126 at 5.

_____

AMIR H. ALI
United States District Judge

Date:   September 3, 2025

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**<u>NOTICE OF FILING</u>**

Defendants hereby provide notice of their filing in the Court of Appeals of a letter and attached declaration in Nos. 25-5097 & 25-5098 (D.C. Cir. Aug. 22, 2025) (Doc. 2131614).   A copy is submitted.

A44

Dated: August 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
JOSHUA N. SCHOPF (D.C. Bar 465553)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*

# EXHIBIT



**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7260
Washington, DC 20530

Tel: (202) 514-3388

August 22, 2025

VIA CM/ECF

Clifton Cislak, Clerk of Court
U.S. Court of Appeals for the D.C. Circuit
333 Constitution Avenue, NW
Washington, DC 20001

RE:     *Global Health Council v. Trump*;
        *AIDS Vaccine Advocacy Coalition v. Department of State*,
        Nos. 25-5097, 25-5098 (D.C. Cir.)

Dear Mr. Cislak:

I write regarding the pending cross-motions in the above-captioned cases. The government has previously explained to the Court that the government requires relief from the preliminary injunction in this case well in advance of September 30, when funds covered by the injunction begin to expire. The attached declaration provides additional information regarding the specific steps that must be taken in advance of that date if the preliminary injunction remains in effect. In light of those steps and the associated harms that would befall the government, the Solicitor General intends to seek relief from the Supreme Court after 10 AM on Tuesday, August 26, if the government has not received a decision on the pending cross-motions from this Court before that time.

Sincerely,

*/s/ Sean R. Janda*
Sean R. Janda

cc:     Counsel of Record (via CM/ECF)

A47

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Global Health Council, *et al.*,
          Plaintiffs-Appellees,

v.

Donald J. Trump, *et al.*,
          Defendants-Appellants.
    —————————

AIDS Vaccine Advocacy Coalition, *et al.*,
          Plaintiffs-Appellees,

v.

United States Department of State, *et al.*,
          Defendants-Appellants.

Nos. 25-5097, 25-5098

**DECLARATION OF JEREMY LEWIN**

I, Jeremy Lewin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.  I am over 18 years of age, of sound mind, and otherwise competent to make this declaration.  This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

    2.  I am currently serving as the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom (F), the Director of Foreign Assistance and a Senior Advisor to the Secretary of State. I am also performing the duties and functions of Deputy Administrator and Chief

A48

Operating Officer of the United States Agency for International Development (USAID). I have served as a policymaker at the Department of State and USAID since shortly after President Trump's inauguration in January 2025.

3. In my current roles, I oversee the management of foreign assistance resources appropriated to the Department of State and USAID, assist the Secretary in exercising his duties delegated under the Foreign Assistance Act, serve as the senior-most official and advisor to the Secretary on foreign assistance, democracy and values-based diplomacy issues around the world, and oversee the bureaus of Democracy, Human Rights and Labor, Populations, Refugees and Migration, Global Health Security and Diplomacy and the offices of Foreign Assistance Oversight and Global Food Security.

4. I submit this declaration in support of Defendants' request that the Court act as soon as possible, and no later than 10 AM on Tuesday, August 26, on the parties' competing pending motions to stay the preliminary injunction and/or immediately issue the mandate, or to grant rehearing en banc.

5. I understand that, notwithstanding the panel opinion that found reversible error in the preliminary injunction and ordered that it be vacated, that injunction remains in force because the mandate has not yet issued and a rehearing petition is pending. But that uncertainty puts State and USAID in an untenable position. For the reasons further described below, compliance with

A49

the preliminary injunction will require the government imminently to take actions that would not be reversible without causing severe irreparable harm to the United States and to its foreign policy. That is why Defendants asked this Court to expedite the appeals and issue a ruling before August 15. Although the Court did so, the current state of limbo threatens to defeat the purpose of the expedition.

6.  More specifically, some of the foreign assistance funds appropriated by Division F of the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, 138 Stat. 460, 729 (FCAA), and implicated by the preliminary injunction remain available only until September 30, 2025. If the injunction remains in force and requires the government to obligate all of those funds, State would have to take a variety of steps before that deadline to ensure compliance before the appropriated funds expire.

7.  Working backwards, one of those required steps, which applies to many of the funds at issue, is a notification to Congress of the planned obligation of the funds and details concerning the same. By statute, that notification must be made at least 15 days in advance of the obligation. *See* section 634A of the Foreign Assistance Act of 1961 (FAA); sections 7015(c), 7015(f), 7015(h)(2)(E), 7046(d)(3)(D), and 7058(a) of FY 2024 SFOAA. During this period, the Department generally briefs Members of Congress on proposed

programming and foreign policy and budgetary implications, and sometimes modifies planned programs or obligations based on Congressional feedback.

8.  Furthermore, before congressional notification, State must decide the terms and parameters of the obligation, and the mechanism through which the funds will flow (grants, contracts, etc).

9.  Because the funds at issue are for foreign assistance, the recipients of those awards would include foreign states, instrumentalities, and international organizations.  For example, the funds at issue are often obligated onto bilateral agreements between the United States and a foreign state, including Cooperative Agreements, Development Objectives Agreements, similar instruments.  Depending on the terms of these agreements, obligations, sub-obligations and modifications often require the active agreement of the foreign state.  Thus, obligations often require direct negotiation with foreign states or international organizations.

10.  Even when awards do not require direct bilateral diplomatic engagement, the Department generally consults with foreign states to ensure diplomatic alignment with the United States' foreign policy interests, and those of the relevant foreign states or international organizations.

11.  For the foreign assistance funds at issue—which would be obligated to programs in dozens of countries around the world—bilateral

diplomatic engagement negotiation would likely to consume approximately two weeks, even when expedited.

12.    By virtue of those final two steps alone, the relevant deadline is not September 30, but effectively September 2 (the day after Labor Day) at the very latest.

13.    Of course, there is also planning that must occur before those final steps; that work has been underway for some time, because Defendants did not know whether the panel would affirm or vacate the injunction, and it will continue over the next week.

14.    Unlike planning work, however, negotiation with foreign actors and congressional notification are close to irrevocable.  Most critically, it would cause immense irreparable harm to the foreign policy of the United States to enter into negotiations to award a large sum of money to a foreign state or international organization, let alone to announce it to Congress, only to renege at the last moment if this Court or the Supreme Court grants a stay of the injunction.  Those steps would damage both diplomatic and inter-branch relations, making it virtually impossible for Defendants to backtrack after starting down this road.  That is why it is critical to have legal clarity on the status of the injunction—including from the Supreme Court, if necessary—by September 2.

I declare that the foregoing is true and correct to the best of my knowledge.


Dated: August 22, 2025

Jeremy Lewin

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued July 7, 2025        Decided August 13, 2025
                              Reissued August 28, 2025

No. 25-5097

GLOBAL HEALTH COUNCIL, ET AL.,
APPELLEES

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT
OF THE UNITED STATES OF AMERICA, ET AL.,
APPELLANTS

———

Consolidated with 25-5098

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:25-cv-00402)
(No. 1:25-cv-00400)

———

*Sean R. Janda*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Brett A. Shumate*, Assistant Attorney General, *Eric D. McArthur*, Deputy Assistant Attorney General, and *Mark R. Freeman*, *Daniel Tenny,* and *Brian J. Springer*, Attorneys.

*Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *J. Emory Smith, Jr.*,

A54

Deputy Solicitor General, and *Ben McGrey*, *Thomas T. Hydrick*, *Joseph D. Spate*, Assistant Deputy Solicitors General, *Dave Yost*, Attorney General, Office of the Attorney General for the State of Ohio, *T. Elliot Gaiser*, Ohio Solicitor General, *Mathura J. Sridharan*, Deputy Solicitors General, *Steve Marshall*, Attorney General, Office of the Attorney General for the State of Alabama, *Treg R. Taylor*, Attorney General, Office of the Attorney General for the State of Alaska, *Tim Griffin*, Attorney General, Office of the Attorney General for the State of Arkansas, *James Uthmeier*, Attorney General, Office of the Attorney General for the State of Florida, *Christopher M. Carr*, Attorney General, Office of the Attorney General for the State of Georgia, *Theodore E. Rokita*, Attorney General, Office of the Attorney General for the State of Indiana, *Brenna Bird*, Attorney General, Office of the Attorney General for the State of Iowa, *Kris Kobach*, Attorney General, Office of the Attorney General for the State of Kansas, *Liz Murrill*, Attorney General, Office of the Attorney General for the State of Louisiana, *Lynn Fitch*, Attorney General, Office of the Attorney General for the State of Mississippi, *Michael T. Hilgers*, Attorney General, Office of the Attorney General for the State of Nebraska, *Drew H. Wrigley*, Attorney General, Office of the Attorney General for the State of North Dakota, *Gentner Drummond*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Marty Jackley*, Attorney General, Office of the Attorney General for the State of South Dakota, *Jonathan Skrmetti*, Attorney General and Reporter, Office of the Attorney General for the State of Tennessee, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Derek E. Brown*, Attorney General, Office of the Attorney General for the State of Utah, and *John B. McCuskey*, Attorney General, Office of the Attorney General for the State of West Virginia, were on the brief for *amici curiae* States of Ohio, South Carolina, and 18 Other States in support of appellants.

*Daniel F. Jacobson* argued the cause for appellees. With him on the brief were *Lauren E. Bateman*, *Nicolas A. Sansone*, *Allison M. Zieve*, *William C. Perdue*, *Sally L. Pei*, *Stephen K. Wirth*, and *Samuel F. Callahan.*

*Alan B. Morrison* was on the brief for *amicus curiae* Alan B. Morrison in support of appellees.

*Elizabeth B. Wydra* and *Brianne J. Gorod* were on the brief for *amicus curiae* Constitutional Accountability Center in support of appellees.

*Brian L. Schwalb*, Attorney General, Office of the Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Mark A. Rucci*, Assistant Attorneys General, *Kris Mayes*, Attorney General, Office of the Attorney General for the State of Arizona, *Rob Bonta*, Attorney General, Office of the Attorney General for the State of California, *Philip J. Weiser*, Attorney General, Office of the Attorney General for the State of Colorado, *William Tong*, Attorney General, Office of the Attorney General for the State of Connecticut, *Kathleen Jennings*, Attorney General, Office of the Attorney General for the State of Delaware, *Anne E. Lopez*, Attorney General, Office of the Attorney General for the State of Hawaii, *Kwame Raoul*, Attorney General, Office of the Attorney General for the State of Illinois, *Aaron M. Frey*, Attorney General, Office of the Attorney General for the State of Maine, *Anthony G. Brown*, Attorney General, Office of the Attorney General for the State of Maryland, *Andrea Joy Campbell*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Dana Nessel*, Attorney General, Office of the Attorney General for the State of Michigan, *Keith Ellison*, Attorney General, Office of the Attorney General for the State

of Minnesota, *Aaron D. Ford*, Attorney General, Office of the Attorney General for the State of Nevada, *Matthew J. Platkin*, Attorney General, Office of the Attorney General for the State of New Jersey, *Raul Torrez*, Attorney General, Office of the Attorney General for the State of New Mexico, *Letitia James*, Attorney General, Office of the Attorney General for the State of New York, *Jeff Jackson*, Attorney General, Office of the Attorney General for the State of North Carolina, *Dan Rayfield*, Attorney General, Office of the Attorney General for the State of Oregon, *Peter F. Neronha*, Attorney General, Office of the Attorney General for the State of Rhode Island, *Charity R. Clark*, Attorney General, Office of the Attorney General for the State of Vermont, *Nicholas W. Brown*, Attorney General, Office of the Attorney General for the State of Washington, and *Joshua L. Kaul*, Attorney General, Office of the Attorney General for the State of Wisconsin, were on the brief for *amici curiae* the District of Columbia, et al. in support of appellees.

*Patrick R. Jacobi* and *Alexandra L. St. Romain* were on the brief for *amici curiae* Law Scholars in support of appellees.

*Cerin M. Lindgrensavage* was on the brief for *amicus curiae* Protect Democracy Project in support of appellees.

Before: HENDERSON, KATSAS and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Dissenting opinion by *Circuit Judge* PAN.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  This is a case about Executive impoundment of funds appropriated by the Congress.  On January 20, 2025, President Trump issued an executive order directing the State Department and U.S. Agency for International Development (USAID) to freeze

foreign aid spending. Seeking to restore the flow of funds, aid grantees and associations (together, the grantees) sued under the Administrative Procedure Act (APA) and the U.S. Constitution. This expedited appeal arises from the district court's grant of a preliminary injunction requiring, in relevant part, the government to make available for obligation the full amount of foreign assistance funds the Congress appropriated for fiscal year 2024.

The district court erred in granting that relief because the grantees lack a cause of action to press their claims. They may not bring a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory. Nor do the grantees have a cause of action to enforce the Impoundment Control Act (ICA) through the APA, because the ICA precludes such review. And the grantees may not reframe this fundamentally statutory dispute as an ultra vires claim either. Accordingly, we vacate the part of the district court's preliminary injunction involving impoundment.

## I.

### A.

Under the Constitution, the Congress has the power to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const., art. I, § 8, cl. 1. In other words, the Congress "may raise and appropriate money to advance the general welfare." *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2231 (2025) (citation modified). The Constitution further mandates that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., art. I, § 9, cl. 7. The Congress therefore has "exclusive power over the federal purse." *Dep't of Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir.

2012) (citation omitted). At the same time, the Take Care Clause "charges the Executive Branch with enforcing federal law," including spending-power laws. *Medina*, 145 S. Ct. at 2229 (citing U.S. Const., art. II, § 3).

The Congress has also enacted legislation providing a framework for furnishing foreign assistance in support of specified international development goals. *See* Foreign Assistance Act of 1961, Pub. L. No. 87-195, 75 Stat. 424 (codified as amended at 22 U.S.C. § 2151 *et seq.*). To further those goals, the Congress appropriates foreign assistance funds for the State Department and USAID to obligate for certain purposes. Here, the grantees allege that the Executive has unlawfully impounded—that is, improperly delayed or withheld—certain sums appropriated in fiscal year 2024 for bilateral economic assistance and international security assistance. *See* Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, div. F, tits. III–IV, 138 Stat. 460, 740–50 (2024 Appropriations Act). For example, amounts at issue include almost four billion dollars for USAID to spend on global health activities until September 30, 2025, and over six billion dollars for HIV/AIDS programs to be spent until September 30, 2028. *Id.* at 740, 742.

In 1974, the Congress imposed statutory requirements on the Executive dealing with the obligation and expenditure of appropriated funds. *See* Impoundment Control Act of 1974, Pub. L. No. 93-344, tit. X, 88 Stat. 297, 332–39 (codified at 2 U.S.C. § 681 *et seq.*). To reserve appropriated funds within the Executive until expiry or request the Congress to rescind funds, known as permanent impoundment, the President must send a special message to both chambers of the Congress. 2 U.S.C. § 683(a). The message must address the (1) amount at issue; (2) department and project or functions involved; (3) reasons for rescission or reservation; (4) fiscal, economic and

budgetary effects; and (5) relevant facts, circumstances and considerations as well as effects on the programs and their goals. *Id.* Any amount proposed to be rescinded or reserved "shall be made available for obligation" unless the Congress passes a rescission bill within 45 calendar days of receipt of the special message. *Id.* §§ 682(3), 683(b).

The President must also send a special message containing specific information to the Congress when he proposes to defer, or temporarily impound, appropriated funds. *Id.* §§ 682(1), 684. Although the President may make "trivial" and "everyday" deferrals for "routine programmatic" reasons, he may not do so based on "policy" disagreements, and he must still report programmatic deferrals to the Congress. *City of New Haven v. United States*, 809 F.2d 900, 902 n.3, 908–09 (D.C. Cir. 1987); *see also* 2 U.S.C. § 684. The Congress may disapprove a proposed deferral through an impoundment resolution. 2 U.S.C. § 682(4). The ICA also provides particular procedures to ensure timely congressional consideration of a bill or resolution regarding a proposed rescission or deferral, respectively. *Id.* § 688.

Finally, the ICA sets out a mechanism for reporting and enforcement by the Comptroller General. *Id.* §§ 686–87. The Comptroller General is the head of the Government Accountability Office (GAO), which is constitutionally part of the legislative branch. *See Bowsher v. Synar*, 478 U.S. 714, 727–32 (1986). If the Comptroller General finds that the President or another Executive official "is to" reserve or defer funds or "has ordered, permitted, or approved" such action and failed to send a special message, he must report the reserve or deferral to the Congress and that report then constitutes a special message. 2 U.S.C. § 686. Relatedly, if "budget authority is required to be made available for obligation" and is not, the Comptroller General is "expressly empowered" to

sue the Executive to "require such budget authority to be made available" after filing an "explanatory statement" with the Congress and waiting 25 calendar days. *Id.* § 687. If the Comptroller General brings suit, the U.S. District Court for the District of Columbia is "expressly empowered" to enter "any decree, judgment, or order which may be necessary or appropriate to make such budget authority available for obligation." *Id.* The ICA further provides that nothing in it "shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment." *Id.* § 681(3).[1]

## B.

On January 20, 2025, the President issued an executive order to reevaluate U.S. foreign aid policies. Exec. Order No. 14,169, 90 Fed. Reg. 8,619 (Jan. 20, 2025) (Reevaluating Foreign Aid). Section 3 of the order required (a) an immediate pause in foreign development assistance, (b) a review of foreign assistance programs in consultation with the Director of the Office of Management and Budget (OMB) and (c) a determination within 90 days on whether to continue each program, subject to the Secretary of State's agreement. *Id.* § 3(a)–(c). Foreign assistance fund disbursement could be resumed earlier than 90 days if the Secretary of State or his designee—in consultation with the OMB Director—decided to continue the program and the Secretary of State could also waive the pause for specific programs. *Id.* § 3(d)–(e).

---

[1] Impoundment must also comply with the Anti-Deficiency Act. *See City of New Haven*, 809 F.2d at 906 n.18 (quoting 31 U.S.C. § 1512(c)); 2 U.S.C. § 684(b).

On January 24, the Secretary of State issued a memorandum suspending new funding obligations for State Department- or USAID-funded programs subject to certain waivers, USAID issued instructions to pause new programs and issue stop-work orders and OMB issued a memorandum pausing foreign-aid financial assistance. Within weeks, the State Department and USAID suspended or terminated thousands of grant awards. Since then, the State Department and USAID have also begun major restructuring and downsizing efforts and the State Department has completed its programmatic review of foreign assistance programs.

Recipients of foreign-assistance funds sued to enjoin various executive branch defendants from implementing the executive order.[2] One group of grantees brought two constitutional and four APA claims.[3] Under the Constitution, they allege violations of (1) the separation of powers and (2) the Take Care Clause, and under the APA they allege (3) unlawful suspension of grants, (4) unlawful impoundment of appropriated funds, (5) violation of the ICA and (6) violation of the Anti-Deficiency Act. Another set of grantees brought four claims: (1) arbitrary and capricious action in violation of the APA, (2) action contrary to statutory

---

[2] Defendant-Appellants are the President, Secretary of State, Acting Administrator of USAID, Director of Foreign Assistance for the Department of State, Acting Deputy Administrator for Policy and Planning of USAID, Acting Deputy Administrator for Management and Resources of USAID, and the Director of OMB as well as the Department of State, USAID and OMB.

[3] Plaintiff-Appellees are AIDS Vaccine Advocacy Coalition and Journalism Development Network, Inc.

and constitutional law in violation of the APA, (3) violation of the separation of powers and (4) ultra vires action.[4]

On February 13, the district court granted in part and denied in part a temporary restraining order (TRO) and enjoined executive branch defendants other than the President from enforcing or giving effect to certain sections of the State Department memorandum and any other directives that implement sections 3(a) and (c) of the executive order. *AIDS Vaccine Advoc. Coal. v. Dep't of State* (*AVAC I*), 766 F. Supp. 3d 74, 84–85 (D.D.C. 2025).[5] After the district court entered a subsequent order to enforce its TRO, we dismissed the government's emergency appeal of that order for lack of appellate jurisdiction and denied mandamus relief. *AIDS Vaccine Advoc. Coal. v. Dep't of State*, No. 25-5046, 2025 WL 621396, at *1 (D.C. Cir. Feb. 26, 2025). In turn, the U.S. Supreme Court also rejected the government's request to vacate the enforcement order. *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753 (2025) (mem.).

---

[4] Plaintiff-Appellees are Global Health Council; Small Business Association for International Companies; HIAS; Management Sciences for Health, Inc.; Chemonics International, Inc.; DAI Global LLC; Democracy International, Inc.; and American Bar Association.

[5] Restrained defendants are Marco Rubio, Secretary of State and Acting Administrator of USAID; Peter Marocco, then-Director of Foreign Assistance for the Department of State, then-Acting Deputy Administrator for Policy and Planning of USAID and then-Acting Deputy Administrator for Management and Resources of USAID, who was later removed as a defendant below; Russell Vought, Director of OMB; the Department of State; USAID; OMB; and their agents. *AIDS Vaccine Advoc. Coal. v. Dep't of State* (*AVAC II*), 770 F. Supp. 3d 121, 155 (D.D.C. 2025).

On remand, the district court granted in part and denied in part the grantees' motion for a preliminary injunction. *AIDS Vaccine Advoc. Coal. v. Dep't of State* (*AVAC II*), 770 F. Supp. 3d 121 (D.D.C. 2025). First, the court found that the grantees have Article III standing because they are financially injured by the defendants' blanket suspension of funds and an injunction against that suspension redresses at least in part that harm. *Id.* at 132–34. Next, the court addressed claims under the APA relating to the terminations, suspensions and stop-work orders issued between the dates of the executive order and the TRO for foreign assistance grants, cooperative agreements and contracts. *Id.* at 134–43. The district court held that the grantees would likely succeed on their APA claims as to the initial funding freeze, between the January 20 executive order and February 13 TRO, but not the subsequent large-scale termination of contracts. *Id.* Those claims are not on appeal.

As to the grantees' impoundment claims, the court determined that the grantees were likely to succeed in showing that the executive branch was unlawfully "engaging in a unilateral rescission or deferral of congressionally appropriated funds in violation of Congress's spending power." *Id.* at 143. The court emphasized that here the Congress used its spending power through the 2024 Appropriations Act and the ICA, and the President's power is at its "lowest ebb" when he "takes measures incompatible with the expressed or implied will of Congress." *Id.* at 144 (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)).

The court further found no indication that the President had complied with the procedures required by the ICA or the Anti-Deficiency Act for impounding congressionally appropriated funds and thus reasoned that his actions likely violated the three statutes at issue and the Constitution. *Id.* at 144–48 & nn.14, 18. The court additionally rejected the

government's arguments that the grantees cannot bring a freestanding constitutional claim and that the ICA precludes the grantees from suing under the APA to enforce the ICA. *Id.* at 148 n.17. It also held that the defendants likely acted ultra vires. *Id.* n.18. The court did not reach the grantees' Take Care Clause claim. *Id.* n.17.

Regarding the other preliminary injunction factors, the court found that the grantees were likely to suffer irreparable injury from financial harm threatening their continued existence and imposing obstacles to their missions. *Id.* at 149–52. Moreover, it found that the equities and public interest weighed in favor of an injunction because there is no public interest in unlawful agency action and the executive branch may still review foreign aid programs. *Id.* at 152.

Accordingly, the court enjoined the government in relevant part "from unlawfully impounding congressionally appropriated foreign aid funds" and ordered it to "make available for obligation the full amount of funds" appropriated in the 2024 Appropriations Act. *Id.* at 155. The government timely appealed and we agreed to expedite the appeal.

## II.

The government does not dispute Article III standing except as it relates to the appropriate scope of relief granted. Nevertheless, we have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (citation omitted). To establish standing, the grantees must show (1) injury in fact that is concrete and particularized and actual or imminent rather than conjectural or hypothetical, (2) causation fairly traceable to the defendants' challenged actions and (3) redressability by a favorable decision that is likely as opposed to merely speculative. *Lujan*

*v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Because "standing is not dispensed in gross . . . , plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted).

The Executive's initial funding freeze and suspension of contracts plainly caused the grantees "immense harm, including by inflicting massive financial injuries [on the grantees], forcing them to significantly reduce core operations and staff." *AVAC II*, 770 F. Supp. 3d at 133 (citing *AVAC I*, 766 F. Supp. 3d at 78–82). That harm could be redressed at least in part by a "determination that the blanket suspension was unlawful." *Id.* But in the earlier TRO the district court cites for support, it observes that the grantees did "not assert this harm based upon expectations of receiving future grants or aid." *AVAC I*, 766 F. Supp. 3d at 79. Instead, they did so based only "upon expectations set in existing contracts with the respective agencies." *Id.* The government has paid out substantially all of the amounts owed on existing contracts for work completed between January 20 and February 13, as required by the part of the district court's injunction that is not on appeal. Thus, the question before us is whether the grantees also established standing as to their impoundment claims.

At oral argument, the grantees' counsel relied on the district court's preliminary injunction hearing and their declarations to support impoundment standing. Earlier, at the preliminary injunction hearing, the grantees had asserted that the court could redress their injuries by ordering funds to be made available because the grantees would be eligible to compete for the funds even if not guaranteed to obtain them. *See* Prelim. Inj. Hr'g at 14–15, *AVAC II*, 770 F. Supp. 3d (D.D.C. Mar. 10, 2025) (No. 1:25-cv-402), Dkt. 58. Indeed, a plaintiff may be harmed by denial of the opportunity to

compete for a pool of funds for which they are able and willing to compete. *See Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1014–16 (D.C. Cir. 2022). And the declarations make clear the degree to which the grantees are financially dependent on appropriated foreign assistance funds. For example, Democracy International attests that 96 per cent of its 2024 revenue came directly from USAID. J.A. 346. Moreover, even the prospect of a "single dollar" can "effectuate a partial remedy" and thereby "satisf[y] the redressability requirement." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (citation omitted).

Thus, because even the prospect of competing for funds months later would partially redress the injuries to the grantees' finances, they have established standing. Because we hold that the grantees have standing due to their financial injuries, we need not separately address alleged harm to their missions.

## III.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.* at 24 (citation omitted).

The balance-of-equities and public-interest factors merge if the government is the opposing party. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "In this circuit, it remains an open question whether the 'likelihood of success' factor is 'an independent, free-standing requirement,' or whether, in cases where the other three factors strongly favor issuing an

injunction, a plaintiff need only raise a 'serious legal question' on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 393, 398 (D.C. Cir. 2011)).

We review the district court's decision whether to grant a preliminary injunction for abuse of discretion, its legal conclusions de novo and its findings of fact for clear error. *Hanson v. District of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (per curiam). Here, we conclude that the district court abused its discretion in granting a preliminary injunction because the grantees failed to show they are likely to succeed on the merits and the other *Winter* factors do not "strongly favor" the issuance of an injunction.

## A.

The district court held in the main that the grantees were likely to succeed on their constitutional claim that the government violated separation-of-powers principles by impounding funds in violation of the 2024 Appropriations Act, the ICA and the Anti-Deficiency Act. *AVAC II*, 770 F. Supp. 3d at 143–48. In a footnote, it rejected the government's arguments that the court could not also find action contrary to law under the APA based on a violation of the ICA. *See id.* at 148 n.17. In another footnote, it held that the grantees were likely to succeed on their ultra vires claim. *See id.* at 148 n.18. Because the grantees lack a cause of action to bring any of these claims, the district court committed legal error.[6]

---

[6] The dissent argues that our discussion of the statutory and ultra vires causes of action is dicta because "any merits arguments that have no connection to the separation-of-powers analysis are irrelevant to the court's granting of the preliminary injunction" and because the ultra vires claim "is not raised in the government's

1.

"Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024) (first citing *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022); and then citing 42 U.S.C. § 1983). Here, the grantees assert a non-statutory right to vindicate separation-of-powers principles but they are foreclosed from doing so by *Dalton v. Specter*, 511 U.S. 462 (1994).

As a threshold matter, the grantees argue in a surreply brief that the government has forfeited reliance on *Dalton* by failing to raise it in its opening brief. That oversight is hard to understand. Nevertheless, the entire opening brief proceeds from the premise that this dispute raises a statutory claim—and therefore by implication not a constitutional one, despite the district court's characterization otherwise—which is in effect the *Dalton* argument that the government advanced below. *See AVAC II*, 770 F. Supp. 3d at 148 n.17. "And once an argument

---

opening brief." Dissenting Op. 28 n.4. That is incorrect. The district court's contrary-to-law determination directly follows its rejection of the government's argument applying *Dalton v. Specter*, 511 U.S. 462 (1994), and contrasts with the ensuing paragraph, where it declined to reach the grantees' Take Care Clause argument (as, therefore, do we). *AVAC II*, 770 F. Supp. 3d at 148 n.17. The district court explicitly determined that the grantees "would be likely to succeed on their claim that Defendants acted *ultra vires*." *Id.* n.18. And the government's briefing on the ultra vires cause of action issue is subject to the same forfeiture analysis as the *Dalton* issue discussed below.

is before us, it is our job to get the relevant case law right. Indeed, a party cannot forfeit or waive recourse to a relevant case just by failing to cite it." *United States v. Hillie*, 39 F.4th 674, 684 (D.C. Cir. 2022) (quotation omitted).

The Supreme Court has also held that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) (citation modified); *see also id.* at 447 ("A court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." (citation modified)). Here, the grantees seek to pursue an implied equitable cause of action not arising under the APA. We must therefore determine the scope of any such cause of action, which depends on whether the underlying claim is properly characterized as statutory or constitutional. And *Dalton* establishes the framework for resolving that question.[7]

This also fits with the purpose of forfeiture doctrine, which is intended to prevent "sandbagging of appellees" and any expectation that judges be "mindreaders." *Jones Lang LaSalle Americas, Inc. v. NLRB*, 128 F.4th 1288, 1297 (D.C. Cir. 2025). Here, the issue was fully briefed below and the grantees were able to respond on appeal in their surreply brief, providing us

---

[7] Contrary to the dissent's assertion otherwise, Dissenting Op. 27–28, the *Dalton* issue is antecedent to the question before us of whether the district court erred in entering an injunction based on a separation-of-powers violation.

with adversarial briefing. Thus, we hold that the *Dalton* argument is not forfeit.

In *Dalton*, the Supreme Court reviewed a circuit court's reasoning that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine," and therefore "judicial review must be available to determine whether the President has statutory authority for whatever action he takes." *Dalton*, 511 U.S. at 471 (citation modified). The Court rejected that effort to recast statutory claims as constitutional ones. The Court emphasized that it had "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority" and explained that otherwise there would be "little need" for the established distinction between unconstitutional and ultra vires conduct. *Id.* at 472 (citations omitted). Moreover, plaintiffs would otherwise be able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one. *See id.* at 474.[8]

The grantees cite several cases in support of their right to bring their constitutional claim here but each is distinguishable. First, the grantees point to *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and *Collins v. Yellen*, 594 U.S. 220 (2021), where plaintiffs

---

[8] The dissent recognizes that not every claim that the Executive violated a statute can be recharacterized as a constitutional claim by appeal to the separation of powers. Dissenting Op. 34–35. But it offers no defensible theory for why *this* claim—that the President violated the ICA and the 2024 Appropriations Act—can be so characterized. Moreover, despite the dissent's occasional suggestion to the contrary, the line between constitutional and statutory claims cannot turn on the amount of disputed spending at issue.

brought separation-of-powers challenges to statutory restrictions on the President's power to remove executive officers. But in that line of cases the plaintiffs challenged the constitutionality of the statute itself. From the outset, the government has not contested the constitutionality of the relevant statutes. *See AVAC II*, 770 F. Supp. 3d at 144.[9] And the grantees unquestionably do not do so; on the contrary, they seek to enforce the statutes.

The grantees also cite *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), in which the High Court held that the President lacked the constitutional authority to seize steel mills to avoid a strike and maintain output for the Korean War effort. As the Court later explained in *Dalton*, the "only basis of authority asserted" in *Youngstown* "was the President's inherent constitutional power as the Executive and the Commander in Chief of the Armed Forces." 511 U.S. at 473. "*Youngstown* thus involved the conceded *absence* of *any* statutory authority, not a claim that the President acted in excess of such authority." *Id.*[10]

---

[9] The dissent makes much of the government's invocation of its Article II powers in the Executive Order and the district court. Dissenting Op. 39–43. But in this Court, the government disclaims any argument that the statutes violate Article II. In failing to address the reviewability or the merits of such an argument, we do not allow the government to "change its position" on appeal. *Id.* at 40. Instead, we simply decline to address the reviewability or the merits of a constitutional defense that the government advanced briefly below and then abandoned.

[10] Many of the dissent's references to *Youngstown* concern Justice Jackson's concurrence, which famously articulated a tripartite framework for assessing interbranch conflicts on the merits. *See, e.g.*, Dissenting Op. 39–43. But we have no occasion to address

On appeal, the government disclaims any constitutional defense, although it maintains that the defendants committed no statutory violations. The grantees characterize this as an ad hoc litigating position, claiming that in the executive order and below the government relied exclusively on constitutional authority for impoundment. That is incorrect. The executive order relied on the President's authority under "the Constitution *and the laws of the United States of America*." Reevaluating Foreign Aid, 90 Fed. Reg. at 8,619 (emphasis added). And the government did raise a *Dalton* argument in district court, contending that the dispute was "purely statutory." Opp'n to Pl.'s Mot. for Prelim. Relief at 23, *AVAC II*, 770 F. Supp. 3d 121 (D.D.C. Mar. 10, 2025) (No. 1:25-cv-402), Dkt. 34. Granted, in district court the government went on to assert "vast and generally unreviewable" foreign affairs powers. *Id.* at 24–26 (citation modified). But it further argued—albeit in the context of the grantees' APA claims—that it did not exceed its statutory authorization or act contrary to the statutes. *Id.* at 33–36. In turn, those alleged statutory violations must be the predicate acts for the constitutional claims because without an appropriations statute there could be no improper impoundment. Thus, *Youngstown* is inapposite.[11]

---

that framework where, as here, the case is resolved by the antecedent question of whether the grantees had a cause of action in the first place.

[11] The dissent characterizes our position as claiming that "if the President asserts both constitutional and statutory authority to validate his conduct, the court may characterize the whole dispute as statutory." Dissenting Op. 41. Not so. Instead, this dispute is fundamentally statutory because the alleged constitutional violation is predicated on the underlying alleged statutory violations.

The grantees further rely on *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), but that case cuts against them. There, healthcare providers brought a Supremacy Clause claim against state officials to enforce the Medicaid Act. *Id.* at 323–24. The Supreme Court acknowledged that under *Ex parte Young*, 209 U.S. 123 (1908), courts may grant injunctive relief against state officials for violations of federal law. *Id.* at 327. But that "judge-made *remedy*" did not "rest[] upon an implied *right of action* contained in the Supremacy Clause." *Id.* (emphases added). Instead, analyzing the text of the Supremacy Clause, the Court highlighted that it is "silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325.[12] As a result, it held that there was no right of action under the Constitution itself. *Id.* at 324–27. Thus, *Armstrong* as well as *Dalton* rejected the idea that a plaintiff may transform a statutory claim into a constitutional one to avoid limits on judicial review.

In their surreply brief, the grantees point to two more cases in their attempt to rebut *Dalton*. Neither does the trick. First, the grantees reference *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013). But the dispute there was about whether a federal

---

[12] As the grantees note, *Collins* avers broadly that "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." 594 U.S. at 245. In context, the Court was simply explaining that, because the separation-of-powers doctrine protects "all the people," a clause in the relevant statute transferring shareholder rights did not foreclose shareholders from vindicating rights they held "in common" with other citizens. *Id.* at 244–46. That an aggrieved party with standing may bring a claim to challenge a statute as unconstitutional does not mean that such a party may bring a constitutional claim to enforce a statutory violation.

agency had to continue with a mandatory licensing process despite lacking sufficient funds to complete the process, thereby only indirectly implicating appropriated funds. *Id.* at 257–60. More importantly, that case involved a writ of mandamus under the APA to compel federal officers to perform a statutory duty unreasonably withheld rather than a constitutional cause of action. Pet. for Writ of Mandamus at 3, *In re Aiken County*, 725 F.3d 255 (D.C. Cir. 2013) (No. 11-1271) (citing 28 U.S.C. § 1651(a); 5 U.S.C. § 706(1)).[13]

The grantees also rely on *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996). There, we considered whether an executive order relying on authority under a statute that granted the President broad discretion was reviewable for an alleged violation of another statute. *Id.* at 1329–32. We rejected the government's argument that review was unavailable simply because the President claimed authority to act under a different statute that conferred broad authority; otherwise, the President could always invoke such a statute to "bypass scores of statutory limitations on governmental authority." *Id.* Granted, in *Reich* we said that "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President

---

[13] The dissent relies extensively on another mandamus case, *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838). Dissenting Op. *passim*. There, the Postmaster General refused to pay out an award made to mail contractors by the Solicitor of the Treasury pursuant to statutory authority. The Supreme Court held that a writ of mandamus could issue because the Postmaster's duty was of a "mere ministerial character." *Id.* at 610. But the fact that plaintiffs can sometimes satisfy the stringent standards for mandamus in no way suggests that they can end-run those standards by styling claims that the President violated statutes as constitutional claims implicating the separation of powers.

and contains no limitations on the President's exercise of that authority, judicial review of an abuse of discretion claim is not available." *Id.* at 1331. But *Dalton* had four holdings. *See Dalton*, 511 U.S. at 476–77. Only the fourth holding was at issue in *Reich*. The third holding explained that statutory claims cannot be transformed into constitutional ones and applies here. Moreover, in *Reich* we emphasized that the presidential action at issue was not "even contemplated by Congress." 74 F.3d at 1332. Here, the ICA provides a mechanism for the President to act on impoundment. Finally, *Reich* states that "an independent claim of a President's violation of the Constitution would certainly be reviewable," but here the constitutional claim is predicated on underlying statutory violations. *Id.* at 1326.[14]

---

[14] The dissent repeatedly suggests that our straightforward application of *Dalton* will insulate large swaths of presidential action from judicial review. *See, e.g.*, Dissenting Op. 46–47. It is mistaken. Presidential action may be reviewed through APA challenges to final agency action by subordinates implementing the President's directives where such review is not otherwise precluded. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992). And ultra vires review remains available to test presidential action alleged to violate any spending or other statute, provided that plaintiffs can plausibly allege action contrary to a clear and mandatory statutory prohibition. *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022). We simply hold that such claims must meet the standards governing review of ultra vires claims, and cannot be recast as constitutional claims through the mere invocation of the separation of powers.

In sum, we conclude that *Dalton* controls this case and the grantees lack a cause of action to bring their freestanding constitutional claim.[15]

---

[15] The dissent points out that our application of *Dalton* creates a split with the Ninth Circuit. Dissenting Op. 23, 36–37 (citing *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023)). Indeed, the Ninth Circuit has taken "an expansive view of the constitutional category of claims highlighted in *Dalton*." *Murphy Co.*, 65 F.4th at 1130. But in the very cases that *Murphy Co.* relies on, the Supreme Court has signaled that the Ninth Circuit errs in doing so.

First, *Murphy Co.* cites *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), where the Ninth Circuit refused to grant a stay of an injunction preventing the government from reprogramming Department of Defense funds for construction of a border wall. The Supreme Court subsequently granted a stay, reasoning that the government had made "a sufficient showing at this stage *that the plaintiffs have no cause of action*." *Trump v. Sierra Club*, 140 S. Ct. 1 (2019) (mem.) (emphasis added); *see also id.* (Breyer, J., concurring in part and dissenting in part) ("This case raises novel and important questions about the ability of private parties to enforce Congress' appropriations power."); *Nken*, 556 U.S. at 434 (requiring a stay applicant to make a "strong showing that he is likely to succeed on the merits" (quotation omitted)).

Second, *Murphy Co.* cites the merits decision in the same case. Despite the Supreme Court's determination that the government made a strong showing that plaintiffs lacked a cause of action, a divided panel of the Ninth Circuit held that Sierra Club had "both a constitutional and an *ultra vires* cause of action." *Sierra Club v. Trump*, 963 F.3d 874, 887 (9th Cir. 2020). Unsurprisingly, the Court promptly granted certiorari to address the cause of action issue. *See Trump v. Sierra Club*, 141 S. Ct. 618 (2020) (mem.); *see also* Br. for Pet'r at (I) (presenting question of whether Respondents had a "cognizable cause of action"). Ultimately, the arrival of the Biden administration meant there was no longer a live controversy and the

2.

In passing, the district court rejected the government's argument that the ICA precludes the grantees from bringing suit under the APA to enforce its provisions. *AVAC II*, 770 F. Supp. 3d at 148 n.17. We thus turn to the question whether the grantees may bring an APA claim alleging that the defendants have acted contrary to law by violating the ICA.

"The APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute' but withdraws that cause of action to the extent the relevant statute 'precludes judicial review.'" *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (first quoting 5 U.S.C. § 702; and then quoting 5 U.S.C. § 701(a)(1)). "Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Id.* (citations omitted).

There is a "presumption favoring judicial review of administrative action" but it "is just that—a presumption." *Id.* at 349. As relevant here, it "may be overcome by inferences of intent drawn from the statutory scheme as a whole." *Id.* (citations omitted). "In particular, at least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial

---

Court simply vacated the Ninth Circuit's judgment without issuing an opinion. *Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (mem.). But for that turn of events, this question might already have been resolved by the Supreme Court.

review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.* (citations omitted).

In some cases, the Supreme Court has said that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Id.* at 350 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)). Nevertheless, it has "never applied the 'clear and convincing evidence' standard in [a] strict evidentiary sense." *Id.* "Rather, the Court has found the standard met, and the presumption favoring judicial review overcome, whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Id.* at 351 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 157 (1970)).

The statute at issue in *Block* allowed dairy handlers to seek judicial review—after administrative exhaustion—of the Secretary of Agriculture's orders to set minimum prices that handlers had to pay farmers but nowhere did the statute provide for consumers to obtain review. *Id.* at 346–47. That "omission" from such a "complex scheme" provided "reason to believe that Congress intended to foreclose" review for consumers despite their interests being "implicated." *Id.* at 347. It did not make sense for the Congress to require exhaustion for dairy handlers but not consumers, and allowing consumers to sue would "severely disrupt this complex and delicate administrative scheme," and would enable a handler to circumvent exhaustion by finding a consumer to bring suit. *Id.* at 347–48; *see also Sackett v. EPA*, 566 U.S. 120, 130 (2012) ("Where a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not *subject* to the administrative process, is strong."). Thus, consumers were by

necessary implication precluded by the statutory scheme from suing under the APA. *Block*, 467 U.S. at 352. Recently, the Supreme Court contrasted the scheme in *Block*, providing for review by dairy handlers but not consumers, from one that provided for suit by "any person adversely affected." *FDA v. R.J. Reynolds Vapor Co.*, 145 S. Ct. 1984, 1995 & n.8 (2025).

Here, the ICA created a complex scheme of notification of the Congress, congressional action on a proposed rescission or deferral and suit by a specified legislative branch official if the executive branch violates its statutory expenditure obligations. *See* 2 U.S.C. § 682 *et seq.* Moreover, under the ICA, the Comptroller General may bring suit only 25 days after he has provided the Congress with a statement explaining the "circumstances giving rise to the action contemplated." 2 U.S.C. § 687. As in *Block*, it does not make sense that the Congress would craft a complex scheme of interbranch dialogue but *sub silentio* also provide a backdoor for citizen suits to enforce the ICA at any time and without notice to the Congress of the alleged violation. 467 U.S. at 347–48. And there is no provision even inferentially allowing "any person adversely affected" to sue. *R.J. Reynolds*, 145 S. Ct. at 1995 & n.8.

The ICA does have a disclaimer that nothing in it "shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3). But that does not mean that any aggrieved party may initiate litigation to enforce the ICA itself. *See Pub. Citizen v. Stockman*, 528 F. Supp. 824, 828 (D.D.C. 1981) (arguing that 2 U.S.C. § 681(3) is a "blatant disclaimer of any congressional design to provide for a private right of action" (citation modified)). Instead, the language disclaims any effect on the

claims or defenses of any party *that may bring litigation*.[16] Section 681(3) also meant that a case then-pending before the Supreme Court at the time that the ICA became law was not moot. *Train v. City of New York*, 420 U.S. 35, 41 n.8 (1975). But that simply confirms that the ICA had no retroactive effect. *See* Pet'r's Suppl. Br. at 9–11, *Train*, 420 U.S. 35 (No. 73-1377); *see generally Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (explaining that under the "principle against retroactive legislation," courts "read laws as prospective in application unless Congress has unambiguously instructed retroactivity" (citation omitted)).

The dissent also points to the ICA's legislative history, Dissenting Op. 38, but nothing in that history alters our analysis. As the Supreme Court has often admonished, "legislative history is not the law" and courts must not "allow ambiguous legislative history to muddy clear statutory language." *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (citation modified). Indeed, the legislative history here is ambiguous. Section 681(3) originated from proposed language in the House version of the bill that would have limited it to litigation about pre-ICA impoundment. *See* Pet'r's

---

[16] One application of section 681(3) may be to allow the Comptroller General to assert a constitutional claim in addition to the ICA claim, although that question need not be resolved here. There is also nothing in the statutory scheme to suggest that parties may not seek to intervene in a suit brought by the Comptroller General. *See generally* Fed. R. Civ. P. 24. The dissent argues that the procedures authorizing the Comptroller General to sue are only "intended to address discrete rescission or deferral requests affecting specific line-items of budget authority." Dissenting Op. 38 & n.8. Besides providing two examples of messages from the Comptroller General to the Congress, the dissent does not explain why the Comptroller General is "ill-suited" to bring an action here. *Id.*

Suppl. Br. at 6–8, *Train*, 420 U.S. 35 (No. 73-1377). According to then-Solicitor General Robert Bork, the undiscussed deletion of that limiting language from the conference version of the bill was likely "inadvertent." *Id.* at 8–9. Conversely, the Senate Report stated, "The authority of the Comptroller General is not intended to infringe upon the right of any Member of Congress, *or any other party*, to initiate litigation." S. Rep. No. 93-688, at 74 (1974) (emphasis added). But that language was conspicuously absent from the Conference Report. *See* S. Rep. 93-924, at 76–78 (1974) (Conf. Rep.). To find that section 681(3) supports reading in a private cause of action to enforce the ICA, one would have to selectively ascribe meaning to the deletion of the House's limiting language from the final bill but not to the omission of the Senate's explanatory language from the Conference Report.

Accordingly, the grantees have no cause of action to undergird their claim that the defendants have acted contrary to law by violating the ICA.[17]

### 3.

As yet another alternative to its principal holding, the district court noted that the grantees would likely succeed on

---

[17] The grantees' contrary-to-law claims were based on a variety of substantive provisions, including the 2024 Appropriations Act. The district court appears to have limited its APA preclusion holding to the ICA, *AVAC II*, 770 F. Supp. 3d at 148 n.17, so we need not and do not decide whether the ICA precludes suits under the APA to enforce appropriations acts. And because the ICA's statutory scheme bars the grantees from bringing suit under the APA to enforce the ICA, there is no need to reach the government's argument that the grantees fall outside the ICA's zone of interests or whether the argument is forfeit for not having been raised in district court.

their ultra vires claim—in other words, the grantees' non-APA claim that the defendants have exceeded their statutory authority. *AVAC II*, 770 F. Supp. 3d at 148 n.18. The grantees belatedly point to this alternative ground for affirmance in their surreply. In any event, that argument fails as well.

Courts have "recognized a right to equitable relief" from executive action that is "unauthorized by any law and in violation of the rights of the individual." *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1775 (2025) (citation modified). "Because ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes," the Supreme Court has "strictly limited nonstatutory ultra vires review to the painstakingly delineated procedural boundaries of *Leedom v. Kyne*, 358 U.S. 184 (1958)." *Id.* at 1775–76 (citation modified). The Court further admonished that parties may not "dress up a typical statutory-authority argument as an ultra vires claim." *Id.* at 1776.

To prevail on an ultra vires claim, the plaintiff must establish that (1) review is not expressly precluded by statute, (2) "there is no alternative procedure for review of the statutory claim" and (3) the challenged action is "plainly" in "excess of [the agency's] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (quotation omitted). A defendant "violates a clear and mandatory statutory command only when the error is so extreme that one may view it as jurisdictional or nearly so." *Id.* (citation modified). Moreover, the prohibition at issue must confer rights upon the individual seeking ultra vires review. *See Kyne*, 358 U.S. at 190 (courts "cannot lightly infer that Congress does not intend judicial protection of *rights it confers* against agency action taken in excess of delegated powers" (emphasis added)).

Here, the grantees fail to satisfy the third prong of the ultra vires reviewability test. The ICA provides that the Executive may carry out lawful impoundments subject to certain procedures and restrictions and the grantees can point to no specific prohibition the defendants have violated to an extreme and nearly jurisdictional degree. And the district court's analysis applying the major questions doctrine is irrelevant to a *Kyne* inquiry. *See AVAC II*, 770 F. Supp. 3d at 148 n.18. Instead, and as in *Nuclear Regulatory Commission*, the grantees "basically dress up a typical statutory-authority argument as an ultra vires claim." 145 S. Ct. at 1776.[18]

\* \* \*

Because the grantees lack a cause of action, we need not address on the merits whether the government violated the Constitution by infringing on the Congress's spending power through alleged violations of the 2024 Appropriations Act, the ICA and the Anti-Deficiency Act.

**B.**

Finally, the other *Winter* factors do not "strongly favor" an injunction. *Aamer*, 742 F.3d at 1043.

———————————

[18] As explained above, we conclude that the grantees lack a cause of action to enforce the ICA at least while the ICA's statutory processes run their course. To the extent that APA review may be available afterwards or on the basis of another statutory provision, that would provide an alternative procedure for review and thereby independently foreclose the grantees' ultra vires claim. *See, e.g.*, *Changji*, 40 F.4th at 722.

1.

Regarding irreparable injury, the grantees focused their assertions and the district court its analysis primarily on the initial funding freeze. *See AVAC II*, 770 F. Supp. 3d at 133 (citing *AVAC I*, 766 F. Supp. 3d at 78–82). Indeed, some grantees are almost entirely financially dependent on funding from foreign-aid appropriations. *See, e.g.*, J.A. 346. Thus, we may infer financial harm and redressability to establish Article III standing as to impoundment. However, we have also said that "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). The district court made findings of existential financial harm as to the initial funding freeze, *AVAC I*, 766 F. Supp. 3d at 81, but later ruled that the grantees were unlikely to succeed in showing that subsequent large-scale terminations were unlawful, *AVAC II*, 770 F. Supp. 3d at 140–43. Thus, the grantees had to be paid for three-and-a-half weeks' operations completed between January 20 and February 13 but not on their contracts going forward.

Because the large-scale contract terminations were not enjoined, it stands to reason that existential financial harm would already have taken place by the time that the grantees would finally receive unobligated funds for which they first had to compete. Or, if the later opportunity to compete for additional grants could fix the harm, it would not be irreparable. The record is simply less developed about how long the grantees could financially continue without the opportunity to compete for impounded funds as opposed to the funds from existing contracts and why being denied immediate relief as to that opportunity would cause harm the grantees would not suffer anyway. *Cf. Al-Baluchi v. Hegseth*, 140 F.4th 517, 521 (D.C. Cir. 2025) (holding that a Guantanamo Bay

prisoner failed to allege irreparable injury from being denied access to a medical review board for a possible determination on repatriation because, even if successful, the government maintained its discretion not to repatriate him). That gap weighs against holding that the irreparable injury factor "strongly favors" the issuance of an injunction.

## 2.

The remaining preliminary injunction factors merge if the government is the opposing party. *Karem*, 960 F.3d at 668. Although we have said there is "generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citations omitted), here we have no occasion to address whether there has been a constitutional or statutory violation because the grantees lack a cause of action. Moreover, it is not clear how to balance a public interest asserted on behalf of the Congress against the public interest asserted by the Executive. *See Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *25 (D.C. Cir. Mar. 28, 2025) (Henderson, J., concurring), *vacated en banc*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025), *abrogated sub nom.*, *Trump v. Wilcox*, 145 S. Ct. 1415. Therefore, this factor does not—at least "strongly"—favor an injunction.

\* \* \*

The parties also dispute the scope of the district court's remedy but we need not resolve it—or whether it is forfeit for not being raised below—because the grantees have failed to satisfy the requirements for a preliminary injunction in any event.

For the foregoing reasons, we vacate the district court's preliminary injunction and remand for further proceedings consistent with this opinion.

PAN, *Circuit Judge*, dissenting:

On the first day of his second term, President Donald J. Trump proclaimed that "[t]he United States foreign aid industry and bureaucracy are not aligned with American interests," and ordered that "no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President of the United States." *Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025). Executive Branch officials immediately suspended and subsequently terminated thousands of foreign-aid grants, with catastrophic consequences for the grantees and the people that they serve.

Two groups of grantees challenged the funding freeze in district court. In relevant part, they argued that the President's unilateral withholding of appropriated funds violated the separation of powers by infringing on Congress's power of the purse. In response, the government asserted that the President has "vast and generally unreviewable" power in "the realm of foreign affairs" under Article II of the Constitution, and that includes the power to withhold foreign aid that has been appropriated by Congress. Defs.' Opp'n to Pls.' Mots. for Prelim. Relief at 2, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Feb. 21, 2025), Dkt. No. 34; *see also id.* at 24. In a thoughtful opinion, the district court ruled for the grantees. It found that the President did not intend to spend the appropriated funds, and that no authority — statutory or constitutional — supported the impoundment of those funds. The district court applied the iconic power-balancing framework formulated by Justice Robert H. Jackson in *Youngstown Sheet & Tube Co. v. Sawyer*, and concluded that the grantees were likely to succeed on the merits of their claim that the President had violated the separation of powers. *See* 343 U.S. 579, 634–39 (1952) (Jackson, J., concurring). After weighing other relevant factors, the district court entered a

preliminary injunction that required the government to "make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs." Order Granting in Part and Denying in Part Pls.' Mot. for Prelim. Inj. at 48, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Mar. 10, 2025), Dkt. No. 60 [hereinafter, Prelim. Inj. Order].

On appeal, the government challenges neither the district court's factual finding that the President had no intention of spending the appropriated funds, nor its legal conclusion that his withholding of appropriations likely violated the separation of powers. Instead, the government argues only that the grantees lack a *statutory* cause of action to force the President to obligate the funds in question. Because that argument does not take issue with the central legal analysis that justified the preliminary injunction, our job is easy — we should affirm that ruling. But my colleagues in the majority compensate for the government's litigation missteps by *sua sponte* reframing the case: The majority concludes that the grantees lack a *constitutional* cause of action — an issue that the government did not mention in its opening brief and did not fully develop even in its reply brief.

My colleagues in the majority excuse the government's forfeiture of what they perceive to be a key argument, and then rule in the President's favor on that ground, thus departing from procedural norms that are designed to safeguard the court's impartiality and independence. Moreover, the court's holding that the grantees have no constitutional cause of action is as startling as it is erroneous. The majority holds that when the President refuses to spend funds appropriated by Congress based on policy disagreements, that is merely a statutory violation and raises no constitutional alarm bells. But the factual scenario presented plainly implicates the structure of our government and the roles played by its coordinate branches

— roles that are defined by the Take Care Clause, the Appropriations Clause, the Spending Clause, and the vesting clauses of Articles I and II. Moreover, the Supreme Court and our court have stated in no uncertain terms that the Executive, as a constitutional matter, has no authority to disobey duly enacted statutes for policy reasons. *See In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Kavanaugh, J.); *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 613 (1838). Yet that is what the majority enables today. The majority opinion thus misconstrues the separation-of-powers claim brought by the grantees, misapplies precedent, and allows Executive Branch officials to evade judicial review of constitutionally impermissible actions. I respectfully dissent.

## I.

### A.

"Time and again we have reaffirmed the importance in our constitutional scheme of the separation of governmental powers into the three coordinate branches." *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 273 (1991) (cleaned up); *see also Springer v. Gov't of the Philippine Islands*, 277 U.S. 189, 201 (1928) ("[T]his separation and the consequent exclusive character of the powers conferred upon each of the three departments is basic and vital[.]"). Ours is a "carefully crafted system of checked and balanced power within each Branch" that serves as the "greatest security against tyranny — the accumulation of excessive authority in a single Branch." *Mistretta v. United States*, 488 U.S. 361, 381 (1989); *see also Buckley v. Valeo*, 424 U.S. 1, 122 (1976) ("The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the

encroachment or aggrandizement of one branch at the expense of the other.").

When it comes to the spending of government funds, the separation of powers is particularly stark: "Congress has absolute control of the moneys of the United States." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992) (cleaned up); *see also* The Federalist No. 48, p. 334 (J. Cooke ed. 1961) (J. Madison) (noting that Congress "alone has access to the pockets of the people"). In Article I of the Constitution, one of the first enumerated powers of the Legislative Branch is described in the Spending Clause, which grants Congress the exclusive power to "pay the Debts and provide for the common Defense and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Moreover, the Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7; *see also United States v. Butler*, 297 U.S. 1, 65 (1936) ("Funds in the Treasury as a result of taxation may be expended only through appropriation."). And of course, Congress has the power to pass legislation, including appropriations laws. *See* U.S. Const. art. I, § 1 ("All legislative Powers herein shall be vested in a Congress of the United States[.]"); *Wilkerson v. Rahrer*, 140 U.S. 545, 562 (1891) (Congress alone holds the "power to make a law."); *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (An appropriations act is "Law.").

The Appropriations Clause "protects Congress's exclusive power over the federal purse." *Dep't of the Navy v. FLRA*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (cleaned up). It is "a bulwark of the Constitution's separation of powers among the three branches of the national Government." *Id.* at 1347. We have recognized that the Appropriations Clause "is particularly important as a restraint on Executive Branch officers: If not

for the Appropriations Clause, 'the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure.'" *Id.* at 1347 (quoting 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1342, at 213–14 (1833)); *see also Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937) (The Appropriations Clause "was intended as a restriction upon the disbursing authority of the Executive department."); *Clinton v. City of New York*, 524 U.S. 417, 451 (1998) (Kennedy, J., concurring) (When "the decision to spend [is] determined by the Executive alone, without adequate control by the citizen's Representatives in Congress, liberty is threatened.").

Congress exercised its exclusive constitutional prerogatives to legislate, to spend, and to appropriate when it funded foreign aid by enacting the Further Consolidated Appropriations Act of 2024 (Appropriations Act). *See* Pub. L. No. 118-47, 138 Stat. 460, 740–50. The Appropriations Act directs specific dollar amounts to specific foreign-aid purposes. For example, "[f]or necessary expenses to carry out . . . global health activities," Congress appropriated "$3,985,450,000, to remain available until September 30, 2025, and which shall be apportioned directly to the United States Agency for International Development." 138 Stat. 740. And within that "global health" category, the Act identified the types of "activities" that must be funded, such as "programs for the prevention, treatment, control of, and research on HIV/AIDS . . . and for assistance to communities severely affected by HIV/AIDS." *Id.* Congress further earmarked funds from the lump-sum appropriations for particular purposes in tables attached to the Act. *See* 138 Stat. 771 ("[F]unds appropriated by this Act [for foreign assistance] shall be made available in the amounts specifically designated in the respective tables included in the explanatory statement" appended to the Act.).

Article II of the Constitution vests "the executive Power . . . in a President of the United States of America." U.S. Const. art. II, § 1. The Constitution mandates that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That "constitutional duty" to faithfully execute the law "does not permit the President to refrain from executing laws duly enacted by the Congress as those laws are construed by the judiciary." *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 604 (D.C. Cir. 1974). Indeed, "[t]he Executive Branch does not have the dispensing power," meaning it has no authority to ignore or suspend the law. *Richmond*, 496 U.S. at 435 (White, J., concurring); *Kendall*, 37 U.S. (12 Pet.) at 613 ("[A] dispensing power . . . has no . . . support in any part of the constitution[.]"). Therefore, the President "does not have unilateral authority to refuse to spend [congressionally appropriated] funds." *Aiken*, 725 F.3d at 261 n.1; *see also* Memorandum from William H. Rehnquist, Assistant Att'y Gen., Off. of Legal Couns., to Edward L. Morgan, Deputy Couns. to the President (Dec. 1, 1969), *reprinted in Executive Impoundment of Appropriated Funds: Hearings Before the Subcomm. on Separation of Powers of the S. Comm. on the Judiciary*, 92d Cong. 279, 282 (1971) ("With respect to the suggestion that the President has a constitutional power to decline to spend appropriated funds, we must conclude that existence of such a broad power is supported by neither reason nor precedent.").

Congress asserted its exclusive authority over spending and appropriations, and set firm limits on executive power in that sphere, by enacting the Congressional Budget and Impoundment Control Act of 1974 (Impoundment Control Act). *See* Pub. L. No. 93-344, 88 Stat. 297 (codified at 2 U.S.C. § 682 *et seq*.). The Impoundment Control Act confirms that the President has no dispensing power in the realm of obligating appropriations: It requires the President to notify

Congress and to secure its permission before he may cancel appropriated funds. Specifically, the Act provides that "[w]henever the President determines that . . . budget authority should be rescinded," he "shall transmit . . . a special message" to Congress. 2 U.S.C. § 683(a). The special message must specify such details as the amount, timeframe, and reasons for the proposed rescission of spending. *See id.* Although a rescission may be "for fiscal policy or other reasons," Congress must take affirmative action before it can take effect. *Id.* § 683(a)–(b). Crucially, "[a]ny amount of budget authority proposed to be rescinded . . . shall be made available for obligation unless, within the prescribed 45-day period, the Congress has completed action on a rescission bill rescinding all or part of the amount proposed to be rescinded." *Id.* § 683(b). The Impoundment Control Act also allows the President to "transmit . . . a special message" proposing a deferral of spending that cannot extend beyond the current fiscal year, provided that the deferral serves certain specified purposes ("to provide for contingencies," "to achieve savings," or "as specifically provided by law"). *Id.* § 684(a)–(b).

If the President does not follow the impoundment-control procedures contemplated by the Act, the Comptroller General may step in. First, if the President withholds funds without transmitting a special message, the Comptroller General "shall make a report" to Congress and "such report shall be considered a special message." 2 U.S.C. § 686(a). Second, if "budget authority is required to be made available for obligation and . . . is not," the Comptroller General may file "an explanatory statement" with Congress. *Id.* § 687. Subsequently, after "25 calendar days of continuous session of the Congress," the Comptroller General is "expressly empowered . . . to bring a civil action . . . to require such budget authority to be made available for obligation." *Id.* The Comptroller General thus serves as an enforcer of the statutory

scheme, which controls any efforts by the President to impound appropriated funds.

When the President acts, his power "must stem either from an act of Congress or from the Constitution itself." *Youngstown*, 343 U.S. at 585. Justice Jackson's concurrence in *Youngstown* provides an enduring "tripartite framework" for evaluating whether the President's exercise of executive power comports with the separation of powers demanded by the Constitution. *Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (citing *Youngstown*, 343 U.S. at 635–38 (Jackson, J., concurring)).

The *Youngstown* framework describes three categories of executive action, in which presidential power is positively correlated with congressional authorization and approval. The first category addresses "[w]hen the President acts pursuant to an express or implied authorization of Congress," and notes that under those circumstances, "his authority is at its maximum, for it includes all that he possesses in his own right plus all that Congress can delegate." *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring). "If his act is held unconstitutional under these circumstances, it usually means that the Federal Government as an undivided whole lacks power." *Id.* at 636–37.

The second category applies "[w]hen the President acts in absence of either a congressional grant or denial of authority," in which case "he can only rely upon his own independent powers." *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). Within that context, "there is a zone of twilight in which he and Congress may have concurrent authority, or in which its distribution is uncertain." *Id.* As such, "congressional inertia, indifference or quiescence may sometimes . . . enable, if not invite" the exercise of executive power. *Id.*

In the third and final category, "the President takes measures incompatible with the expressed or implied will of Congress," and consequently, "his power is at its lowest ebb." *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). To justify his actions, "he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Id.* "Courts can sustain exclusive Presidential control in such a case only by disabling the Congress from acting upon the subject." *Id.* at 637–38. "Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system." *Id.* at 638.

Finally, Article III of the Constitution vests the "judicial Power" in the Supreme Court and the inferior federal courts ordained and established by Congress. U.S. Const. art. III, § 1. The judiciary is tasked with policing the bounds of the separation of powers when the Executive acts without apparent authority. *See, e.g.*, *Youngstown*, 343 U.S. 579; *Zivotofsky*, 576 U.S. 1. The Supreme Court has recognized that the political branches may not be left to determine those boundaries for themselves. *See United States v. Morrison*, 529 U.S. 598, 616 n.7 (2000) ("[T]he Framers adopted a written Constitution that further divided authority at the federal level so that the Constitution's provisions would not be defined solely by the political branches[.]"). It is a "permanent and indispensable feature of our constitutional system" that "the federal judiciary is supreme in the exposition of the law of the Constitution." *Miller v. Johnson*, 515 U.S. 900, 922–23 (1995) (quoting *Cooper v. Aaron*, 358 U.S. 1, 18 (1958)); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). Thus, although the courts must "act with care when reviewing actions by other branches," we "may

not evade [our] constitutional responsibility to delineate the obligations and powers of each branch." *Halperin v. Kissinger*, 606 F.2d 1192, 1211 (D.C. Cir. 1979).

**B.**

In 1961, Congress "declare[d]" in the Foreign Assistance Act that "a principal objective of the foreign policy of the United States is the encouragement and sustained support of the people of developing countries." 22 U.S.C. § 2151(a). The Act "reaffirm[ed] the traditional humanitarian ideals of the American people and renew[ed] [the nation's] commitment to assist people in developing countries to eliminate hunger, poverty, illness, and ignorance." *Id.*

Since then, Congress has routinely appropriated funds to support those "traditional humanitarian ideals," and the United States has become the single largest aid donor in the world. Most of our country's foreign-aid funding — which until recently accounted for around one percent of the federal budget — has flowed through the Department of State and the U.S. Agency for International Development (USAID). Those agencies have awarded assistance grants or cooperative agreements to implementing partners, which then executed programs that advanced the nation's foreign-aid priorities. USAID and State Department grantees have provided life-changing assistance all over the world, funding programs that, for example, provide humanitarian assistance in refugee camps in Syria, feed nearly a million people in Khartoum, and deliver rehydration salts to toddlers in Zambia who are suffering life-threatening diarrhea.

The norms for distributing American foreign aid were upended on January 20, 2025, when President Donald J. Trump began his second term in office. On that day, President Trump issued an executive order proclaiming that "[t]he United States

foreign aid industry and bureaucracy are not aligned with American interests and in many cases [are] antithetical to American values." 90 Fed. Reg. at 8619. "It is the policy of [the] United States," the order continued, "that no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President of the United States." *Id.* The order directed a "90-day pause in United States foreign development assistance for assessment of programmatic efficiencies and consistency with United States foreign policy." *Id.* (cleaned up). During those ninety days, "responsible department and agency heads" were required to "immediately pause new obligations and disbursements of development assistance funds," and "make determinations" in consultation with the Office of Management and Budget (OMB) and "with the concurrence of the Secretary of State" "on whether to continue, modify, or cease each foreign assistance program." *Id.*

Secretary of State Marco Rubio promptly issued a memorandum implementing the executive order by "paus[ing] all new obligations of funding, pending a review, for foreign assistance programs funded by or through the Department [of State] and USAID." Memorandum from the Sec'y of State, *Executive Order on Review of Foreign Assistance Programs*, 25 State 6828 (Jan. 24, 2025) (J.A. 132). The memorandum ordered that "the review process for proposals for new foreign assistance grants [and] contracts" be "suspend[ed]"; "no new obligations shall be made for foreign assistance"; and, "[f]or existing foreign assistance awards, contracting officers and grant officers shall immediately issue stop-work orders." *Id.* (J.A. 134–35).

Funding recipients immediately began receiving "Notice[s] of Suspension" that ordered them to "stop all work under [their] award(s)," "not incur any new costs," and "cancel

as many outstanding obligations as possible." *See, e.g.*, Letter from Philip Denino, Grants Officer, Dep't of State, to Guillermo Birmingham, HIAS Inc. (Jan. 24, 2025) (J.A. 268).

Executive Branch officials were candid about the nature of the "pause." The State Department's website boasted about the money "saved," announcing that "even at this early stage, over $1,000,000,000 in spending not aligned with an America First agenda has been prevented." *Prioritizing America's National Interests One Dollar at a Time*, Dep't of State (Jan. 29, 2025), https://perma.cc/TVP3-BLJK; *see also* Pls.' Mot. for TRO at 12, *Aids Vaccine Advocacy Coal. v. Dep't of State*, No. 25-cv-400 (D.D.C. Feb. 12, 2025), Dkt. No. 13 [hereinafter, AVAC TRO Mot.]. Elon Musk, who was then a special government employee with authority to cut spending, said that it was "[t]ime for [USAID] to die." Elon Musk (@elonmusk), X (Feb. 2, 2025 at 12:20 PM ET), https://perma.cc/8TAB-K2D2; *see also* AVAC TRO Mot. at 12–13. The President himself declared, referring to USAID: "CLOSE IT DOWN!" Donald J. Trump (@realDonaldTrump), Truth Social (Feb. 7, 2025 at 9:31 AM ET), https://perma.cc/LV6L-EH5X; *see also* J.A. 384.

The grantees that brought the instant consolidated suits to challenge the Administration's actions "are all recipients of or have members who receive foreign assistance funding." Prelim. Inj. Order at 6. The grantees alleged that the President, as well as the State Department, USAID, OMB, and their directors (collectively, the "government"), improperly impounded funds that Congress appropriated for foreign-aid programs that are facilitated or run by the grantees.

The grantees brought three types of claims before the district court. The first type was statutory: The grantees argued that the government's suspension of grants and issuance of

stop-work orders were arbitrary, capricious, and contrary to statutory and constitutional law, in violation of the Administrative Procedure Act (APA). Second, the grantees asserted an *ultra vires* claim that the government exceeded its statutory authority. And the third category of claims was constitutional: The grantees argued that the government's unilateral withholding of funds appropriated by Congress violated the separation of powers and the Take Care Clause. The grantees sought declaratory and injunctive relief.

The district court issued a temporary restraining order (TRO) in favor of the grantees, relying only on their APA claims. *See* Order Granting in Part and Denying in Part Pls.' Mot. for TRO at 9, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Feb. 13, 2025), Dkt No. 21 (noting that "[t]he Court need only find that Plaintiffs are likely to succeed on one of these claims for this factor to weigh in favor of a temporary restraining order" and considering only the APA claims). The district court concluded that the government's "blanket suspension" of funds likely was arbitrary and capricious under the APA, *id.* at 9, and thus enjoined the government from "suspending, pausing, or otherwise preventing the obligation or disbursement of . . . appropriated foreign-assistance funds" or "giving effect to terminations, suspensions, or stop-work orders in connection with . . . foreign assistance award[s]" in existence as of January 19, 2025, *id.* at 14.

The following week, the grantees informed the district court that the government had failed to comply with the TRO. The district court granted a motion to enforce the TRO, giving the government thirty-six hours to unfreeze payments for work completed prior to the TRO's issuance. *See* Mot. to Enforce TRO Hr'g Tr. at 57–58, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Feb. 25, 2025), Dkt. No. 37. The government appealed. We dismissed the appeal for lack of

appellate jurisdiction. *See Aids Vaccine Advocacy Coal. v. Dep't of State*, No. 25-5046, 2025 WL 621396 (D.C. Cir. Feb. 26, 2025). The Supreme Court denied the government's application to vacate the district court's order. *See Dep't of State v. Aids Vaccine Advocacy Coal.*, 145 S. Ct. 753 (2025) (mem.).

Meanwhile, the district court proceeded to consider the grantees' request for a preliminary injunction on an expedited basis, and the government completed an "individualized" assessment of foreign-aid grants. The government's assessment led to a mass termination of foreign-aid funding: After reviewing over 13,000 awards, the government decided that all but 500 USAID awards and 2,700 State Department awards would be terminated. Joint Status Report at 16 ¶ 3, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Feb. 26, 2025), Dkt. No. 42.

After considering briefing from the parties and holding a hearing, the district court entered a preliminary injunction against the government, as requested by the grantees. Prelim. Inj. Order at 47–48. With respect to the APA claims, the district court again concluded that the grantees were likely to succeed on the merits of their argument that the initial blanket suspension of funds was arbitrary and capricious. *Id.* at 20–24. The court did not, however, consider the government's subsequent "individualized review" of foreign-aid grants because that review was "a distinct . . . agency action that must be challenged as such." *Id.* at 27. The district court then turned to the grantees' constitutional claims. It noted that those claims "are distinct in scope from Plaintiffs' APA claims, in that they are not premised on the initial blanket directive to suspend funds pending review or an alleged policy to mass terminate aid programs." *Id.* at 29. Rather, the constitutional argument "is that, irrespective of any particular agency action that may

be subject to APA review, Defendants are engaging in a unilateral rescission or deferral of congressionally appropriated funds in violation of Congress's spending power." *Id.*

The district court applied the *Youngstown* framework to conclude that the grantees were likely to succeed on the merits of their claim that the President had violated the separation of powers. The court determined that the President was "operating in the third category" of *Youngstown* because he had acted incompatibly with the will of Congress. Prelim. Inj. Order at 30, 32; *see also Youngstown*, 343 U.S. at 637 (Jackson, J., concurring). Congress had expressed its will in the Appropriations Act (which "explicitly appropriated foreign aid funds for specified purposes") and in the Impoundment Control Act (which "explicitly prohibits the President from impounding appropriated funds without following certain procedures"). Prelim. Inj. Order at 30–31. Yet it was "uncontested" that the government had "not undertaken the procedures required for the impoundment of congressionally appropriated aid, whether permanent or temporary, by the Impoundment Control Act." *Id.* at 32.

The district court made a factual finding that the government had "no intent to spend" the appropriated funds, stating: "[T]he record here shows that Defendants are acting to rescind or defer the funds Congress has appropriated and have no intent to spend them." Prelim. Inj. Order at 31. That finding was supported by "multiple public" and "contemporaneous statements" by Executive Branch officials, which explained that the purpose of the pause was to "end foreign aid funding" "for policy reasons." *Id.* Notably, the government did not dispute the district court's finding about its intent. *See id.* at 32 ("When given the opportunity in these

proceedings, Defendants have not disputed this is their intent.").[1]

Having established that the government had not complied with applicable statutes and did not intend to spend funds appropriated by Congress, the district court considered whether the Executive Branch could justify its actions by "rely[ing] only upon [its] own constitutional powers minus any constitutional powers of Congress over the matter." Prelim. Inj. Order at 32 (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)). The district court acknowledged that the government had "repeatedly asserted . . . that the President has 'vast and generally unreviewable' powers in the realm of foreign affairs." *Id.* at 33. But the court determined that such assertions did not justify the impoundment of appropriated foreign-aid funds. It reasoned that "the Supreme Court has explicitly rejected" the argument that the President has exclusive power in this sphere and has instead recognized "'the congressional role in foreign affairs.'" *Id.* at 34 (quoting *Zivotofsky*, 576 U.S. at 21). The district court further reasoned that the President's assertion of power to cut off foreign aid was "weaker here than in past invocations in the foreign affairs context," because this case implicates Congress's spending power. *Id.* at 35. Thus, the district court "reject[ed]

---

[1]  When the district court asked government counsel to identify "anything in the record . . . that would suggest that there is an intention to spend the amount that's been sidelined by terminating the large majority of agreements," counsel responded that he was "not familiar with somewhere in the record that there is." Prelim. Inj. Mot. Hr'g Tr. at 100–01, *Global Health Council v. Trump*, No. 25-cv-402 (D.D.C. Mar. 10, 2025), Dkt. No. 58. Although the district court granted the government's request for an opportunity to "send . . . a letter after the [motion] hearing," the government did not do so. *Id.* at 101; *see also* Prelim. Inj. Order at 32 n.13.

Defendants' unbridled understanding of the President's foreign policy power, which would put the Executive above Congress in an area where it is firmly established that the two branches share power, where Congress is exercising one of its core powers, and where there is no constitutional objection to the laws it has made." *Id.* at 37–38 (cleaned up).

Finally, the district court concluded that the grantees were likely to succeed on their claim that the government acted *ultra vires* because the government "do[es] not identify any authority, statutory or otherwise, that would authorize this sort of vast cancelation of congressionally appropriated aid." Prelim. Inj. Order at 38 n.18.[2]

Turning to other considerations for granting injunctive relief, the district court found that the grantees would suffer irreparable harm without an injunction and noted that the grantees' proffered evidence of harm had "gone unrebutted by" the government. Prelim. Inj. Order at 38. In particular, the court described the "ongoing" financial harms threatening "the very subsistence" of the grantees, including their being forced to default on contracts, furlough staff, and shutter some of their

---

[2] We call *ultra vires* review "nonstatutory" (or sometimes "equitable statutory") review because the source of the reviewing court's authority is its equitable powers (rather than any specific statute, like the APA). But an *ultra vires* claim is statutory in nature because it allows for review of whether an agency's action violated a "specific prohibition in a statute." *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1776 (2025) (cleaned up). To prevail on an *ultra vires* claim, the plaintiff must show that "an agency has taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute"; no "statutory review scheme provides aggrieved persons with a meaningful and adequate opportunity for judicial review"; and no "statutory review scheme forecloses all other forms of judicial review." *Id.* (cleaned up) (emphasis in original).

offices. *Id.* at 41–42. The district court also concluded that the balance of the equities and the public interest favor the grantees because "there is generally no public interest in the perpetuation of unlawful agency action"; and "the harms that Plaintiffs have suffered — and will continue to suffer absent preliminary injunctive relief — are stark," including "dire humanitarian consequences" and "devastated businesses and programs across the country." *Id.* at 42–43 (cleaned up).

Tailoring "the scope of the injunctive relief" to the "claims that are likely to succeed," the court issued the following injunction:

> Defendants Marco Rubio [Secretary of State], Peter Marocco [Acting Administrator of USAID], Russell Vought [Director of OMB], the U.S. Department of State, the U.S. Agency for International Development, and the Office of Management and Budget . . . are enjoined from . . . giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative agreements, or contracts for foreign assistance. Accordingly, the Restrained Defendants shall not withhold payments or letter of credit drawdowns for work completed prior to February 13, 2025.

> The Restrained Defendants are enjoined from unlawfully impounding congressionally appropriated foreign aid funds and shall make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024.

Prelim. Inj. Order at 44, 47–48.

The government timely appealed. We have jurisdiction under 28 U.S.C. § 1292(a)(1).

## II.

"We review the district court's decision to grant the Plaintiffs' request for a preliminary injunction for abuse of discretion, its legal conclusions de novo, and its findings of fact for clear error." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 726 (D.C. Cir. 2022). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## III.

In this case, we consider how the three branches of our federal government operate within the structure created by our Constitution. Congress exercised its Article I powers to pass legislation that mandates the spending of certain appropriated funds: It announced the policy objective of providing humanitarian assistance to developing countries, *see* Foreign Assistance Act, 22 U.S.C. § 2151; appropriated funds to pay for that humanitarian assistance for fiscal year 2025, *see* Appropriations Act, 138 Stat. at 740–50; and created a process to ensure that the Executive would spend appropriated funds in the manner directed by Congress, *see* Impoundment Control Act, 2 U.S.C. § 682 *et seq*.

As provided by Article II, the President and the Executive Branch agencies under his leadership were required to take care that those duly enacted laws were faithfully executed. *See* U.S.

Const. art. II, § 3. When the President refused to obligate the funds appropriated by Congress in the Appropriations Act and declined to follow the procedures for deferring or rescinding that budget authority under the Impoundment Control Act, the district court was called upon to review whether the President's actions were lawful, as contemplated by Article III. *See* U.S. Const. art. III, § 2; *see also Marbury*, 5 U.S. (1 Cranch) at 177. The district court dutifully applied well-established law and the *Youngstown* framework to identify and address a violation of the separation of powers by the President — *i.e.*, his refusal to spend funds as required by the Appropriations Act because he disagreed with Congress's policy objectives. *See Youngstown*, 343 U.S. at 635–38 (Jackson, J., concurring); *Aiken*, 725 F.3d at 261 n.1 ("[T]he President does not have unilateral authority to refuse to spend [congressionally appropriated] funds."); *Kendall*, 37 U.S. (12 Pet.) at 613 ("[A] dispensing power . . . has no . . . support in any part of the constitution[.]"). Up until that point, this case was a shining example of how our system of checks and balances is intended to work.

But in the court of appeals, the process has broken down. My colleagues in the majority depart from the norms of impartial appellate review to reverse the district court on a ground that was not properly presented by the government. And they announce a new and sweeping constitutional rule in the President's favor: According to the majority, the President's refusal to execute a law for policy reasons is merely a violation of the statute that he declines to follow and does not present a constitutional cause of action. That re-framing of the case reduces the grantees' separation-of-powers argument — which targets an executive order that rescinds tens of billions of dollars of funding — to a mere violation of certain procedures in the Impoundment Control Act. The majority rules that the only recourse for the President's wholesale withholding of foreign aid lies in the provisions of the

Impoundment Control Act that allow the Comptroller General to address discrete rescissions or deferrals that affect specific line-items of budget authority. My colleagues thus avoid reviewing the President's actions by denying that any constitutional issues are even in play. And yet, both the Supreme Court and our court have held that the Executive has no authority — as a constitutional matter — to decline to execute a statute (like the Appropriations Act) due to policy differences. *See Aiken*, 725 F.3d at 261 & n.1; *Kendall*, 37 U.S. (12 Pet.) at 613. It is our responsibility to check the President when he violates the law and exceeds his constitutional authority. We fail to do that here.

Three disparate sets of legal arguments and analyses are now at issue in this case, and laying them out will help to illustrate how we got to this place.

The first set of arguments are the separation-of-powers claims that were asserted by the grantees and analyzed by the district court. The district court held that the President's refusal to obligate foreign-aid funds appropriated by Congress likely violated the separation of powers. The district court applied the *Youngstown* tripartite framework, determined that the President's impoundment of appropriated funds was not supported by statutes or the Constitution, and rejected the President's assertion of "'vast and generally unreviewable' powers in the realm of foreign affairs." Prelim. Inj. Order at 33. That ruling was the sole basis for the district court's determination that the grantees were likely to succeed on the merits and therefore were entitled to a preliminary injunction that required the government to obligate the funds appropriated by Congress.

The second set of arguments are the ones made by the government on appeal. Although the government seeks to

overturn the district court's preliminary-injunction order, it does not challenge the constitutional ruling that justified the preliminary injunction. Instead, in its brief on appeal, the government makes a series of arguments that are best described as baffling: The government claims that the grantees have no *statutory* cause of action to challenge the President's failure to spend the appropriated funds. In other words, the government appears to believe that this case turns on whether the Executive violated the Appropriations Act and the Impoundment Control Act, and whether the grantees have private rights of action to enforce those statutes under the APA. That misunderstanding of the pertinent issues causes the government to make arguments that are irrelevant to the district court's reasoning underlying the issuance of the preliminary injunction.

And finally, my colleagues in the majority go in a third direction. They conclude that the grantees do not state a *constitutional* cause of action and merely allege a statutory violation of the Impoundment Control Act. They hold that the Supreme Court's opinion in *Dalton v. Specter*, 511 U.S. 462 (1994), precludes the grantees from transforming their statutory claim into a constitutional one. Relying on that theory of the case, my colleagues "vacate the part of the district court's preliminary injunction involving impoundment." Maj. Op. 5.

I cannot agree with my colleagues' approach. Our job as an appellate tribunal is to review the record in this case and the preliminary-injunction order, based on the arguments properly raised by the parties. Because the government's opening brief did not challenge the district court's ruling on the separation of powers, which is the sole basis for the preliminary injunction, we should simply affirm the district court's conclusion that the grantees are likely to succeed on the merits. My colleagues, however, go out of their way to reach a different constitutional issue that the government discussed in a scant three paragraphs

of its reply brief: The majority holds that the President's refusal to execute a duly enacted law is merely a violation of that law, which does not raise a judicially reviewable constitutional issue. Maj. Op. 16, 18–24. That highly consequential holding ignores the line of cases that reject the existence of a presidential "dispensing power" — *i.e.*, a power that allows the President to pick and choose the statutes that he will execute. *See Aiken*, 725 F.3d at 261 & n.1; *Kendall*, 37 U.S. (12 Pet.) at 613. The majority's analysis also misreads the case on which it relies, *Dalton v. Specter*, and creates a split with the Ninth Circuit over the proper interpretation of that precedent. *See Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) (holding that the President's violation of a statute "will be considered constitutional" if "the President's action lacked both statutory authority and background constitutional authority" (cleaned up)). And finally, the majority glosses over the government's claim before the district court that the President possesses "'vast and generally unreviewable' powers in the realm of foreign affairs" that allow him to impound funds appropriated by Congress for foreign aid. Maj. Op. 20; *see also* Prelim. Inj. Order at 33. The President's reliance on constitutional — not only statutory — authority to defy Congress clearly takes this case out of the narrow confines of the Impoundment Control Act and straight into the *Youngstown* framework.

Because the majority's unprecedented constitutional ruling is procedurally and substantively flawed, I respectfully dissent.

### A.

My colleagues in the majority decide this case on a ground that was clearly and obviously forfeited by the government. The majority holds that the grantees' claim that the Executive

unlawfully withheld appropriated funds amounts to a mere statutory violation of the Impoundment Control Act. Maj. Op. 25–29. Relying on *Dalton v. Specter*, the majority holds that the grantees may not turn that statutory violation into a constitutional cause of action. Maj. Op. 18–24. But that argument was not raised in the government's opening brief and therefore is not properly before us. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief.").

The government's opening brief made no constitutional arguments at all — it neither challenged the district court's primary ruling on the separation of powers, nor asserted that the grantees had failed to state a constitutional cause of action, even though that latter claim was considered and rejected by the district court in the opinion under review. *See* Prelim. Inj. Order at 37 n.17. Indeed, the government cited neither *Youngstown* nor *Dalton* in its opening brief.[3] Thus, under our caselaw, any claim based on *Youngstown* or *Dalton* is forfeited. *See World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002) ("As we have said many times before, a party waives its right to challenge a ruling of the district court if it fails to make that challenge in its opening

---

[3]     The government's opening brief argues that the grantees "may not enforce" the Appropriations Act or the Impoundment Control Act because "those statutes do not confer any rights on [the grantees] that may be enforced *through an APA suit*." Gov't Br. 27 (emphasis added). The government further argues that "[e]ven if plaintiffs had a basis to seek judicial enforcement of" those statutes, "the district court's mandatory preliminary injunction is unsupported by [the] statute[s]." Gov't Br. 35. Finally, the government calls for constitutional avoidance in interpreting the Appropriations Act and the Impoundment Control Act, arguing that "any ambiguity" in the statutes "should be read to preserve the Executive Branch['s] discretion in the sphere of foreign affairs." Gov't Br. 47.

brief."). And we normally will not address a forfeited claim absent "exceptional circumstances" where "errors . . . seriously affect the fairness, integrity, or public reputation of judicial proceedings." *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) (cleaned up). Here, the government's "failure to pursue one of several available lines of argument is hardly an 'error' of the sort that would warrant exercising our narrowly circumscribed remedial authority." *Id.*

Under "the principle of party presentation . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineng-Smith*, 590 U.S. 371, 371–72 (2020) (cleaned up). We have repeatedly explained why we adhere to the rule of party presentation and generally refuse to consider forfeited claims. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). "Considering an argument advanced for the first time in a reply brief, then, is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharms.*, 800 F.2d 1208, 1210–11 (D.C. Cir. 1986) (cleaned up). Moreover, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment). Thus, "courts normally are not available to relieve parties from the operation of their own litigation strategies," such as a decision to pursue one legal theory over another. *Conax Fla. Corp. v. United States*, 824 F.2d 1124, 1132 (D.C. Cir. 1987). Applying those principles, we have said that when a party "fail[s] to

advance any reasons in [its] opening brief why [the] judgment should be reversed," we "ordinarily will refuse to disturb [the] judgment[]." *McBride*, 800 F.2d at 1210. That is the proper course of action here, where the government has raised no complaints at all about the district court's central ruling on the separation of powers.

Of course, our application of the forfeiture rule is not ironclad, and it is not difficult to find one or two exceptions that, when stretched, might arguably support a court's decision to reach a forfeited issue. That is what the majority does here. But I question the wisdom of making an exception in a case such as this one. The party presentation principle preserves the court's role as a neutral arbiter. *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) ("Courts do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties." (cleaned up)). We must apply the forfeiture rule consistently to safeguard the public's faith in the court's impartiality. Bending a generally applicable rule to benefit a particular party makes us vulnerable to charges of favoritism and bias. *Cf. Texas v. United States*, 798 F.3d 1108, 1114 (D.C. Cir. 2015) ("Rules are rules, and basic fairness requires that they be applied evenhandedly to all litigants."). That is especially so when the case before the court involves the President of the United States and the court chooses to announce a new constitutional ruling that favors him, even though that constitutional theory was not urged by the government's representatives in court.

My colleagues acknowledge the government's failure to raise *Dalton* and concede that the "oversight is hard to understand." Maj. Op. 16. Yet, they nevertheless reach the *Dalton* argument, stating that the constitutional cause-of-action issue is "not forfeit" because the government's "entire opening

brief proceeds from the premise that this dispute raises a statutory claim — and therefore by implication not a constitutional one, despite the district court's characterization otherwise — which is in effect the *Dalton* argument that the government advanced below." *Id.* at 16–17. That convoluted logic takes a far more permissive view of issue preservation than our precedents allow. We routinely refuse to "put flesh on [the] bones" of arguments raised "only in the most skeletal way," *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019), and certainly do not *sua sponte* supply arguments that experienced lawyers have chosen not to pursue, *see Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace."); *Larson v. Navy*, 525 F.3d 1, 5 (D.C. Cir. 2008) ("We decline to revive this case by reading into [the party's papers] an argument not adequately presented.").

To make an exception in this case, the majority misapplies narrow rulings in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), and *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439 (1993). Those cases do not support consideration of a forfeited argument that is not antecedent to the issues raised by the appellant. *See Hillie*, 39 F.4th at 681–84 (court asked to construe statute must consider caselaw "as to how to construe the same or similar phrasing," even if not cited by the parties); *Nat'l Bank*, 508 U.S. at 447 (court asked to construe statute could answer "antecedent . . . and ultimately dispositive" question of whether statute remained in force (cleaned up)). The majority asserts that the *Dalton* issue is antecedent to determining the scope of the cause of action that "the *grantees* seek." Maj. Op. 17 (emphasis added). But this is the *government's* appeal. Here, the government argues that the grantees could not enforce the Appropriations Act and the Impoundment Control Act through

an APA suit. Whether the district court properly ruled on whether the grantees have a constitutional cause of action is in no way "antecedent . . . and ultimately dispositive" of the statutory issue raised by *the appellants* in this case. *Nat'l Bank*, 508 U.S. at 447 (cleaned up). In any event, the rule that "a party cannot forfeit or waive recourse to a relevant case just by failing to cite it" kicks in only "*once an argument is before us*." *Hillie*, 39 F.4th at 684 (emphasis added). Likewise, only "*when an issue or claim is properly before the court*" does it follow that "the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Nat'l Bank*, 508 U.S. at 446 (cleaned up) (emphasis added). The cited cases are inapplicable here because the government did not put the *Dalton* argument "properly before" us. Precedents do not allow a court to revise the litigation strategy of a party and to provide that party with a better argument that allows it to win the case. I therefore disagree with the majority's decision to forgive the government's poor litigation choices and to award the President a big win on an issue that the government's lawyers did not mention in their primary brief.[4]

---

[4]    My colleagues also address two "alternative cause[s] of action": a contrary-to-law claim under the ICA and the APA, and an *ultra vires* claim, which is not raised in the government's opening brief. Maj. Op. 25–31. It is unclear why they do so, as their holding that the grantees have no constitutional cause of action should result in dismissal of the constitutional claim, and any merits arguments that have no connection to the separation-of-powers analysis are irrelevant to the court's granting of the preliminary injunction. For those reasons, the majority's analysis of those issues is dicta. *See In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) ("[A] statement not necessary to a court's holding is dictum.");

## B.

### 1.

In my view, the grantees clearly state a justiciable constitutional claim — a violation of the separation of powers. It is settled law that private parties can sue to enjoin government officials from violating the Constitution, including under a "separation-of-powers claim." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010) (collecting cases). And because "the separation of powers is designed to preserve the liberty of all the people[,] . . . whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021); *see also Bond v. United States*, 564 U.S. 211, 223 (2011) ("If the constitutional structure of our Government that protects individual liberty is compromised, individuals who suffer otherwise justiciable injury may object."); *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (stating that "the

---

*Melcher v. Fed. Open Market Comm.*, 836 F.2d 561, 565–66 (D.C. Cir. 1987) (Edwards, J., concurring) ("These concluding dicta allude unnecessarily to monumental questions not before this court."). The fact that the district court ruled on the *ultra vires* issue does not affect the analysis, *see* Maj. Op. 15 n.6, because that was not the basis of the preliminary injunction. In any event, the majority leaves open the grantees' APA claims based on the Appropriations Act. *See* Maj. Op. 29 n.17. The grantees therefore are free to pursue that claim on remand. Moreover, the majority's discussion of the grantees' *ultra vires* claim addresses only the ICA. Maj. Op. 31.

President's actions may . . . be reviewed for constitutionality").[5]

    The facts found by the district court support the grantees' separation-of-powers claim. The district court found that the President withheld billions of dollars in appropriated foreign-aid funding for policy reasons and that he had no intention of ever spending the funds. In addition, the district court found that the President had "not undertaken the procedures required for the impoundment of congressionally appropriated aid" under the Impoundment Control Act. Prelim. Inj. Order at 32. Moreover, as a legal matter, the district court rejected the

---

[5]    My colleagues attempt to distinguish *Free Enterprise* and *Collins* by pointing out that those cases involved challenges to the constitutionality of statutes. Maj. Op. 18–19. They also dismiss *Aiken* and *Kendall* because those cases involved petitions for a writ of mandamus. *Id.* at 22 & n.13. But my colleagues do not explain why those distinctions should make any difference. In rejecting the government's assertion in *Free Enterprise* that "petitioners have not pointed to any case in which this Court has recognized an implied private right of action directly under the Constitution to challenge governmental action under the Appointments Clause or separation-of-powers principles," the Supreme Court recognized the existence of "such a right to relief as a general matter, without regard to the particular constitutional provisions at issue here." 561 U.S. at 487 n.2 (citing *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally"); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Ex parte Young*, 209 U.S. 123, 149, 165, 167 (1908)). The majority's attempt to throw up barriers is out of step with the broader view of the justiciability of constitutional claims "as a general matter" that was adopted by the Supreme Court in *Free Enterprise*. 561 U.S. at 487 n.2.

government's assertion that the President has "'vast and generally unreviewable' power to impound congressionally appropriated aid . . . in the foreign affairs context." *Id.* at 35. The district court thus established that the President acted without statutory or constitutional authority when he withheld the appropriated foreign-aid funds.

The power that the President attempted to assert — a general entitlement to disobey duly enacted laws for policy reasons — is also known as "dispensing power." *See Kendall*, 37 U.S. (12 Pet.) at 613. It is uncontroversial that such a presidential power does not exist. *See id.* ("[A] dispensing power . . . has no . . . support in any part of the constitution[.]"); *Matthews v. Zane's Lessee*, 9 U.S. (5 Cranch) 92, 98 (1809) (Marshall, C.J.) ("The president cannot dispense with the law, nor suspend its operation."); *Nat'l Treasury Emps. Union*, 492 F.2d at 604 ("That constitutional duty" "to 'take Care that the Laws be faithfully executed'" "does not permit the President to refrain from executing laws duly enacted by the Congress as those laws are construed by the judiciary." (quoting U.S. Const. art. II, § 3)). Both the Supreme Court and our court have framed the analysis of that issue in constitutional terms, and have done so in the context of the impoundment of appropriated funds. *See Kendall*, 37 U.S. (12 Pet.) at 612–13 (rejecting the suggestion of a "dispensing power" and compelling the Postmaster General "to pay . . . the amount of the award" ordered by Congress); *Aiken*, 725 F.3d at 261 n.1 ("[E]ven the President does not have unilateral authority to refuse to spend the" "full amount appropriated by Congress.").[6]

---

[6]     *See also Train v. City of New York*, 420 U.S. 35 (1975) (striking down President Nixon's claimed authority to withhold funds); *Clinton*, 524 U.S. at 468 (Scalia, J., concurring in part and dissenting in part) (concluding that *Train* "proved [President Nixon] wrong" in his claim to a "constitutional right to impound appropriated funds" (cleaned up)).

Thus, *Aiken* and *Kendall* demonstrate that a decision by the Executive Branch to refrain from enforcing a statute — including an appropriations law — presents a constitutional issue subject to judicial review.

In *Aiken*, we considered the Nuclear Energy Commission's failure to comply with a provision of the Nuclear Waste Policy Act that required the agency to "issue a final decision approving or disapproving" an application to store nuclear waste at Yucca Mountain. 725 F.3d at 257 (quoting 42 U.S.C. § 10134(d)). Although Congress had appropriated funds to allow the Commission to consider the license application, the Commission missed the statutory deadline to issue its decision and admitted that it had "no current intention of complying with the law." *Id.* at 258. Individuals who lived in states where nuclear waste was stored were among the petitioners who sought a writ of mandamus requiring the Commission to obey the statutory mandate. In an opinion by then-Judge Kavanaugh, the court applied the following "bedrock principles of constitutional law": (1) "[T]he President must follow statutory *mandates* so long as there is appropriated money available and the President has no constitutional objection to the statute," and (2) "the President may not decline to follow a statutory mandate or prohibition simply because of policy objections." *Id.* at 259 (emphasis in original); *see also Union Pac. R.R. Co. v. Pipeline & Hazardous Materials Safety Admin.*, 953 F.3d 86, 93 (D.C. Cir. 2020) (Henderson, J., dissenting) ("[F]ederal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreements with Congress." (quoting *Aiken*, 725 F.3d at 260)). Noting that the Executive had no constitutional objection to the statute in question and that the statute did not leave room for any exercise of prosecutorial discretion, the court concluded that the Commission was "simply defying a law enacted by Congress," and "doing so without any legal

basis." *Aiken*, 756 F.3d at 261–66. The court observed that the case had "serious implications for our constitutional structure," and granted the mandamus petition in recognition of "the constitutional authority of Congress and the respect that the Executive and the Judiciary properly owe to Congress." *Id.* at 267.

In *Kendall*, the Supreme Court rejected the notion of a presidential dispensing power in the specific context of spending appropriated funds. There, a new Postmaster General had "re-examined the contracts entered into with his predecessor . . . and directed that the allowances and credits should be withdrawn." 37 U.S. (12 Pet.) at 608. In response, Congress passed a law directing the settlement and payment of the claims. When the Postmaster General still "refuse[d] and neglect[ed]" to pay part of the sum, affected postal contractors sued to compel payment. *Id.* at 609. In defense of his actions, the Postmaster General argued that he was "subject to the direction and control of the President, with respect to the execution of the duty imposed upon him by this law," and that "this right of the President [grew] out of the obligation imposed upon him by the constitution[] to take care that the laws be faithfully executed." *Id.* at 612–13. The Supreme Court declined to "cloth[e] the President with" such "a power entirely to control the legislation of congress." *Id.* at 613. It said: "To contend that the obligation imposed on the President to see the laws faithfully executed implies a power to forbid their execution, is a novel construction of the constitution, and entirely inadmissible." *Id.*

Like in *Aiken* and *Kendall*, the President's refusal to implement the Appropriations Act here creates a conflict between the Legislative Branch and the Executive Branch of constitutional dimensions. Just as the Executive's refusal to execute the Nuclear Waste Policy Act in *Aiken* had "serious

implications for our constitutional structure," 725 F.3d at 267, so too does the President's refusal to execute the Appropriations Act. In this case, the President decided that he would not spend statutorily appropriated funds because that would not align with his policy preferences. *See* 90 Fed. Reg. at 8619. We held in *Aiken* that this is impermissible. We should do the same here. *See Aiken*, 725 F.3d at 260 ("[T]he President and federal agencies may not ignore statutory mandates or prohibitions," including congressional appropriations, "merely because of policy disagreement with Congress.").

**2.**

My colleagues in the majority hold that we cannot review the separation-of-powers violation alleged by the grantees because there is no "cause of action" or procedural vehicle to bring it before the court. Maj. Op. 18–24. They characterize the grantees' challenge to the President's impoundment of funds as a statutory argument that the President violated the Appropriations Act and Impoundment Control Act; and they determine that *Dalton* forecloses the grantees from transforming that statutory claim into a judicially reviewable constitutional violation. But the majority offers no persuasive support for its "no-cause-of-action" legal theory, and that theory is inapposite because the President relied on his constitutional authority over foreign affairs to justify the impoundment of funds, which makes *Youngstown* the correct analytical framework.

**i.**

The linchpin of the majority's legal analysis is the Supreme Court's opinion in *Dalton v. Specter*, but the majority misreads the holding in that case. Maj. Op. 16 ("Here, the grantees assert a non-statutory right to vindicate separation-of-

powers principles but they are foreclosed from doing so by *Dalton v. Specter*, 511 U.S. 462 (1994).").  Although *Dalton* did reject the proposition that "*whenever* the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine," *id*. at 18 (emphasis added) (quoting *Dalton*, 511 U.S. at 471), it did not hold that such an *ultra vires* action by a President can *never* be a constitutional violation.  In other words, just because the Court determined that not all such claims implicate the Constitution, that does not mean that none of them ever do.

The relevant portion of *Dalton* soundly refutes an argument advanced by a circuit court: that "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution."  511 U.S. at 472.  The Court reasoned that the two types of claims are distinct, citing its cases that "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. (collecting cases).  Significantly, the Court also noted that it had recognized in *Franklin v. Massachusetts* that "[p]residential decisions are reviewable for constitutionality," *Dalton*, 511 U.S. at 471, but it was concerned that "if every claim alleging that the President exceeded his statutory authority were considered a constitutional claim, the exception identified in *Franklin* would be broadened beyond recognition," *id.* at 474.  That statement shows that the Court did not mean to preclude constitutional review of *all* presidential actions that exceed statutory authority — it just did not want to unduly broaden the exception that permits such review.

My colleagues' view is that *Dalton* forecloses any attempt to "assert a non-statutory right to vindicate separation-of-powers principles."  Maj. Op. 16.  They say that the grantees

"may not bring a freestanding constitutional claim if the underlying alleged violation and claimed authority are statutory." *Id.* at 5. But they support that interpretation only with a comment that "plaintiffs would otherwise be able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one." *Id.* at 18. Their suggestion that it should not be too easy for plaintiffs to bring constitutional claims does not necessitate barring *all* such claims. Moreover, they do not grapple with the implications of their interpretation. As the Ninth Circuit has recognized, it "cannot be right . . . that as long as an official identifies some statutory authorization for his actions, doing so makes any challenge to those actions statutory and precludes constitutional review." *Sierra Club v. Trump*, 929 F.3d 670, 697 (9th Cir. 2019).[7]

The majority's interpretation of *Dalton* creates a circuit split. In *Murphy Co. v. Biden*, the Ninth Circuit held that, under *Dalton*, "a challenge to presidential action will be considered constitutional, and therefore justiciable under *Franklin*, so long as a plaintiff claims that the President has violat[ed] . . . constitutional separation of powers principles because the President's action [would] lack[] both statutory authority and background constitutional authority." 65 F.4th at 1130 (cleaned up). That court read *Dalton* to hold that "[w]hile an action taken by the President in excess of his statutory authority

---

[7] My colleagues suggest that their interpretation of *Dalton* will not "insulate large swaths of presidential action from judicial review" because APA challenges and *ultra vires* review remain available. Maj. Op. 23 n.14. But those causes of action are not sufficient to address sweeping executive action. To take an extreme example: What if the President announced that he would stop enforcing all statutes? Under the majority's approach, that would not be a violation of the Take Care Clause but would instead constitute thousands of violations of individual statutes.

does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." *Id.* (cleaned up); *accord City of Chicago v. Barr*, 961 F.3d 882, 931 (7th Cir. 2020) (not interpreting *Dalton* but holding that the Attorney General's decision to attach conditions to grants "exceeded the authority delegated by Congress in the" relevant statutes *and* "violated the constitutional separation of powers"). Thus, the majority's interpretation of *Dalton* finds little support in the case itself, in the majority's analysis of it, or in the decisions of sister circuits that considered the same issue and came to a different conclusion.

I also disagree with the majority's suggestion that the grantees assert a mere violation of the Impoundment Control Act. *See* Maj. Op. 5. In this case, the President's violation of the Impoundment Control Act is a sideshow. That statute provided a mechanism for the President to lawfully attempt to impound the funds, and his failure to follow its prescribed procedures is evidence that he was, in fact, refusing to obligate the funds in defiance of Congress. But the crux of the separation-of-powers problem is the President's refusal to comply with the Appropriations Act for policy reasons — that was an impingement on Congress's authority under the Spending Clause and the Appropriations Clause, and also violated the Take Care Clause.

The Impoundment Control Act is not meant to cover such a challenge. Under that statute, the President cannot withhold funds without transmitting a special message to Congress that "specif[ies]" things like "the amount of the budget authority proposed to be" rescinded or deferred, and "any account, department, or establishment of the Government to which such budget authority is available for obligation, and the specific project or governmental functions involved." 2 U.S.C. § 683(a); *see also id.* § 684(a). If the President withholds funds

without transmitting such a special message, then the Comptroller General "shall make a report" to Congress that includes "any available information concerning" the withholding.  *Id.* § 686.  And if funds are required to be obligated but are not, the Comptroller General may file "an explanatory statement" with Congress and, after twenty-five days, "bring a civil action" to compel obligation.  *Id.* § 687.  Those procedures are intended to address discrete rescission or deferral requests affecting specific line-items of budget authority.[8]  They are ill-suited to address an executive order that wipes out all "United States foreign assistance," representing tens of billions of dollars and thousands of individual programs.  90 Fed. Reg. at 8619.  Moreover, Congress did not intend for those procedures to displace or preclude a constitutional cause of action.  *See* 2 U.S.C. § 681(3) ("Nothing in this Act . . . shall be construed as" "affecting in any way the claims or defenses of any party to litigation concerning any impoundment."); *see also* S. Rep. No. 93-688, at 74 (1974) ("The authority of the Comptroller General is not intended to infringe upon the right of any member of Congress, or any other party, to initiate litigation."  Rather, the aim is to

---

[8]     *See, e.g.*, *Review of the President's Special Message of June 3, 2025*, B-337581, 2024 WL 1714236 (Comp. Gen. June 17, 2025) (reviewing a special message that proposes rescissions from twenty-two appropriations accounts, including, for example, $168,837,230 from the Department of State's "Contributions to International Organizations"); *Impoundment of the Advanced Research Projects Agency-Energy Appropriation Resulting from Legislative Proposals in the President's Budget Request for Fiscal Year 2018*, B-329092, 2017 WL 6335684 (Comp. Gen. Dec. 12, 2017) (informing Congress of the Department of Energy's initial withholding but subsequent release of $91 million of the Advanced Research Projects Agency-Energy appropriation in fiscal year 2017).

allow "congressional action independent of resources provided by the Department of Justice.").

In sum, the majority errs in characterizing the grantees' claim as merely statutory and in applying *Dalton* to deny the grantees a constitutional cause of action.

**ii.**

My colleagues' application of *Dalton* is premised on their determination that the President's withholding of foreign-aid funds presents a "fundamentally statutory dispute." Maj. Op. 5. That premise is incorrect. Before the district court, the government defended the President's actions by arguing that he had "vast and generally unreviewable powers" "in the realm of foreign affairs" under "Article II of the Constitution." Defs.' Opp'n to Pls.' Mot. for Prelim. Relief at 23–26. Thus, the issue before us is the legality of the President's assertion of his Article II powers over foreign affairs to impound foreign-aid appropriations. And that means this case is not a "statutory dispute" but a constitutional one, which the district court properly analyzed under the tripartite framework of *Youngstown*.

The record on review plainly shows that this case is more than just a "statutory dispute." In the executive order pausing foreign-aid funding, the President relied on his authority under "*the Constitution* and the laws of the United States of America." 90 Fed. Reg. at 8619 (emphasis added). Before the district court, the government argued that the grantees' "separation of powers claims . . . fail because the President's powers in the realm of foreign affairs are vast and generally unreviewable." Defs.' Opp'n to Pls.' Mot. for Prelim. Relief at 24 (cleaned up). It identified Article II as the source of the President's power, asserting: "Under Article II of the Constitution . . . , the President has broad authority to attend to

the foreign affairs of the nation, including by determining how foreign aid funds are used." *Id.* The district court ultimately determined that the President's foreign affairs powers under Article II were insufficient to justify his actions "in an area where it is firmly established that the two branches share power." Prelim. Inj. Order at 37–38 (cleaned up).

My colleagues make two errors in concluding that the issues before us are statutory and not constitutional: First, they allow the government to change its position on appeal to disclaim any reliance on the President's Article II powers; and second, they misunderstand the relevance of the President's statutory violations in applying *Youngstown*'s constitutional framework.

The majority's characterization of this case as "fundamentally statutory" depends on the government's representation at oral argument that it is "not relying on any constitutional authority . . . to justify" the President's withholding of foreign-aid funds. Oral Arg. Tr. 18–19; *see also id.* at 14 (arguing it has "not advanced in this appeal any sort of freestanding constitutional argument that the executive doesn't have to spend the funds if the statutes require the executive to spend the funds"). That representation, of course, is a sharp break from what the government argued in the district court. Because we are reviewing the district court's ruling, which was based on what the government argued in the court below, the government may not change its position on appeal. *See Baldi v. Ambrogi*, 89 F.2d 845, 846 (D.C. Cir. 1937) ("Nothing is better settled than the rule that one may not try a case upon one theory and then reverse the judgment against him in the appellate court upon another and inconsistent theory which is not presented, urged, or tried in the court below."). Indeed, we have held that a litigant's "obvious about-face render[s] its claims forfeited." *Del. Dep't of Nat. Res. & Env't*

*Control v. EPA*, 895 F.3d 90, 96 (D.C. Cir. 2018); *see also id.* ("A petitioner may not take a position in this court opposite from that which it took below . . . ." (cleaned up)). My colleagues thus err in accepting without question the government's abrupt change in tactics, which appears to be motivated by its preference to avoid appellate review of the separation-of-powers issue.

My colleagues also are mistaken in their apparent belief that if the President asserts both constitutional and statutory authority to validate his conduct, the court may characterize the whole dispute as statutory. *See* Maj. Op. 20. They acknowledge that the government previously relied on the President's Article II powers to impound the funds in question, but they note that (1) the executive order referenced "the Constitution *and the laws of the United States of America*," (2) the government raised a *Dalton* argument claiming the dispute was "purely statutory," and (3) the government claimed that it did not exceed its statutory authority or violate any statutes. *Id.* (emphasis in original). That reasoning betrays a misunderstanding of how statutory arguments fit within *Youngstown*'s constitutional framework.

In applying *Youngstown*, the district court engaged in a multistep analysis in which statutory and constitutional issues were intertwined. First, the district court determined that the President had no statutory authority for his actions because he defied the Appropriations Act and did not follow the procedures required by the Impoundment Control Act. With no support from any statute, the President had to rely on constitutional authority alone. *See Youngstown*, 343 U.S. at 585 ("The President's power, if any, to issue the order must stem either from an act of Congress or from the Constitution itself."). The district court noted that the President's actions placed him in the "third category" of *Youngstown*'s tripartite

framework because he took "measures incompatible with the . . . will of Congress," as demonstrated by his defiance of the statutes that Congress had enacted. Prelim. Inj. Order at 30 (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)). The Executive's power was thus "at its lowest ebb." *Id.* (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)). In that posture, the President could prevail only if his own constitutional powers over the matter were exclusive. *See id.* at 32 ("Defendants' actions must be 'scrutinized with caution,' and they 'can rely only upon [the President's] own constitutional powers minus any constitutional powers of Congress over the matter.'" (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring))). The constitutional authority asserted by the government was the President's "foreign affairs" power under a "general Article II responsibility to serve as the Executive and take care that the laws be faithfully executed." *Id.* at 32. But, the district court explained, "settled, bedrock principles of constitutional law" prohibit the President from "disregard[ing] a statutory mandate to spend funds simply because of policy objections"; and "the Supreme Court has explicitly rejected" any "unbounded [Executive] power" in the realm of foreign affairs, "where it is firmly established that the two branches share power." *Id.* at 33–34, 37 (cleaned up). Thus, the court concluded that the grantees were likely to succeed on their claim that the President violated the separation of powers.

The district court's chain of reasoning demonstrates that although statutory issues were integral to the analysis, that does not mean that the dispute was not constitutional. Rather, when determining whether the Executive's exercise of authority comports with the separation of powers under *Youngstown*, a court is *required* to examine and apply relevant statutes. *See Youngstown*, 343 U.S. at 635 (Jackson, J., concurring) (beginning the constitutional analysis with determining

whether the President "acts pursuant to an express or implied authorization of Congress").[9] Thus, the majority's application of *Dalton* rests on a mistaken assumption that this case raises only a "fundamentally statutory dispute." Maj. Op. 5.

In sum, the government undeniably asserted constitutional authority for the President's actions, and this case thus "necessarily turn[s] on whether the Constitution authorized [those] actions." *Dalton*, 511 U.S. at 473. It follows that, even under the majority's interpretation of *Dalton*, the grantees may bring a constitutional cause of action here.

## IV.

My review of the district court's preliminary-injunction order has focused primarily on the district court's determination that the grantees were likely to succeed on the merits of their claims. As discussed, I would summarily affirm that aspect of the preliminary-injunction order because the government failed to challenge the district court's ruling on the separation of powers, which was the basis of the order's analysis of the merits. *See World Wide Mins.*, 296 F.3d at 1160. I also would affirm the district court's findings regarding irreparable harm, as well as its weighing of equitable factors and the public interest. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely

---

[9] The majority attempts to distinguish *Youngstown* on the ground that the President in that case did not assert statutory authority for his actions. *See Youngstown*, 343 U.S. at 585 ("[W]e do not understand the Government to rely on statutory authorization for this seizure."). But the point is that when the President's actions are unsupported by statutory authority, "his power is at its lowest ebb." *Id.* at 637 (Jackson, J., concurring). Whether that statutory authority is absent because he violated statutes or because he declined to rely on statutes makes no difference.

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

The government does not dispute that the grantees have shown harm that is "'both certain and great,' as well as 'actual and not theoretical,'" as the district court found. Prelim. Inj. Order at 42 (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Indeed, the grantees undeniably have suffered harm from the slashing of their budgets, resulting in large-scale layoffs, shuttered program offices, and deferred payments to vendors. And the effects of the funding freeze have rippled around the world, devastating the grantees' aid programs and the people that they serve. Nevertheless, my colleagues speculate that "it stands to reason that existential financial harm would already have taken place by the time that the grantees would finally receive unobligated funds for which they first had to compete," and notes that "[t]he record is simply less developed about . . . why being denied immediate relief as to that opportunity [to compete for impounded funds] would cause harm the grantees would not suffer anyway." Maj. Op. 32. In my view, my colleagues' understanding of irreparable harm demands an unduly stringent showing from the grantees. As my colleagues acknowledge, we have held that a lost opportunity to receive funding is a cognizable injury. *Cf. CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) ("[A] plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity." (emphases in original)). Because the government's failure to obligate the appropriated funds denies the grantees any chance of obtaining critical grants before the funding lapses at the end of the fiscal

year, there is a sufficient causal connection between the relief requested and the very real harm suffered by the grantees.

The remaining factors — the balance of equities and the public interest — "merge when, as here, the Government is the opposing party." *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (cleaned up). Those factors strongly favor the grantees because "there is a substantial public interest in having" the government "abide by the federal laws." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) (cleaned up). That is particularly true when it is likely that the Executive has violated the separation of powers. Contrary to the majority's suggestion, that is not an injury "on behalf of the Congress." Maj. Op. 33. "The structural principles secured by the separation of powers protect" not only Congress and the President, but "the individual as well." *Bond*, 564 U.S. at 222. As the Supreme Court has recognized, "the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta*, 488 U.S. at 380. It is undeniably in the public interest to respect and enforce this separation of powers — a "basic and vital" feature of our system of government. *Springer*, 277 U.S. at 201; *see also Clinton*, 524 U.S. at 450 (Kennedy, J., concurring) ("Liberty is always at stake when one or more of the branches seek to transgress the separation of powers."); *Youngstown*, 343 U.S. at 629 (Douglas, J., concurring) ("The doctrine of the separation of powers was adopted . . . to preclude the exercise of arbitrary power. The purpose was . . . to save the people from autocracy." (cleaned up)).

For the foregoing reasons, I would affirm the preliminary-injunction order to the extent it is no broader than necessary to afford complete relief to the grantees.[10]

\*     \*     \*

In 2013, when a government agency "simply def[ied] a law enacted by Congress . . . without any legal basis," we recognized that the case had "serious implications for our constitutional structure," and granted a mandamus petition to compel the Executive's compliance. *Aiken*, 725 F.3d at 266–67. Today, a President defies laws enacted by Congress without any legal basis, and the court holds that he has merely violated a statute, that the Constitution is not even implicated, and that there is no cause of action to challenge the constitutionality of his conduct. By failing to rein in a President who ran roughshod over clear statutory mandates, the court "evade[s] [its] constitutional responsibility to delineate the obligations and powers of each branch" of our government. *Halperin*, 606 F.2d at 1211. The court also departs from the norms of impartial appellate review by resolving this case in the President's favor based on a legal argument that the government clearly and obviously forfeited. Moreover, the

---

[10]     At oral argument, counsel for the grantees represented that his clients "collectively would compete for . . . 99 percent of the funds" identified, but acknowledged that this figure was not presented before the district court and suggested that we "affirm but only to the extent the injunction was . . . no broader than necessary to provide complete relief to the plaintiffs." Oral Arg. Tr. 63–64. I agree that this is the "sensible" approach. *Id.*; *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562–63 (2025) (staying injunctions "only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff" and directing "[t]he lower courts [to] move expeditiously to ensure that . . . the injunctions comport with this rule").

new constitutional rule that the court announces paves the way for future illegal conduct: The court holds that Executive action that exceeds statutory authority or violates a statute can never be the basis of a constitutional cause of action. To reach that startling conclusion, the court misinterprets *Dalton v. Specter*, and ignores that the government has relied on the President's constitutional authority to justify his actions here, which makes the court's entire analysis under *Dalton* inapposite.

At bottom, the court's acquiescence in and facilitation of the Executive's unlawful behavior derails the "carefully crafted system of checked and balanced power" that serves as the "greatest security against tyranny — the accumulation of excessive authority in a single Branch." *Mistretta*, 488 U.S. at 381. "It is no overstatement to say that our constitutional system of separation of powers [will] be significantly altered" because the court "allow[s] [the Executive Branch] to disregard federal law in the manner asserted in this case[.]" *Aiken*, 725 F.3d at 267. Because the court turns a blind eye to the "serious implications" of this case for the rule of law and the very structure of our government, I respectfully dissent.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, *Plaintiffs*, v. UNITED STATES DEPARTMENT OF STATE, *et al.*, *Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, *Plaintiffs*, v. DONALD J. TRUMP, *et al.*, *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

## NOTICE OF TRANSMITTAL OF SPECIAL MESSAGE UNDER 2 U.S.C. § 683

Defendants hereby respectfully provide notice that, after issuance under the *per curiam* order in Nos. 25-5097 and 25-5098 (Doc. 2132519) on August 28, 2025, of the mandate of the United States Court of Appeals for the District of Columbia Circuit, the President transmitted to Congress a special message under 2 U.S.C. § 683(a) transmitting rescission proposals pertinent to the instant suits.  A copy of the message is submitted.

Dated: August 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
JOSHUA N. SCHOPF (D.C. Bar 465553)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*

# EXHIBIT 1

**THE WHITE HOUSE**

WASHINGTON

August 28, 2025

Dear Mr. Speaker:

In accordance with section 1012(a) of the Congressional Budget
and Impoundment Control Act of 1974 (2 U.S.C. 683(a)),
I herewith report 15 rescissions of budget authority, totaling
$4.9 billion.

The proposed rescissions affect programs of the Department of
State as well as the United States Agency for International
Development and International Assistance Programs.

The details of these rescissions are set forth in the attached
enclosure.

Sincerely,



The Honorable Mike Johnson
Speaker of the
    House of Representatives
Washington, D.C.  20515

A138

# EXHIBIT 2

# THE WHITE HOUSE

WASHINGTON

August 28, 2025

Dear Mr. President:

In accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683(a)), I herewith report 15 rescissions of budget authority, totaling $4.9 billion.

The proposed rescissions affect programs of the Department of State as well as the United States Agency for International Development and International Assistance Programs.

The details of these rescissions are set forth in the attached enclosure.

Sincerely,



The Honorable JD Vance
President of the Senate
Washington, D.C.  20510

A140

# EXHIBIT 3

Rescission proposal no. R25-23

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     Department of State
**Bureau:**     International Organizations and Conferences
**Account:**    Contributions to International Organizations (019-1126 2025/2025)

Amount proposed for rescission:             $520,500,000

**Justification:**

This proposal would rescind $521 million of the $1.5 billion appropriated in FY 2025 for the Contributions to International Organizations (CIO) account.  The CIO account provides funding for the assessed contributions to the United Nations (UN), UN-Affiliated organizations, and various other international organizations that do not support major U.S. policies or priorities or have been operating contrary to American interests for many years.

This proposal is consistent with Executive Order 14199, "Withdrawing the United States from and Ending Funding to Certain United Nations Organizations and Reviewing United States Support to All International Organizations."  The rescission would eliminate funding for the UN regular budget, and other organizations such the United Nations Educational, Scientific, and Cultural Organization.

Rescission proposal no. R25-24

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**  Department of State
**Bureau:**  International Organizations and Conferences
**Account:**  Contributions for International Peacekeeping Activities (019-1124 2025/2025)

Amount proposed for rescission:  $392,534,000

**Justification:**

This proposal would rescind $393 million of the $1.2 billion appropriated in FY 2025 for the Contributions for International Peacekeeping Activities (CIPA) account, which was defunded in the President's FY 2026 Budget.  The CIPA account provides payments for the U.S. share of United Nations (UN) peacekeeping assessments.  UN peacekeeping has been fraught with waste and abuse, as evidenced by the ongoing sexual exploitation and abuse (SEA) in the Democratic Republic of the Congo and the Central African Republic.  There have been thousands of credible allegations of sexual abuse and other crimes against UN peacekeepers from across the world, including when UN personnel who solicited underage girls in Kosovo that resulted in them being kidnapped, tortured, and prostituted.  The UN has failed to address this issue by punishing the perpetrators of these heinous crimes.  UN Peacekeepers were also the source of the cholera outbreak in Haiti after the 2010 earthquake, costing billions and causing lasting harm.  Reports have also estimated that billions in peacekeeping contracts (over 40 percent) were implicated in significant corruption schemes.  The rescission would be a first step to engaging in strong reforms across the UN.

Other examples of activities funded by this account include:
- In 2023, 43 people were killed during demonstrations against the Democratic Republic of the Congo Mission (MONUSCO) and DRC presidential candidates have threatened to remove the UN peacekeeping mission from the DRC.
- The Mali mission (MINUSMA's) failure to retain host country consent and protect civilians is another stain on the UN's tattered history of peacekeeping.

2

Rescission proposal no. R25-25

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     Department of State
**Bureau:**     Other
**Account:**    Democracy Fund (019-1121 2020/2025)

Amount proposed for rescission:                    $1,800,498

**Justification:**

This proposal would rescind $2 million of the $274 million appropriated in FY 2020 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF activities undermine American values, weaken the perception of America abroad, interfere with the sovereignty of other countries—including U.S. allies, and bankroll corrupt leaders.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations.  The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:

- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

3

A144

Rescission proposal no. R25-26

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     Department of State
**Bureau:**     Other
**Account:**    Democracy Fund (072-019-1121 2020/2025)

Amount proposed for rescission:                    $56,107

**Justification:**

This proposal would rescind $56,107 of the $274 million appropriated in FY 2020 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:

- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

4

A145

Rescission proposal no. R25-27

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     Department of State
**Bureau:**     Other
**Account:**    Democracy Fund (019-1121 2024/2025)

Amount proposed for rescission:                    $188,314,470

**Justification:**

This proposal would rescind $188 million of the $340 million appropriated in FY 2024 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

A146

Rescission proposal no. R25-28

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     Department of State
**Bureau:**     Other
**Account:**    Democracy Fund (072-019-1121 2024/2025)

Amount proposed for rescission:                $132,117,226

**Justification:**

This proposal would rescind $132 million of the $340 million appropriated in FY 2024 for the Democracy Fund (DF). The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development. In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens. For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

Rescission proposal no. R25-29

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     International Assistance Programs
**Bureau:**     International Security Assistance
**Account:**    Peacekeeping Operations (019-011-1032 2024/2025)

Amount proposed for rescission:                    $110,384,428

**Justification:**

This proposal would rescind $110 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

Rescission proposal no. R25-30

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**


**Agency:**     International Assistance Programs
**Bureau:**     International Security Assistance
**Account:**    Peacekeeping Operations (019-011-1032 2025/2025)

Amount proposed for rescission:                    $326,214,947

**Justification:**

This proposal would rescind $326 million of the $410 million appropriated in FY 2025 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

Rescission proposal no. R25-31

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     International Assistance Programs
**Bureau:**     International Security Assistance
**Account:**    Peacekeeping Operations (011-1032 2024/2025)

Amount proposed for rescission:                     $2,500,000

**Justification:**

This proposal would rescind $3 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

Rescission proposal no. R25-32

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

| | |
|---|---|
| **Agency:** | International Assistance Programs |
| **Bureau:** | International Security Assistance |
| **Account:** | Peacekeeping Operations (019-011-1032 2020/2025) |

Amount proposed for rescission:                    $5,850,726

**Justification:**

This proposal would rescind $6 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

Rescission proposal no. R25-33

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**

**Agency:**    International Assistance Programs
**Bureau:**    Agency for International Development
**Account:**    Development Assistance (072-1021 2017/2025)

Amount proposed for rescission:                          $3,360

**Justification:**

This proposal would rescind $3,360 of the $3 billion appropriated in FY 2017 for
Development Assistance (DA).  The DA account is intended to fund programs that work to
promote resilient societies, but in practice has done the opposite.  Many DA programs
conflicted with American values, interfered with the sovereignty of other countries, and
bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing
no clear benefit to Americans.  Projects like electric busses in Rwanda, are of negative value to
American taxpayers and American foreign policy interests.  The rescission would align with
the Administration's efforts to return funding from wasteful U.S. Agency for International
Development programs to the American taxpayers. The remaining balance proposed for
rescission are for activities that have completed their goals and are no longer needed for their
intended purpose.

Other examples of activities funded by this account include:
- $24.6 million to build climate resilience in Honduras.
- $38.6 million for biodiversity and low-emissions development in West Africa.
- $13.4 million for civic engagement in Zimbabwe.

11

Rescission proposal no. R25-34

## PROPOSED RESCISSION OF BUDGET AUTHORITY
### Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)

**Agency:**　　International Assistance Programs
**Bureau:**　　Agency for International Development
**Account:**　　Development Assistance (072-1021 2020/2025)

Amount proposed for rescission:　　　　　$7,088,936

**Justification:**

This proposal would rescind $7 million of the $3.4 billion appropriated in FY 2020 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like electric busses in Rwanda are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples of activities funded by this account include:
- $2 million for "green economic opportunities" in Honduras.
- $5 million for localization, inclusion, and sustainability in Kenya.

12

A153

Rescission proposal no. R25-35

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

| | |
|---|---|
| **Agency:** | International Assistance Programs |
| **Bureau:** | Agency for International Development |
| **Account:** | Development Assistance (072-1021 2021/2025) |

Amount proposed for rescission:                    $31,649,095

**Justification:**

This proposal would rescind $32 million of the $3.5 billion appropriated in FY 2021 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like baking and beauty therapy in Zimbabwe and land administration in Malawi, are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples of activities funded by this account include:
- $550,000 for holistic monitoring, evaluation, and learning in North Macedonia.
- $60,000 for listening tours on local development in Timor-Leste.
- $12,000 for Telling the USAID story in Bosnia and Herzegovina.

13

A154

Rescission proposal no. R25-36

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

| | |
|---|---|
| **Agency:** | International Assistance Programs |
| **Bureau:** | Agency for International Development |
| **Account:** | Development Assistance (072-1021 2023/2025) |

Amount proposed for rescission:                    $6,587,000

**Justification:**

This proposal would rescind $7 million of the $4.4 billion appropriated in FY 2023 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like, electric busses in Rwanda, are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.  The remaining balance for rescission is part of a "Flexible Fund" to support private sector partnerships overseas created under the Biden Administration.

Other examples of activities funded by this account include:
- A partnership with the Green Climate Fund, for the Barbados Blue-Green Bank for climate change mitigation.
- Supporting ecotourism in Peru.
- $650,000 for micro-insurance for smallholder farmers and microbusinesses in Colombia for climate disaster response.

14

A155

Rescission proposal no. R25-37

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**      International Assistance Programs
**Bureau:**      Agency for International Development
**Account:**     Development Assistance (072-1021 2024/2025)

Amount proposed for rescission:              $3,180,239,598

**Justification:**

This proposal would rescind $3.2 billion of the $3.9 billion appropriated in FY 2024 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples include:
- $24.6 million to build climate resilience in Honduras.
- $38.6 million for biodiversity and low-emissions development in West Africa.
- $13.4 million for civic engagement in Zimbabwe.

15

A156

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

        *Plaintiffs*,

        v.

DONALD J. TRUMP, *et al.*,

        *Defendants*.

Civil Action No. 25-cv-402 (AHA)

## DECLARATION OF JEREMY LEWIN

I, Jeremy Lewin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2.      I am currently performing the duties of the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom and serving as a Senior Advisor to the Secretary and the Director of Foreign Assistance. In my current roles, I oversee the management of foreign assistance resources appropriated to the Department of State (State) and the United States Agency for International Development (USAID); assist the Secretary in exercising his duties under the Foreign Assistance Act; serve as the senior-most advisor to the Secretary on foreign assistance, democracy, migration and values-based diplomacy issues around the world; and oversee several State Department functions including the bureaus of Democracy, Human Rights, and Labor, Population, Refugees, and Migration, Global Health Security and Diplomacy, and the offices of Foreign Assistance Oversight and Global Food Security.

3.      From January 30, 2025, until August 28, 2025, Secretary of State Marco Rubio was designated by President Trump as the Acting Administrator of USAID. On August 28, 2025, pursuant to the Federal Vacancies Reform Act, President Trump designated Director of the Office of Management and Budget (OMB) Russell Vought to serve as the Acting Administrator of USAID. While Secretary Rubio was Acting Administrator, from March 2025 through August 29, 2025, I performed the duties and functions of Deputy Administrator and Chief Operating Officer of USAID. After the President designated Director Vought as USAID Acting Administrator, following Secretary Rubio, I returned full-time to the Department of State.

4.      As of August 28, 2025, State and USAID had approximately $10.5 billion in remaining unobligated foreign assistance funds appropriated in titles III and IV of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Division F of Public Law 118-47), the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4), and supplemental appropriations including Making Emergency Supplemental Appropriations for the Fiscal Year Ending September 30, 2024, and for Other Purposes (Public Law 118-50) (incorporating H.R. 8035, the "Ukraine Supplemental" and H.R. 8035, the "Israel Supplemental.")

5.      On August 28, 2025, President Trump transmitted a special message to Congress proposing the rescission of approximately $4 billion of this amount. These funds are now withheld from obligation pursuant to the Impoundment Control Act (ICA). This includes all unobligated funds that will expire after September 30, 2025 contained in the Development Assistance (DA), Democracy Fund (DF), and Peacekeeping Operations (PKO) accounts. If State or USAID were to obligate these unavailable funds, I understand that would represent an

obligation in excess of apportionments approved by OMB, and thus a potential violation of the Anti-Deficiency Act, 31 U.S.C. § 1341 et. seq.

6.      Consistent with available authorities, State and USAID are making best efforts to obligate the remaining $6.5 billion in expiring appropriated balances for foreign assistance by September 30, 2025. State expects to be able to obligate substantially all these funds before their expiration.

7.      Secretary Rubio and I have already given appropriate approval for plans to obligate the full amounts in these assistance accounts. Put another way, the Secretary and I have already given appropriate policy direction for the allocation of all available expiring funds to specific purposes and programs.

8.      I understand from career staff that they expect these plans for expiring foreign assistance balances can reasonably be implemented before the end of the fiscal year, with legally sufficient obligations made on or before September 30, 2025. Staff are working as quickly as possible to complete necessary technical and legal steps to facilitate the timely obligation of funds. These include technical budget and program work, preparing Congressional Notifications (CNs) and consulting with Congress, seeking apportionments from OMB, negotiating bilateral diplomatic and interagency agreements, and completing required financial and related systems steps. State and USAID have already notified Congress regarding our plans for the obligation of approximately $2 billion of these funds and are preparing additional CNs, where such notifications are required.

9.      I understand that some of these accounts, including Foreign Military Financing (FMF), are restricted by statute for activities for which plaintiffs would not appear be in a position to compete. Furthermore, for all accounts, given how far along our plans to timely

obligate expiring balances are, with policy approvals already completed, State does not expect to open up solicitations or otherwise offer any additional opportunity to "compete" for funding from expiring balances before obligations for all funds are made.

10.     I understand that in past years, some amount of foreign assistance funding lapses for operational or other reasons. Reserving the possibility that this may occur, as it typically does, for limited amounts from these foreign assistance accounts, State and USAID expect to be able to obligate substantially all of the remaining expiring foreign assistance funds before they expire.

I declare that the foregoing is true and correct to the best of my knowledge.

Dated: August 31, 2025

Jeremy Lewin

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br>    *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br>    *Defendants.* | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br>    *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br>    *Defendants.* | Civil Action No. 25-00402 (AHA) |

<u>**DEFENDANTS' NOTICE OF APPEAL**</u>

All Defendants hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from the Memorandum Opinion and Order (No. 25-cv-400, Doc. 145; No. 25-cv-402, Doc. 139) issued on September 3, 2025, and from all orders antecedent to such order and opinion and thus incorporated therein.

1

A161

Dated: September 4, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar No. 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: Indraneel.Sur@usdoj.gov

*Counsel for Defendants*

2

**Query    Reports    Utilities    Help    Log Out**

APPEAL,TYPE-D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00402-AHA

GLOBAL HEALTH COUNCIL et al v. DONALD J. TRUMP et al
Assigned to: Judge Amir H. Ali
Related Case: 1:25-cv-00400-AHA
Case in other court:  USCA, 25-05047
                      USCA, 25-05097
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 02/11/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of Agency
Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**GLOBAL HEALTH COUNCIL**                    represented by    **Allison Gardner**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue, NW
Washington D.C., DC 20001-3743
202-942-5000
Email: allison.gardner@arnoldporter.com
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
ARNOLD & PORTER
601 Massachusetts Ave. NW
Washington, DC 20001
202-942-6421
Email:
Dana.KaganMcGinley@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW
Suite 300
Washington, DC 20006
301-823-1148
Email: dan@jacobsonlawyersgroup.com
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202-942-5009
Email: Daniel.Yablon@arnoldporter.com

A163

*ATTORNEY TO BE NOTICED*

**John Robinson**
JACOBSON LAWYERS GROUP
1629 K Street NW, Suite 300
Washington, DC 20006
301-823-1148
Email: john@jacobsonlawyersgroup.com
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
JACOBSON LAWYERS GROUP
1629 K Street NW, Suite 300
Washington, DC 20006
301-823-1148
Email: nina@jacobsonlawyersgroup.com
*ATTORNEY TO BE NOTICED*

**Sally Pei**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
Fax: (202) 942-5999
Email: sally.pei@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave, NW
Washington, DC 20001
(202) 942-5000
Email: sam.callahan@arnoldporter.com
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
ARNOLD & PORTER
601 Massachusetts Avenue, NW
Washington, DC 20817
202-942-6115
Email: samuel.witten@apks.com
*ATTORNEY TO BE NOTICED*

**William Perdue**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave. NW
Washington, DC 20001
202-942-5685
Email: william.perdue@arnoldporter.com
*ATTORNEY TO BE NOTICED*

A164

**Stephen K. Wirth**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave. NW
Washington, DC 20001
202-942-6739
Fax: 202-942-5999
Email: Stephen.Wirth@arnoldporter.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**SMALL BUSINESS ASSOCIATION**              represented by   **Allison Gardner**
**FOR INTERNATIONAL COMPANIES**                              (See above for address)
                                                            *TERMINATED: 07/18/2025*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Dana Kagan McGinley**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Daniel F. Jacobson**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John Robinson**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Nina Cahill**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Sally Pei**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Samuel Francis Callahan**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Samuel M. Witten**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **William Perdue**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Stephen K. Wirth**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

A165

**HIAS**

represented by **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MANAGEMENT SCIENCES FOR
HEALTH, INC.**

represented by **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

A166

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sally Pei**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHEMONICS INTERNATIONAL, INC.**    represented by    **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sally Pei**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

DAI GLOBAL LLC                    represented by    **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sally Pei**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DEMOCRACY INTERNATIONAL, INC.**                   represented by **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sally Pei**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

A169

**Plaintiff**

**AMERICAN BAR ASSOCIATION**        represented by **Allison Gardner**
(See above for address)
*TERMINATED: 07/18/2025*
*ATTORNEY TO BE NOTICED*

**Dana Kagan McGinley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel F. Jacobson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Reuben Yablon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Robinson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nina Cahill**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sally Pei**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel Francis Callahan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samuel M. Witten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Perdue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen K. Wirth**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the*
*United States of America*
       represented by **Indraneel Sur**
U.S. DEPARTMENT OF JUSTICE
1100 L St. NW
Washington, DC 20530

A170

202-616-8488
Email: Indraneel.Sur@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
U.S. DEPARTMENT OF JUSTICE
Civil Division
1100 L Street NW
Washington, DC 20005
202-514-6304
Email: joshua.n.schopf@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO A. RUBIO**
*in his official capacity as Secretary of State and Acting Administrator of the United States Agency for International Development*

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER MAROCCO**
*in his official capacity as Acting Deputy Administrator for Policy and Planning, Acting Deputy Administrator for Management and Resources of the United States Agency for International Development, and Director of Foreign Assistance at the Department of St*
*TERMINATED: 04/22/2025*

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL VOUGHT**
*in his official capacity as Director of the Office of Management and Budget*

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES DEPARTMENT OF STATE**

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**

A171

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT**

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF MANAGEMENT AND BUDGET**

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JEREMY LEWIN**
*in his official capacity as Acting Director of Foreign Assistance at the United States Department of State and in his official capacity performing the duties of the Deputy Administrator and Chief Operating Officer of the United States Agency for Int*

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**CONSTITUTIONAL ACCOUNTABILITY CENTER**

represented by **Brianne Jenna Gorod**
CONSTITUTIONAL ACCOUNTABILITY CENTER
1730 Rhode Island Ave. NW
Suite 1200
Washington, DC 20005
202-296-6889
Email: brianne@theusconstitution.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Miriam Becker-Cohen**
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
202-296-6889

A172

Email: miriam@theusconstitution.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/11/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC-11470798) filed by DAI GLOBAL LLC, HIAS, DEMOCRACY INTERNATIONAL, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, AMERICAN BAR ASSOCIATION, GLOBAL HEALTH COUNCIL, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons, # 8 Summons, # 9 Summons, # 10 Summons) (Wirth, Stephen) (Entered: 02/11/2025) |
| 02/11/2025 | 2 | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 25-cv-400. (Wirth, Stephen) (Main Document 2 replaced on 2/11/2025) (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Wirth, Stephen) (Entered: 02/11/2025) |
| 02/11/2025 | 4 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Text of Proposed Order)(Wirth, Stephen) (Entered: 02/11/2025) |
| 02/11/2025 | 5 | NOTICE of Appearance by Daniel Reuben Yablon on behalf of GLOBAL HEALTH COUNCIL, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Yablon, Daniel) (Entered: 02/11/2025) |
| 02/11/2025 | 6 | NOTICE of Appearance by Sally Pei on behalf of GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Pei, Sally) (Entered: 02/11/2025) |
| 02/11/2025 | 7 | DECLARATION by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION re 4 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction . (Attachments: # 1 Declaration of Elisha Dunn-Georgiou, # 2 Declaration of Robert Nichols, # 3 Declaration of Mark Hetfield, # 4 Exhibit to Hetfield Decl., # 5 Declaration of Marian Wentworth, # 6 Declaration of James Butcher, # 7 Declaration of Zan Northrip, # 8 Declaration of Eric Bjornlund, # 9 Declaration of Scott Carlson)(Wirth, Stephen) (Entered: 02/11/2025) |
| 02/11/2025 | | Case Assigned to Judge Loren L. AliKhan. (znmw) (Entered: 02/11/2025) |

A173

| 02/11/2025 | 8 | SUMMONS (9) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 02/11/2025) |
|---|---|---|
| 02/11/2025 | 9 | NOTICE of Appearance by Samuel M. Witten on behalf of GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Witten, Samuel) (Entered: 02/11/2025) |
| 02/11/2025 | 10 | NOTICE of Appearance by Allison Gardner on behalf of GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Gardner, Allison) (Entered: 02/11/2025) |
| 02/11/2025 | 11 | ENTERED IN ERROR.....NOTICE of Appearance by William Perdue on behalf of GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Perdue, William) Modified on 2/11/2025 (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | 12 | NOTICE of Appearance by Dana Kagan McGinley on behalf of GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Kagan McGinley, Dana) (Entered: 02/11/2025) |
| 02/11/2025 | | NOTICE OF ERROR regarding 11 Notice of Appearance,. The following error(s) need correction: Attorney William Perdue is not an active member of this Court's bar; a Pro Hac Vice motion has not been filed in this case. (znmw) Modified on 2/11/2025 (znmw). (Entered: 02/11/2025) |
| 02/11/2025 | | RESOLVED.....NOTICE of Provisional Status re 12 NOTICE of Appearance by Dana Kagan McGinley on behalf of All Plaintiffs (Kagan McGinley, Dana).<br><br>Your attorney renewal has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney-renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 2/18/2025. (znmw) Modified on 2/12/2025 (zhcn). (Entered: 02/11/2025) |
| 02/11/2025 | 13 | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 1:25-cv-352. (Edelman, Christopher) (Entered: 02/11/2025) |
| 02/11/2025 | 14 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- William Perdue, Filing fee $ 100, receipt number ADCDC-11472347. Fee Status: Fee Paid. by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Wirth, Stephen) (Entered: 02/11/2025) |

A174

| 02/11/2025 | 15 | RESPONSE re 13 Notice of Related Case filed by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Wirth, Stephen) (Entered: 02/11/2025) |
|---|---|---|
| 02/11/2025 | | MINUTE ORDER: For the reasons stated in the court's order in *AIDS Vaccine Advocacy Coalition v. U.S. Department of State*, No. 25-CV-400, ECF No. 12, it is hereby ORDERED that the Clerk of Court shall TRANSFER this related matter to the Calendar and Case Management Committee. Signed by Judge Loren L. AliKhan on 02/11/2025. (lclla1) (Entered: 02/11/2025) |
| 02/11/2025 | | Case directly reassigned to Judge Amir H. Ali, as related, pursuant to Minute Order dated 2/11/2025. Judge Loren L. AliKhan is no longer assigned to the case. (ztnr) (Entered: 02/12/2025) |
| 02/12/2025 | 16 | NOTICE by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION re 4 Motion for TRO,, Motion for Preliminary Injunction, (Wirth, Stephen) (Entered: 02/12/2025) |
| 02/12/2025 | | MINUTE ORDER. The Court will hold a telephonic motion hearing in No. 25-cv-00400 and No. 25-cv-00402 on February 12, 2025, at 1:30 p.m. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Signed by Judge Amir H. Ali on 2/12/2025. (lcaha2) Modified on 2/12/2025. (zalh) (Entered: 02/12/2025) |
| 02/12/2025 | | Minute Entry for telephonic proceeding held before Judge Amir H. Ali: Motion Hearing held on 2/12/2025 re 4 Motion and Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction. Oral arguments heard. The Court takes the motion under advisement. A written order is forthcoming via Chambers. The Court orders the parties to submit a proposed order by 4:30 PM today and the necessary documentation regarding any terminations by 7:00 PM today. (Court Reporter: William Zaremba) (zalh) (Entered: 02/12/2025) |
| 02/12/2025 | 17 | NOTICE *Related to February 12, 2025 Hearing* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D: Proposed Order)(Edelman, Christopher) (Entered: 02/12/2025) |
| 02/12/2025 | 18 | NOTICE *of Revised Proposed Order* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION re Motion Hearing,, 4 Motion for TRO,, Motion for Preliminary Injunction, (Pei, Sally) (Entered: 02/12/2025) |
| 02/12/2025 | 19 | RESPONSE TO ORDER OF THE COURT re 2/12/2025 MINUTE Order by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (Wirth, Stephen) Modified event on 2/13/2025 (mg). (Entered: 02/12/2025) |

| 02/12/2025 | 20 | NOTICE *of supplemental information* by UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT re 17 Notice (Other), (Attachments: # 1 Exhibit) (Sur, Indraneel) (Entered: 02/12/2025) |
|---|---|---|
| 02/13/2025 | 21 | ORDER granting in part and denying in part Plaintiffs' 4 Motion for a Temporary Restraining Order. Defendants shall file a status report by 2/18/2025. The parties shall file a joint status report by 2/14/2025 at 5:00 PM. See document for details. Signed by Judge Amir H. Ali on 2/13/2025. (lcaha2) Modified on 2/14/2025. (zalh) (Entered: 02/13/2025) |
| 02/14/2025 | 22 | TRANSCRIPT OF STATUS CONFERENCE - MOTIONS - TEMPORARY RESTRAINING ORDER VIA ZOOM TELECONFERENCE PROCEEDINGS before Judge Amir H. Ali held on February 12, 2025; Page Numbers: 1-74. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/7/2025. Redacted Transcript Deadline set for 3/17/2025. Release of Transcript Restriction set for 5/15/2025.(Zaremba, William) (Entered: 02/14/2025) |
| 02/14/2025 | 23 | Joint STATUS REPORT by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Wirth, Stephen) (Entered: 02/14/2025) |
| 02/14/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 23 joint status report proposing a briefing schedule. Defendants shall respond to Plaintiffs' 4 motion for preliminary relief by February 21, 2025. Plaintiffs shall reply by 12:00 p.m. on February 27, 2025. Signed by Judge Amir H. Ali on 2/14/2025. (lcaha2) (Entered: 02/14/2025) |
| 02/18/2025 | 24 | NOTICE of Appearance by Indraneel Sur on behalf of All Defendants (Sur, Indraneel) (Entered: 02/18/2025) |
| 02/18/2025 | 25 | STATUS REPORT *regarding Compliance* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET. (Attachments: # 1 Exhibit USAID & State Decl, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit OMB Decl)(Sur, Indraneel) (Entered: 02/18/2025) |
| 02/19/2025 | 26 | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # 1 Proposed Amicus Brief, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 02/19/2025) |

| 02/19/2025 | 27 | NOTICE of Appearance by Miriam Becker-Cohen on behalf of CONSTITUTIONAL ACCOUNTABILITY CENTER (Becker-Cohen, Miriam) (Entered: 02/19/2025) |
|---|---|---|
| 02/20/2025 | 28 | ORDER. Plaintiffs' motion for contempt and to enforce the Court's temporary restraining order in No. 25-cv-00400 is granted in part and denied in part. See document for details. Signed by Judge Amir H. Ali on 2/20/2025. (lcaha2) (Entered: 02/20/2025) |
| 02/20/2025 | 29 | MOTION to Enforce *Temporary Restraining Order* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Elisha Dunn-Georgiou, # 2 Declaration of Robert Nichols, # 3 Declaration of Rachel Levitan, # 4 Declaration of Marian Wentworth, # 5 Declaration James Butcher, # 6 Declaration Zan Northrip, # 7 Declaration Eric Bjornlund, # 8 Declaration Scott Carlson, # 9 Text of Proposed Order) (Wirth, Stephen) (Entered: 02/20/2025) |
| 02/20/2025 | 31 | RESPONSE re 25 Status Report, filed by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (See docket entry 29 to view document)(mg) (Entered: 02/21/2025) |
| 02/21/2025 | 30 | ERRATA by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION re 1 Complaint,,. (Attachments: # 1 Errata (Corrected Complaint))(Wirth, Stephen) (Entered: 02/21/2025) |
| 02/21/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 29 motion to enforce the Court's temporary restraining order. Plaintiffs request that the Court order "the immediate payment of all funds owed and due to Plaintiffs and other USAID and State Department implementing partners." ECF No. 29 at 1. The motion is denied without prejudice as moot in light of the Court's order yesterday that Defendants are to "immediately cease [the blanket suspension of funds] and to take all necessary steps to honor the terms of contracts, grants, cooperative agreements, loans, and other federal foreign assistance awards that were in existence as of January 19, 2025, including but not limited to disbursing all funds payable under those terms." ECF No. 28 at 5.

The parties in this case and No. 25-cv-00400 shall meet and confer and file a consolidated joint status report by February 26, 2025, at 12:00 p.m., addressing Defendants' "prompt compliance with the order." Defendants' Br., *AIDS Vaccine*, ECF No. 28 at 8. Signed by Judge Amir H. Ali on 2/21/2025. (lcaha2) (Entered: 02/21/2025) |
| 02/21/2025 | 32 | STANDING ORDER. The parties are ordered to comply with the directives set forth in the attached standing order. See document for details. Signed by Judge Amir H. Ali on 2/21/2025. (lcaha2) (Entered: 02/21/2025) |
| 02/21/2025 | 33 | MOTION to Clarify re 21 Order on Motion for TRO,, Set/Reset Deadlines, 28 Order , MOTION to Stay by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 02/21/2025) |
| 02/21/2025 | 34 | Memorandum in opposition to re 4 Motion for TRO,, Motion for Preliminary Injunction, *combined with opposition in No.400* filed by MARCO RUBIO, PETER MAROCCO, |

A177

| | | |
|---|---|---|
| | | RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 02/21/2025) |
| 02/22/2025 | 35 | ORDER. To the extent Defendants' 33 motion to clarify is not mooted by the discussion herein, it is denied, and Defendants' motion to stay the Court's TRO pending an emergency appeal is also denied. See document for details. Signed by Judge Amir H. Ali on 2/22/2025. (lcaha3) (Entered: 02/22/2025) |
| 02/24/2025 | 36 | Emergency MOTION to Enforce *Temporary Restraining Order* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Eric Bjornlund, # 2 Declaration of Zan Northrip, # 3 Declaration of Phillip Green, # 4 Declaration of Elisabeth Sigler, # 5 Text of Proposed Order)(Wirth, Stephen) (Entered: 02/24/2025) |
| 02/24/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 36 emergency motion to enforce. The Court will hold a telephonic motion hearing on February 25, 2025, at 11:00 a.m. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Signed by Judge Amir H. Ali on 2/24/2025. (lcaha1) Modified on 2/25/2025. (zalh) (Entered: 02/24/2025) |
| 02/25/2025 | 37 | TRANSCRIPT OF MOTION HEARING before Judge Amir H. Ali held on February 25, 2025; Page Numbers: 1-60. Date of Issuance: 2/25/2025. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/18/2025. Redacted Transcript Deadline set for 3/28/2025. Release of Transcript Restriction set for 5/26/2025.(Wayne, Bryan) (Entered: 02/25/2025) |
| 02/25/2025 | | Minute Entry and Order for proceedings held via Zoom before Judge Amir H. Ali: Motion Hearing held on 2/25/2025 re 36 Emergency MOTION to Enforce *Temporary Restraining Order* filed by GLOBAL HEALTH COUNCIL, DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, CHEMONICS INTERNATIONAL, INC., MANAGEMENT SCIENCES FOR HEALTH, INC., HIAS. Oral arguments HEARD, motion GRANTED for the reasons stated on the record. The restrained defendants are ordered to comply as discussed by 11:59 p.m. on February 26, 2025. (Court Reporter Bryan Wayne) (znbn) (Entered: 02/25/2025) |
| 02/25/2025 | 38 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to Order on Motion to Enforce,,, Motion Hearing,, by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED |

| | | |
|---|---|---|
| | | STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) Modified event on 2/26/2025 (mg). (Entered: 02/25/2025) |
| 02/25/2025 | 39 | MOTION to Stay re Order on Motion to Enforce,,, Motion Hearing,, by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Attachments: # 1 Declaration)(Sur, Indraneel) (Entered: 02/25/2025) |
| 02/25/2025 | | USCA Case Number 25-5047 for 38 Notice of Appeal to DC Circuit Court, filed by RUSSELL T. VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, PETER MAROCCO, DONALD J. TRUMP, MARCO RUBIO, UNITED STATES DEPARTMENT OF STATE. (mg) (Entered: 02/26/2025) |
| 02/26/2025 | 40 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 38 Notice of Appeal to DC Circuit Court,. (mg) (Entered: 02/26/2025) |
| 02/26/2025 | 41 | ORDER denying Defendants' 39 motion to stay. See document for details. Defendants shall promptly file notice of this order with the Court of Appeals. Signed by Judge Amir H. Ali on 2/26/2025. (lcaha2) (Entered: 02/26/2025) |
| 02/26/2025 | 42 | Joint STATUS REPORT by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Zahra Doe, # 2 Declaration of Della Doe, # 3 Declaration of Ellie Doe, # 4 Declaration of Clara Doe, # 5 Declaration of Sandra Doe)(Wirth, Stephen) (Entered: 02/26/2025) |
| 02/26/2025 | 43 | LARGE ADDITIONAL ATTACHMENT(S) *Defense Exhibits A and B* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP 42 Status Report, filed by GLOBAL HEALTH COUNCIL, DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, CHEMONICS INTERNATIONAL, INC., MANAGEMENT SCIENCES FOR HEALTH, INC., HIAS. (Attachments: # 1 Declaration)(Sur, Indraneel) (Entered: 02/26/2025) |
| 02/26/2025 | 44 | LARGE ADDITIONAL ATTACHMENT(S) *Defense Exhibit C* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP 43 Large Additional Attachment(s),, filed by RUSSELL T. VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, PETER MAROCCO, DONALD J. TRUMP, MARCO RUBIO, UNITED STATES DEPARTMENT OF STATE. (Sur, Indraneel) (Entered: 02/26/2025) |
| 02/26/2025 | 45 | NOTICE *by Defense in Clarification* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF |

| | | |
|---|---|---|
| | | MANAGEMENT AND BUDGET, DONALD J. TRUMP re 42 Status Report, (Sur, Indraneel) (Entered: 02/26/2025) |
| 02/27/2025 | 46 | REPLY to opposition to motion re 4 Motion for TRO,, Motion for Preliminary Injunction, filed by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Can Varol, # 2 Declaration of James Butcher, # 3 Declaration of Jane Doe, # 4 Declaration of Jessica Doe, # 5 Declaration of Jocelyn Doe, # 6 Text of Proposed Order)(Wirth, Stephen) (Entered: 02/27/2025) |
| 03/03/2025 | 47 | MOTION for Leave to File *Supplement to the Record* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Nicholas Enrich, # 2 Exhibit (OMB Budget Data Request No. 25-08), # 3 Text of Proposed Order)(Wirth, Stephen) (Entered: 03/03/2025) |
| 03/03/2025 | | MINUTE ORDER. The Court's hearing on preliminary injunction motions in this case and No. 25-cv-00400, planned for March 4, 2025, will be held on March 6, 2025, at 2:00 p.m. in Courtroom 19- In Person before Judge Amir H. Ali. The Court will consider the parties' arguments and issue an opinion thereafter with full dispatch. The expiration date for the Court's temporary restraining order remains 11:59 p.m. on March 10, 2025, or the date the Court resolves the preliminary injunction motions, whichever is sooner. Signed by Judge Amir H. Ali on 3/3/2025. (lcaha2) Modified on 3/4/2025. (zalh) (Entered: 03/03/2025) |
| 03/03/2025 | 48 | MOTION for Leave to File *Partially Opposed Surreply* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Attachments: # 1 Proposed Surreply, # 2 Declaration, # 3 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/03/2025) |
| 03/05/2025 | | MINUTE ORDER. The parties shall meet and confer and file a joint status report by 11:00 a.m. tomorrow proposing a schedule for Defendants to come into compliance with the Court's temporary restraining order ("TRO") and the Court's February 25, 2025, order enforcing the TRO. The joint status report need not address compliance with the February 25, 2025, order for the period that the order was subject to administrative stay; however, it should address steps taken during all other periods up until the filing of the joint status report and include specificity with respect to milestones and timelines for Defendants coming into compliance thereafter. The parties' proposed schedule should account for the length of time that has passed since the TRO was entered and the feasibility of any compliance timelines.<br><br>At the preliminary injunction hearing tomorrow, the parties should be prepared to address the substantive arguments at issue in the preliminary injunction motions. The Court will hear argument from all parties; however, Plaintiffs in the two cases are encouraged to coordinate to avoid duplicative arguments and will be given the opportunity to propose a division of the issues between counsel. The parties should also be prepared to discuss the steps Defendants have taken to come into compliance with the Court's orders, including any further steps that were executed following the parties' joint status report, as well as the parties' proposed schedule for Defendants coming into compliance. Signed by Judge Amir H. Ali on 3/5/2025. (lcaha2) (Entered: 03/05/2025) |

A180

| | | |
|---|---|---|
| 03/05/2025 | | MINUTE ORDER. A public access line will be provided for tomorrow's preliminary injunction hearing. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 3/5/2025. (lcaha2) (Entered: 03/05/2025) |
| 03/05/2025 | 49 | Consent MOTION for Leave to File *Response to Plaintiffs' Supplemental Materials* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Attachments: # 1 Response to Plaintiffs' Supplemental Materials, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/05/2025) |
| 03/06/2025 | 50 | Joint STATUS REPORT by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Wirth, Stephen) (Entered: 03/06/2025) |
| 03/06/2025 | 51 | NOTICE OF SUPPLEMENTAL AUTHORITY by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP (Sur, Indraneel) (Entered: 03/06/2025) |
| 03/06/2025 | | Minute Entry for proceedings held before Judge Amir H. Ali: Motion Hearing held on 3/6/2025. Oral arguments on preliminary injunction motions heard. (Court Reporter Sonja Reeves) (znbn) (Entered: 03/06/2025) |
| 03/07/2025 | 52 | NOTICE *regarding Court inquiry of March 6, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP re 50 Status Report, (Sur, Indraneel) (Entered: 03/07/2025) |
| 03/07/2025 | 53 | NOTICE *responding to Court's request for information regarding Plaintiffs' and Plaintiffs' members' invoices* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION re Status Conference (Pei, Sally) (Entered: 03/07/2025) |
| 03/07/2025 | | MINUTE ORDER. As discussed at yesterday's hearing, the Court believes it would be helpful to have additional information to serve as benchmarks in assessing feasibility in reaching compliance with the TRO. These benchmarks will allow the Court to continue to provide clarity as to what is needed for compliance with the TRO, while ensuring that due regard is given to feasibility. As the parties discussed, such benchmarks would also be pertinent to the Court's consideration of any relief to be granted in a preliminary injunction. The Court is in receipt of Defendants' 52 notice stating that they are not currently able to provide information regarding the number of payments processed for Plaintiffs as it relates to Defendants' paragraph 10 in the parties' 50 joint status report, and may need until noon on Monday to provide this information. If Plaintiffs can offer any |

information or estimate as to how many outstanding invoices were processed in the period described, they should provide that information to the Court as soon as possible.

Furthermore, in the interest of facilitating the Court's ruling with respect to enabling letter of credit drawdown and reimbursement requests for Plaintiffs and their members, the parties shall confer and file a brief joint status report by 5:00 p.m. today addressing whether such requests have been enabled and if not, the agreed upon timeline for doing so. Signed by Judge Amir H. Ali on 3/7/2025. (lcaha2) (Entered: 03/07/2025)

| 03/07/2025 | 54 | STATUS REPORT *in response to Order of March 7, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 03/07/2025) |
|---|---|---|
| 03/08/2025 | 55 | Unopposed MOTION for Leave to File *Supplemental Declaration* by GLOBAL HEALTH COUNCIL, SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., AMERICAN BAR ASSOCIATION. (Attachments: # 1 Declaration of Vladimir Gurin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10) (Wirth, Stephen) (Entered: 03/08/2025) |
| 03/09/2025 | 56 | Consent MOTION for Leave to File *response to supplemental matter* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Attachments: # 1 Proposed Response, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/09/2025) |
| 03/09/2025 | 57 | NOTICE *of supplemental material* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP re 44 Large Additional Attachment(s),, (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Sur, Indraneel) (Entered: 03/09/2025) |
| 03/10/2025 | 58 | TRANSCRIPT OF MOTION HEARING, ORAL ARGUMENT ON PRELIMINARY INJUNCTION, before Judge Amir H. Ali held on March 6, 2025; Page Numbers: 1-176. Date of Issuance:March 7, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

A182

| | | |
|---|---|---|
| | | Redaction Request due 3/31/2025. Redacted Transcript Deadline set for 4/10/2025. Release of Transcript Restriction set for 6/8/2025.(Reeves, Sonja) (Entered: 03/10/2025) |
| 03/10/2025 | 59 | NOTICE of Supplemental Authority *regarding ruling in 25-cv-469* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP re 51 NOTICE OF SUPPLEMENTAL AUTHORITY (Attachments: # 1 Exhibit)(Sur, Indraneel) Modified event title on 3/11/2025 (znmw). (Entered: 03/10/2025) |
| 03/10/2025 | | MINUTE ORDER. The Constitutional Accountability Center's 26 motion for leave to file an amicus curiae brief; Plaintiffs' 47 55 motions for leave to supplement the record; Defendants' 48 motion for leave to file a sur-reply; and Defendants' 49 56 motions for leave to respond to Plaintiffs' supplemental materials are granted. Signed by Judge Amir H. Ali on 3/10/2025. (lcaha3) (Entered: 03/10/2025) |
| 03/10/2025 | 60 | MEMORANDUM OPINION AND ORDER. Plaintiffs' 4 motion for a preliminary injunction is granted in part and denied in part. See document for details. The parties shall file a joint status report by March 14, 2025, that apprises the Court of Defendants' compliance with this order and proposes a schedule for next steps in this matter. Signed by Judge Amir H. Ali on 3/10/2025. (lcaha2) (Entered: 03/10/2025) |
| 03/11/2025 | | Set/Reset Deadlines: Joint Status Report due by 3/14/2025. (zalh) (Entered: 03/11/2025) |
| 03/14/2025 | 61 | Joint STATUS REPORT *under Order of March 10, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 03/14/2025) |
| 03/17/2025 | 62 | LEAVE TO FILE DENIED- Robert Heghmann's Petition. This document is unavailable as the Court denied its filing. Pro Se party has been notified by first class mail. "LEAVE TO FILE DENIED." Signed by Judge Amir H. Ali on 3/17/2025. (mg) (Entered: 03/17/2025) |
| 03/17/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 61 joint status report. The Court's March 10, 2025, preliminary injunction adopted a feasibility benchmark of approximately 300 payments per day. By March 19, 2025, Defendants shall submit a status report which includes the updated total number of payments for work completed prior to February 13, 2025 (1) which have been processed since March 10 for Plaintiffs; (2) which have been processed since March 10 for non-Plaintiffs; and (3) which remain to be processed for Plaintiffs and non-Plaintiffs. Defendants' status report shall include a proposed timeline for processing the remaining payments that is consistent with the Court's benchmark. Signed by Judge Amir H. Ali on 3/17/2025. (lcaha2) (Entered: 03/17/2025) |
| 03/19/2025 | 63 | STATUS REPORT *under Order of March 17, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 03/19/2025) |

A183

| | | |
|---|---|---|
| 03/24/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 63 status report. Defendants propose to submit another status report by March 27, 2025. Defendants shall file another status report by March 27, 2025, which includes the same information as directed in the Court's March 17, 2025, minute order, and every seven days thereafter until otherwise ordered by the Court. Signed by Judge Amir H. Ali on 3/24/2025. (lcaha2) (Entered: 03/24/2025) |
| 03/27/2025 | 64 | STATUS REPORT *respecting Order of March 24, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 03/27/2025) |
| 03/28/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 64 status report. Defendants' proposed timeline appears consistent with the Court's feasibility benchmark with respect to work completed prior to February 13, 2025. To the extent the parties have outstanding disputes regarding Defendants' compliance, or further information required from Plaintiffs in order for Defendants to meaningfully comply, as it relates to terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, the parties shall meet and confer and attempt to resolve such issues. <br><br> In their next status report, Defendants shall also include (1) the steps they have taken to date to comply with the preliminary injunction's directive that Defendants "are enjoined from unlawfully impounding congressionally appropriated foreign aid funds and shall make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024," and (2) any next steps necessary to come into compliance with that aspect of the Court's preliminary injunction. Signed by Judge Amir H. Ali on 3/28/2025. (lcaha2) (Entered: 03/28/2025) |
| 04/01/2025 | 65 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 60 Memorandum & Opinion, by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) Modified event on 4/2/2025 (mg). (Entered: 04/01/2025) |
| 04/02/2025 | 66 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 65 Notice of Appeal to DC Circuit Court,. (mg) (Entered: 04/02/2025) |
| 04/02/2025 | | USCA Case Number 25-5097 for 65 Notice of Appeal to DC Circuit Court, filed by RUSSELL T. VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, PETER MAROCCO, DONALD J. TRUMP, MARCO RUBIO, UNITED STATES DEPARTMENT OF STATE. (mg) (Entered: 04/02/2025) |
| 04/03/2025 | 67 | STATUS REPORT *under Order of March 28, 2025* by MARCO RUBIO, PETER MAROCCO, RUSSELL T. VOUGHT, UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, DONALD J. TRUMP. (Sur, Indraneel) (Entered: 04/03/2025) |
| 04/05/2025 | 68 | NOTICE of Appearance by Daniel F. Jacobson on behalf of All Plaintiffs (Jacobson, Daniel) (Entered: 04/05/2025) |

A184

| 04/10/2025 | 69 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 04/10/2025) |
|---|---|---|
| 04/11/2025 | 70 | Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling* by DONALD J. TRUMP, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Attachments: # 1 Text of Proposed Order Prp Order re Unopposed Stay Mot Pending Decision on Rule 62.1 Mot) (Sur, Indraneel) (Entered: 04/11/2025) |
| 04/11/2025 | | MINUTE ORDER. Defendants' 70 unopposed motion for a partial administrative stay of this Court's March 10, 2025, preliminary injunction is granted. Pending this Court's ruling on Defendants' 70 motion for an indicative ruling, the preliminary injunction's requirement that "the Restrained Defendants shall not withhold payments or letter of credit drawdowns for work completed prior to February 13, 2025," as to "any grants, cooperative agreements, or contracts for foreign assistance" is stayed except as it relates to Plaintiffs in No. 25-cv-00400 and No. 25-cv-00402. Plaintiffs shall respond to Defendants' motion for an indicative ruling by April 16, 2025. Defendants shall file any reply by April 18, 2025. <br><br> Defendants' April 10, 2025, status report states that they expect to be in full compliance with the preliminary injunction as it relates to payments to Plaintiffs by April 25, 2025. Defendants' April 3, 2025, status report also states that they are engaged in a programmatic review of foreign assistance programs related to the obligation of appropriated foreign assistance funds and that the review will be complete by April 19, 2025. Defendants' status reports should continue to provide updates on these topics and any other updates related to compliance with the preliminary injunction. Signed by Judge Amir H. Ali on 4/11/2025. (lcaha2) Modified on 4/16/2025. (zalh) (Entered: 04/11/2025) |
| 04/11/2025 | | MINUTE ORDER. The Court will hold a status conference on May 6, 2025, at 2:30 p.m. in Courtroom 19. Signed by Judge Amir H. Ali on 4/11/2025. (lcaha2) (Entered: 04/11/2025) |
| 04/14/2025 | | MINUTE ORDER. The briefing schedule for Defendants' 70 motion for an indicative ruling is amended as follows: Plaintiffs shall respond to Defendants' motion by April 25, 2025. Defendants shall file any reply by May 2, 2025. Signed by Judge Amir H. Ali on 4/14/2025. (lcaha2) (Entered: 04/14/2025) |
| 04/17/2025 | 71 | NOTICE of Appearance by John Robinson on behalf of All Plaintiffs (Robinson, John) (Entered: 04/17/2025) |
| 04/17/2025 | 72 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 04/17/2025) |
| 04/22/2025 | 73 | AMENDED COMPLAINT *OF GLOBAL HEALTH COUNCIL PLAINTIFFS* against All Defendants filed by DEMOCRACY INTERNATIONAL, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES, GLOBAL HEALTH COUNCIL, CONSTITUTIONAL ACCOUNTABILITY CENTER, DAI GLOBAL LLC, HIAS, AMERICAN BAR ASSOCIATION, MANAGEMENT SCIENCES FOR |

A185

| | | |
|---|---|---|
| | | HEALTH, INC., CHEMONICS INTERNATIONAL, INC..(Jacobson, Daniel) (Entered: 04/22/2025) |
| 04/22/2025 | 74 | MANDATE of USCA as to 38 Notice of Appeal to DC Circuit Court, filed by RUSSELL T. VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, PETER MAROCCO, DONALD J. TRUMP, MARCO RUBIO, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 25-5047. (Attachments: # 1 USCA Order 2/26/2025)(mg) (Entered: 04/23/2025) |
| 04/24/2025 | 75 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 04/24/2025) |
| 04/25/2025 | 76 | ENTERED IN ERROR.....Memorandum in opposition to re 70 Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling* filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) Modified on 4/29/2025, refiled at docket entry 77 (mg). (Entered: 04/25/2025) |
| 04/25/2025 | 77 | Memorandum in opposition to re 70 Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling* filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) (Entered: 04/25/2025) |
| 04/29/2025 | 78 | Unopposed MOTION for Extension of Time to *respond to amended complaint* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 04/29/2025) |
| 04/29/2025 | | MINUTE ORDER. Defendants' 78 unopposed motion for an extension of time to respond to the amended complaint is granted. Defendants shall respond to the amended complaint by June 3, 2025. Signed by Judge Amir H. Ali on 4/29/2025. (lcaha2) (Entered: 04/29/2025) |
| 05/01/2025 | 79 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 05/01/2025) |
| 05/02/2025 | | MINUTE ORDER. The Court has scheduled a status conference for May 6, 2025, at 2:30 p.m. The parties should be prepared to discuss developments in the case since the preliminary injunction was issued. Each party will also be given an opportunity to make submissions on Defendants' 70 motion for an indicative ruling. Signed by Judge Amir H. Ali on 5/2/2025. (lcaha2) (Entered: 05/02/2025) |
| 05/02/2025 | 80 | REPLY to opposition to motion re 70 Motion to Stay, filed by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR |

| | | INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 05/02/2025) |
|---|---|---|
| 05/04/2025 | 81 | NOTICE OF SUPPLEMENTAL AUTHORITY by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT (Attachments: # 1 Exhibit CADC No. 25-5144 Order (May 3, 2025))(Sur, Indraneel) (Entered: 05/04/2025) |
| 05/05/2025 | 82 | RESPONSE re 79 Status Report filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Exhibit A - Email Chain, # 2 Exhibit B - DOGE, # 3 Exhibit C - USAID KEA Transition Guidance)(Jacobson, Daniel) (Entered: 05/05/2025) |
| 05/06/2025 | | MINUTE ORDER. A public access line will be provided for today's status conference and motion hearing. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 5/6/2025. (lcaha2) (Entered: 05/06/2025) |
| 05/06/2025 | | Minute Entry for proceedings held before Judge Amir H. Ali: Motion Hearing held on 5/6/2025 re 70 Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling*. Oral arguments heard. The Court takes the motion under advisement. (Court Reporter: Stacy Johns) (zalh) (Entered: 05/07/2025) |
| 05/07/2025 | 83 | NOTICE of Appearance by William Perdue on behalf of All Plaintiffs (Perdue, William) (Entered: 05/07/2025) |
| 05/08/2025 | | MINUTE ORDER. In light of attorney William Perdue's 83 notice of appearance, Plaintiffs' 14 motion for leave to appear pro hac vice is denied as moot. Signed by Judge Amir H. Ali on 5/8/2025. (lcaha2) (Entered: 05/08/2025) |
| 05/08/2025 | 84 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 05/08/2025) |
| 05/13/2025 | 85 | ORDER. Defendants' 70 motion for an indicative ruling is denied. The administrative stay entered by the Court on April 11, 2025, is vacated. See document for details. Signed by Judge Amir H. Ali on 5/13/2025. (lcaha2) (Entered: 05/13/2025) |
| 05/15/2025 | 86 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL T. VOUGHT. (Sur, Indraneel) (Entered: 05/15/2025) |
| 05/22/2025 | 87 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES |

A187

| | | |
|---|---|---|
| | | DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/22/2025) |
| 05/29/2025 | 88 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/29/2025) |
| 06/03/2025 | 89 | STRICKEN PURSUANT TO MINUTE ORDER FILED ON 6/5/2025.....MOTION to Dismiss *under Rule 12(b)(1) or 12(b)(6)* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Sur, Indraneel) Modified on 6/6/2025. (zalh) (Entered: 06/03/2025) |
| 06/05/2025 | | MINUTE ORDER. Defendants' 89 motion to dismiss is stricken for failure to comply with Local Civil Rule 7(e). By June 12, 2025, Defendants may either (1) file individual motions of no more than forty-five pages in each of the two cases, or (2) file a consolidated motion of no more than sixty-five pages. Plaintiffs in the two cases may either (1) file individual oppositions of no more than forty-five pages, or (2) file a consolidated opposition of no more than sixty-five pages. Any future enlargements requested in this case shall be accompanied by a motion submitted at least five days before the relevant filing deadline.<br><br>Pursuant to Local Civil Rule 7(b) and (d), Plaintiffs' oppositions are due fourteen days after service of Defendants' renewed motions; Defendants' replies are due seven days after service of the oppositions. Signed by Judge Amir H. Ali on 6/5/2025. (lcaha2) (Entered: 06/05/2025) |
| 06/05/2025 | 90 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 06/05/2025) |
| 06/12/2025 | 91 | NOTICE of Appearance by Joshua Nathaniel Schopf on behalf of All Defendants (Schopf, Joshua) (Entered: 06/12/2025) |
| 06/12/2025 | 92 | Amended MOTION to Dismiss *combined with No. 25-cv-400*, Amended MOTION to Dismiss for Lack of Jurisdiction *combined with No. 25-cv-400* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 06/12/2025) |
| 06/12/2025 | 93 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, MARCO RUBIO, OFFICE OF MANAGEMENT AND BUDGET, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 06/12/2025) |
| 06/20/2025 | 94 | STATUS REPORT by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR |

A188

| | | |
|---|---|---|
| | | INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 06/20/2025) |
| 06/23/2025 | 95 | Consent MOTION for Extension of Time to File Response/Reply as to 92 Amended MOTION to Dismiss *combined with No. 25-cv-400*Amended MOTION to Dismiss for Lack of Jurisdiction *combined with No. 25-cv-400* , Consent MOTION for Leave to File Excess Pages by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) (Entered: 06/23/2025) |
| 06/23/2025 | | MINUTE ORDER. Plaintiffs' 95 consent motion for extension of time to respond to Defendants' 92 motion to dismiss is granted. Plaintiffs' deadline to respond to the motion to dismiss is extended to July 17, 2025. Plaintiffs may file a combined sixty-page memorandum in opposition to the motion to dismiss and in support of Plaintiffs' forthcoming motion for a preliminary injunction and/or summary judgment. Signed by Judge Amir H. Ali on 6/23/2025. (lcaha2) (Entered: 06/23/2025) |
| 06/24/2025 | 96 | NOTICE of Appearance by Samuel Francis Callahan on behalf of All Plaintiffs (Callahan, Samuel) (Entered: 06/24/2025) |
| 06/24/2025 | 97 | MOTION to Enforce *Preliminary Injunction* by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Text of Proposed Order) (Jacobson, Daniel) (Entered: 06/24/2025) |
| 06/24/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 97 motion to enforce the preliminary injunction. Defendants shall respond to the motion by June 30, 2025. Plaintiffs shall file any reply by July 3, 2025. Signed by Judge Amir H. Ali on 6/24/2025. (lcaha2) (Entered: 06/24/2025) |
| 06/26/2025 | 98 | STATUS REPORT by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 06/26/2025) |
| 06/30/2025 | 99 | Memorandum in opposition to re 97 MOTION to Enforce *Preliminary Injunction* filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 06/30/2025) |
| 07/03/2025 | 100 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/03/2025) |
| 07/03/2025 | 101 | REPLY to opposition to motion re 97 Motion to Enforce, filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS |

A189

| | | ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Declaration of Zahra Doe)(Jacobson, Daniel) (Entered: 07/03/2025) |
|---|---|---|
| 07/08/2025 | 102 | Unopposed MOTION for Leave to File *surreply re GHC Plaintiffs' motion to enforce* by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 prp surreply, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 07/08/2025) |
| 07/10/2025 | 103 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/10/2025) |
| 07/11/2025 | 104 | MOTION To Hold in Abeyance Briefing Schedule on Defendants' Motion to Dismiss re 92 Amended MOTION to Dismiss *combined with No. 25-cv-400*Amended MOTION to Dismiss for Lack of Jurisdiction *combined with No. 25-cv-400* by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) (Entered: 07/11/2025) |
| 07/15/2025 | | MINUTE ORDER. Plaintiffs' 104 motion to hold in abeyance the briefing schedule on Defendants' 92 motion to dismiss is granted. The briefing schedule on Defendants' 92 motion to dismiss is held in abeyance pending the D.C. Circuit's ruling on Defendants' appeal of the preliminary injunction. Within three days of the D.C. Circuit's decision in the pending appeal, the parties shall submit a joint status report proposing a new briefing schedule. Signed by Judge Amir H. Ali on 7/15/2025. (lcaha2) (Entered: 07/15/2025) |
| 07/17/2025 | 105 | MOTION to Withdraw as Attorney *Allison Gardner* by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Gardner, Allison) (Entered: 07/17/2025) |
| 07/17/2025 | 106 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/17/2025) |
| 07/18/2025 | | MINUTE ORDER. Plaintiffs' 105 motion to withdraw the appearance of attorney Allison Gardner is granted. Gardner is hereby terminated as counsel for Plaintiffs, who remain represented by other counsel. Signed by Judge Amir H. Ali on 7/18/2025. (lcaha2) (Entered: 07/18/2025) |
| 07/21/2025 | | MINUTE ORDER. Defendants' 102 unopposed motion for leave to file a sur-reply regarding Plaintiffs' 97 motion to enforce the preliminary injunction is granted. Signed by Judge Amir H. Ali on 7/21/2025. (lcaha2) (Entered: 07/21/2025) |
| 07/21/2025 | 107 | ORDER. Plaintiffs' 97 motion to enforce the preliminary injunction is granted in part and denied in part. See document for details. Defendants shall file any response to Plaintiffs' request to depose their declarant in aid of enforcing the preliminary injunction by July 23, |

A190

| | | 2025, and Plaintiffs shall file any reply by July 25, 2025. Signed by Judge Amir H. Ali on 7/21/2025. (lcaha2) (Entered: 07/21/2025) |
|---|---|---|
| 07/21/2025 | 112 | SURREPLY to re 97 MOTION to Enforce *Preliminary Injunction* filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (mg) (Entered: 08/04/2025) |
| 07/23/2025 | 108 | SUPPLEMENTAL MEMORANDUM to re 97 Motion to Enforce,, Set/Reset Deadlines, *in further opposition to GHC Motion to Enforce* filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) Modified link on 7/24/2025 (mg). (Entered: 07/23/2025) |
| 07/24/2025 | 109 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/24/2025) |
| 07/25/2025 | 110 | REPLY re 97 MOTION to Enforce *Preliminary Injunction in support of request to depose Jeremy Lewin* filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) (Entered: 07/25/2025) |
| 07/31/2025 | 111 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/31/2025) |
| 08/07/2025 | 113 | STATUS REPORT by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 08/07/2025) |
| 08/08/2025 | 114 | NOTICE OF WITHDRAWAL OF APPEARANCE as to DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Edelman, Christopher) (Entered: 08/08/2025) |
| 08/11/2025 | 115 | MOTION to Clarify re 107 Order on Motion to Enforce,, Set/Reset Deadlines, by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/11/2025) |
| 08/14/2025 | 116 | STATUS REPORT by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 08/14/2025) |

A191

| 08/15/2025 | 117 | MOTION to Stay re 60 Memorandum & Opinion, *for partial stay pending D.C. Circuit mandate issuance* by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/15/2025) |
|---|---|---|
| 08/15/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 117 motion for partial stay of preliminary injunction pending issuance of D.C. Circuit mandate. Plaintiffs shall respond to the motion by August 19, 2025. Defendants shall file any reply by August 20, 2025. Signed by Judge Amir H. Ali on 8/15/2025. (lcaha2) (Entered: 08/15/2025) |
| 08/18/2025 | 118 | Joint STATUS REPORT by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) (Entered: 08/18/2025) |
| 08/19/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 118 joint status report. Within three days of the D.C. Circuit's disposition of Plaintiffs' pending petition for en banc rehearing, the parties shall submit a joint status report proposing a new briefing schedule on Defendants' 92 motion to dismiss. Signed by Judge Amir H. Ali on 8/19/2025. (lcaha2) (Entered: 08/19/2025) |
| 08/19/2025 | 119 | RESPONSE re 117 MOTION to Stay re 60 Memorandum & Opinion, *for partial stay pending D.C. Circuit mandate issuance* filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) (Entered: 08/19/2025) |
| 08/20/2025 | 120 | NOTICE OF SUPPLEMENTAL AUTHORITY by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES (Attachments: # 1 Exhibit A - Order)(Jacobson, Daniel) (Entered: 08/20/2025) |
| 08/20/2025 | | MINUTE ORDER. The Court will hold a status conference on August 25, 2025, at 1:30 p.m. in Courtroom 19. Defendants are reminded, consistent with the en banc D.C. Circuit's order this morning, that "the preliminary injunction that requires the government to obligate the appropriated funds remains in effect." Order, *Glob. Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 20, 2025). Defendants accordingly remain under the obligation to take steps to comply with the preliminary injunction absent further order of the Circuit or this Court. Defendants have previously represented it remains feasible to comply with the requirement to obligate the appropriated funds and that they have developed a plan to do so.<br><br>Defendants should be prepared to discuss at the hearing what steps they have taken and need to take to ensure that compliance remains feasible. Signed by Judge Amir H. Ali on 8/20/2025. (lcaha2) (Entered: 08/20/2025) |

A192

| 08/20/2025 | 121 | REPLY to opposition to motion re 117 Motion to Stay, filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/20/2025) |
|---|---|---|
| 08/21/2025 | 122 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/21/2025) |
| 08/25/2025 | 123 | NOTICE *of recent filing in D.C. Circuit* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit)(Sur, Indraneel) (Entered: 08/25/2025) |
| 08/25/2025 |  | Minute Entry for proceedings held before Judge Amir H. Ali: Status Conference held on 8/25/2025. The Court Heard Oral Arguments From The Parties. (Court Reporter SONJA REEVES.) (mac) (Entered: 08/25/2025) |
| 08/25/2025 | 124 | RESPONSE re 115 MOTION to Clarify re 107 Order on Motion to Enforce,, Set/Reset Deadlines, filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Text of Proposed Order)(Jacobson, Daniel) (Entered: 08/25/2025) |
| 08/25/2025 | 125 | MOTION to Clarify *(Conditional) and for Indicative Ruling* by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Exhibit A - Categories for which Plaintiffs would compete, # 2 Exhibit B - Categories under which Plaintiffs have received awards, # 3 Exhibit C - ABA Declaration, # 4 Exhibit D - Chemonics Declaration, # 5 Exhibit E - DAI Declaration, # 6 Exhibit F - Democracy International Declaration, # 7 Exhibit G - GHC Declaration, # 8 Exhibit H - HIAS Declaration, # 9 Exhibit I - MSH Declaration, # 10 Exhibit J - SBAIC Declaration, # 11 Exhibit K - Explanatory Statement, # 12 Text of Proposed Order)(Jacobson, Daniel) (Entered: 08/25/2025) |
| 08/25/2025 | 126 | ORDER. Defendants' 117 motion for partial stay of preliminary injunction pending issuance of D.C. Circuit mandate is denied. See document for details. The parties shall promptly file notice of this order with the Court of Appeals. Signed by Judge Amir H. Ali on 8/25/2025. (lcaha2) (Entered: 08/25/2025) |
| 08/26/2025 | 127 | TRANSCRIPT OF STATUS CONFERENCE before Judge Amir H. Ali held on August 25, 2025; Page Numbers: 1-60. Date of Issuance: August 26, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. |

A193

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 9/16/2025. Redacted Transcript Deadline set for 9/26/2025. Release of Transcript Restriction set for 11/24/2025.(Reeves, Sonja) (Entered: 08/26/2025)

| 08/27/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 125 conditional motion to clarify preliminary injunction and for indicative ruling asking the Court to clarify the scope of the preliminary injunction in light of the Supreme Court's subsequent decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025). At a status conference earlier this week, Defendants indicated that their change in position as to appropriate next steps was the result of *CASA*, but expressed uncertainty as to prior positions Defendants had taken on appeal regarding appropriate tailoring under *CASA*. ECF No. 127 at 28-30. In the interest of appropriately tailoring the preliminary injunction in light of *CASA*, Defendants shall respond to Plaintiffs' motion by September 3, 2025. Plaintiffs shall file any reply by September 8, 2025. Signed by Judge Amir H. Ali on 8/27/2025. (lcaha2) (Entered: 08/27/2025) |
| --- | --- | --- |
| 08/28/2025 | 128 | STATUS REPORT *under Minute Order* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/28/2025) |
| 08/28/2025 | 138 | MANDATE of USCA as to 65 Notice of Appeal to DC Circuit Court, filed by MARCO A. RUBIO, RUSSELL VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, PETER MAROCCO, DONALD J. TRUMP, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 25-5097. (Attachments: # 1 USCA Judgment 8/28/2025) (mg) (Entered: 09/03/2025) |
| 08/29/2025 | 129 | NOTICE *of Transmittal of Special Message* by DONALD J. TRUMP, JEREMY LEWIN, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit House Letter, # 2 Exhibit Senate Letter, # 3 Exhibit Package Enclosure)(Sur, Indraneel) (Entered: 08/29/2025) |
| 08/29/2025 | 130 | NOTICE of Appearance by Nina Cahill on behalf of All Plaintiffs (Cahill, Nina) (Entered: 08/29/2025) |
| 08/29/2025 | | MINUTE ORDER. The Court will hold a telephonic status conference today at 2:30 p.m. to discuss the parties' proposed next steps in light of the D.C. Circuit's issuance of its amended opinion and mandate. A public access line will be provided for the conference. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 8/29/2025. (lcaha2) (Entered: 08/29/2025) |

| 08/29/2025 | | Minute Entry for telephonic proceedings held before Judge Amir H. Ali: Status Conference held on 8/29/2025. The Court And The Parties Discussed The Current Posture Of This Matter. (Court Reporter SONJA REEVES.) (mac) (Entered: 08/29/2025) |
|---|---|---|
| 08/29/2025 | 131 | TRANSCRIPT OF REMOTE PROCEEDINGS VIA TELECONFERENCE, STATUS CONFERENCE, before Judge Amir H. Ali held on August 29, 2025; Page Numbers: 1-34. Date of Issuance: August 29, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/19/2025. Redacted Transcript Deadline set for 9/29/2025. Release of Transcript Restriction set for 11/27/2025.(Reeves, Sonja) (Entered: 08/29/2025) |
| 08/29/2025 | 132 | MOTION for Leave to File *Second Amended Complaint* by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Exhibit 1 - Second Amended Complaint (redline), # 2 Exhibit 2 - Second Amended Complaint (clean), # 3 Text of Proposed Order)(Jacobson, Daniel) (Entered: 08/29/2025) |
| 08/29/2025 | 133 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction , MOTION for Partial Summary Judgment by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A - categories for which plaintiffs compete, # 3 Exhibit B - categories under which plaintiffs have received awards, # 4 Declaration of Scott Carlson (ABA), # 5 Declaration of James Butcher (Chemonics), # 6 Declaration of Zan Northrip (DAI), # 7 Declaration of Eric Bjornlund (Democracy International), # 8 Declaration of Elisha Dunn-Georgiou (GHC), # 9 Declaration of Mark Hetfield (HIAS), # 10 Declaration of Marian W. Wentworth (MSH), # 11 Declaration of Bradford Johnson (SBAIC), # 12 Statement of Facts, # 13 Text of Proposed Order (Temporary Restraining Order), # 14 Text of Proposed Order (Preliminary Injunction and Partial Summary Judgment)) (Jacobson, Daniel) (Entered: 08/29/2025) |
| 08/29/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 133 motion for a temporary restraining order, preliminary injunction, and partial summary judgment. Defendants shall respond to the motion by August 31, 2025, at 6:00 p.m. Plaintiffs shall file any reply by September 1, 2025, at 6:00 p.m. Signed by Judge Amir H. Ali on 8/29/2025. (lcaha2) (Entered: 08/29/2025) |

A195

| 08/29/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 132 motion for leave to file a second amended complaint. Defendants shall respond to the motion by August 31, 2025, at 6:00 p.m. Plaintiffs shall file any reply by September 1, 2025, at 6:00 p.m. Signed by Judge Amir H. Ali on 8/29/2025. (lcaha2) (Entered: 08/29/2025) |
|---|---|---|
| 08/31/2025 | 134 | RESPONSE re 132 MOTION for Leave to File *Second Amended Complaint* filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/31/2025) |
| 08/31/2025 | 135 | RESPONSE re 133 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction MOTION for Partial Summary Judgment filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Declaration, # 2 Response to Pls Facts Statement, # 3 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/31/2025) |
| 08/31/2025 | 136 | REPLY to opposition to motion re 115 Motion to Clarify, filed by DONALD J. TRUMP, JEREMY LEWIN, PETER MAROCCO, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/31/2025) |
| 09/01/2025 | 137 | REPLY to opposition to motion re 133 Motion for TRO,,,,, Motion for Preliminary Injunction,,,,, Motion for Partial Summary Judgment,,,, filed by AMERICAN BAR ASSOCIATION, CHEMONICS INTERNATIONAL, INC., DAI GLOBAL LLC, DEMOCRACY INTERNATIONAL, INC., GLOBAL HEALTH COUNCIL, HIAS, MANAGEMENT SCIENCES FOR HEALTH, INC., SMALL BUSINESS ASSOCIATION FOR INTERNATIONAL COMPANIES. (Jacobson, Daniel) (Entered: 09/01/2025) |
| 09/03/2025 | 139 | MEMORANDUM OPINION AND ORDER. Plaintiffs' 133 motion for a temporary restraining order, preliminary injunction, and partial summary judgment is granted in part and denied in part. Plaintiffs' 132 motion for leave to file a second amended complaint is granted. The Clerk of Court is directed to file Plaintiffs' second amended complaint (ECF No. 132-2) on the docket. See document for details. Signed by Judge Amir H. Ali on 9/3/2025. (lcaha2) (Entered: 09/03/2025) |
| 09/04/2025 | 140 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 139 Memorandum & Opinion, by PETER MAROCCO, UNITED STATES DEPARTMENT OF STATE, JEREMY LEWIN, DONALD J. TRUMP, RUSSELL VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT AND BUDGET, MARCO A. RUBIO. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) (Entered: 09/04/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/04/2025 14:34:52 | | |
| **PACER Login:** | bjspringer | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-00402-AHA |

A196

| Billable Pages: | 30 | Cost: | 3.00 |

A197

APPEAL,TYPE-D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25-cv-00400-AHA

AIDS VACCINE ADVOCACY COALITION et al v. UNITED STATES DEPARTMENT OF STATE et al
Assigned to: Judge Amir H. Ali
Related Case: 1:25-cv-00402-AHA
Case in other court:  USCA, 25-05046
                              USCA, 25-05098
Cause: 05:551 Administrative Procedure Act

Date Filed: 02/10/2025
Jury Demand: None
Nature of Suit: 360 P.I.: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**AIDS VACCINE ADVOCACY
COALITION**

represented by **Allison Marcy Zieve**
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000
Fax: (202) 588-7795
Email: azieve@citizen.org
*ATTORNEY TO BE NOTICED*

**Nicolas Sansone**
PUBLIC CITIZEN
1600 20th Street NW
Washington, DC 20009
202-588-1000
Email: nsansone@citizen.org
*ATTORNEY TO BE NOTICED*

**Lauren Bateman**
PUBLIC CITIZEN
Litigation Group
1600 20th St NW
Washington, DC 20009
202-588-7739
Email: lbateman@citizen.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOURNALISM DEVELOPMENT
NETWORK, INC.**

represented by **Allison Marcy Zieve**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicolas Sansone**
(See above for address)
*ATTORNEY TO BE NOTICED*

A198

**Lauren Bateman**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**The Center for Victims of Torture**          represented by   **Nicolas Sansone**
2356 University Ave. West                                       (See above for address)
Suite 430                                                      *ATTORNEY TO BE NOTICED*
St. Paul, MN 55114

**Lauren Bateman**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**UNITED STATES DEPARTMENT OF**          represented by   **Indraneel Sur**
**STATE**                                                  U.S. DEPARTMENT OF JUSTICE
                                                           1100 L St. NW
                                                           Washington, DC 20530
                                                           202-616-8488
                                                           Email: Indraneel.Sur@usdoj.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Christopher D. Edelman**
U.S. DEPARTMENT OF JUSTICE
1100 L Street, NW
Washington, DC 20530
202-305-8659
Email: christopher.edelman@usdoj.gov
*TERMINATED: 08/08/2025*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
U.S. DEPARTMENT OF JUSTICE
Civil Division
1100 L Street NW
Washington, DC 20005
202-514-6304
Email: joshua.n.schopf@usdoj.gov
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**UNITED STATES AGENCY FOR**          represented by   **Indraneel Sur**
**INTERNATIONAL DEVELOPMENT**                          (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Christopher D. Edelman**
(See above for address)
*TERMINATED: 08/08/2025*

A199

*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO A. RUBIO**                    represented by    **Indraneel Sur**
*Secretary of State, and Acting Administrator*                        (See above for address)
*of United States Agency for International*                           *LEAD ATTORNEY*
*Development*                                                         *ATTORNEY TO BE NOTICED*

                                                          **Christopher D. Edelman**
                                                          (See above for address)
                                                          *TERMINATED: 08/08/2025*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Joshua Nathaniel Schopf**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**OFFICE OF MANAGEMENT &**             represented by    **Indraneel Sur**
**BUDGET**                                                (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Christopher D. Edelman**
                                                          (See above for address)
                                                          *TERMINATED: 08/08/2025*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Joshua Nathaniel Schopf**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**RUSSELL VOUGHT**                     represented by    **Indraneel Sur**
*Director, Office of Management and Budget*                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Christopher D. Edelman**
                                                          (See above for address)
                                                          *TERMINATED: 08/08/2025*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Joshua Nathaniel Schopf**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

A200

**DONALD J. TRUMP**
*President of the United States of America*

represented by **Indraneel Sur**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher D. Edelman**
(See above for address)
*TERMINATED: 08/08/2025*
*ATTORNEY TO BE NOTICED*

**Joshua Nathaniel Schopf**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**CONSTITUTIONAL
ACCOUNTABILITY CENTER**

represented by **Brianne Jenna Gorod**
CONSTITUTIONAL ACCOUNTABILITY
CENTER
1730 Rhode Island Ave. NW
Suite 1200
Washington, DC 20005
202-296-6889
Email: brianne@theusconstitution.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Miriam Becker-Cohen**
CONSTITUTIONAL ACCOUNTABILITY
CENTER
1200 18th Street, NW
Suite 501
Washington, DC 20036
202-296-6889
Email: miriam@theusconstitution.org
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/10/2025 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants ( Filing fee $ 405 receipt number ADCDC-11470533) filed by JOURNALISM DEVELOPMENT NETWORK, INC., AIDS VACCINE ADVOCACY COALITION. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to Department of State, # 3 Summons to OMB, # 4 Summons to Marco Rubio, # 5 Summons to Donald Trump, # 6 Summons to USAID, # 7 Summons to Russell Vought, # 8 Summons U.S. Attorney's Office, # 9 Summons to Attorney General, # 10 Exhibit State Dep't Memorandum, # 11 Exhibit Declaration of Mitchell Warren, # 12 Exhibit Declaration of Andrew Sullivan)(Bateman, Lauren) (Attachment 1 replaced on 2/11/2025) (znmw). (Entered: 02/10/2025) |
| 02/10/2025 | 2 | NOTICE of Appearance by Nicolas Sansone on behalf of All Plaintiffs (Sansone, Nicolas) (Entered: 02/10/2025) |
| 02/10/2025 | 3 | NOTICE of Appearance by Allison Marcy Zieve on behalf of All Plaintiffs (Zieve, Allison) (Entered: 02/10/2025) |

A201

| | | |
|---|---|---|
| 02/10/2025 | 4 | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 25-239, 25-352. (Zieve, Allison) (Entered: 02/10/2025) |
| 02/10/2025 | 5 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by AIDS VACCINE ADVOCACY COALITION (Zieve, Allison) (Entered: 02/10/2025) |
| 02/10/2025 | 6 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by JOURNALISM DEVELOPMENT NETWORK, INC. (Zieve, Allison) (Entered: 02/10/2025) |
| 02/11/2025 | | Case Assigned to Judge Loren L. AliKhan. (znmw) (Entered: 02/11/2025) |
| 02/11/2025 | 7 | SUMMONS (8) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(znmw) (Entered: 02/11/2025) |
| 02/11/2025 | | MINUTE ORDER: Plaintiffs are hereby ORDERED to show cause on or before February 11, 2025 at 2:00 p.m. as to why this case should not be randomly assigned. It is not obvious that the instant case, which brings claims related to Executive Order 14169, 90 Fed. Reg. 8619, is related to the Office of Management and Budget memorandum that is at issue in *National Council of Nonprofits, et al. v. Office of Management and Budget, et al.*, No. 25-CV-239. Under Local Civil Rule 40.5(a)(3), cases are properly deemed related when they "(i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent." Given that "the mere presence of overlapping parties is not among the bases for a related-case designation," *Klayman v. Porter*, No. 20-CV-3109, 2021 WL 1668067, at *2 (D.D.C. Apr. 28, 2021) (internal quotation marks and citation omitted), Plaintiffs are ordered to show cause as to why this case fits into the "narrow exception," codified in Local Rule 40.5, to the "foundational principle of random assignment only when the relationship between the [related] cases is certain," *Klayman*, 2021 WL 1668067 at *1. Signed by Judge Loren L. AliKhan on 02/11/2025. (lclla1) (Entered: 02/11/2025) |
| 02/11/2025 | 8 | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 1:25-cv-352. (Edelman, Christopher) (Entered: 02/11/2025) |
| 02/11/2025 | 9 | RESPONSE TO ORDER TO SHOW CAUSE re Order to Show Cause,,,,, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Sansone, Nicolas) (Entered: 02/11/2025) |
| 02/11/2025 | | NOTICE OF ERROR regarding 9 Response to Order to Show Cause. Please note the following: Invalid attorney signature-signature on document must match PACER login. Do not refile; future non-compliant documents will be entered in error. (znmw) (Entered: 02/11/2025) |
| 02/11/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' response 9 to the show-cause order, it is hereby ORDERED that Defendants shall file a response to the show-cause order on or before February 11, 2025 at 5:00 p.m. Signed by Judge Loren L. AliKhan on 02/11/2025. (lclla1) (Entered: 02/11/2025) |
| 02/11/2025 | 10 | RESPONSE TO ORDER TO SHOW CAUSE re Order, filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Edelman, Christopher) (Entered: 02/11/2025) |
| 02/11/2025 | 11 | ERRATA re 1 Complaint by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) Modified on 2/12/2025 to add link (mg). (Entered: 02/11/2025) |

A202

| 02/11/2025 | 12 | ORDER directing the Clerk of Court to TRANSFER this matter to the Calendar and Case Management Committee. See order for details. Signed by Judge Loren L. AliKhan on 02/11/2025. (lclla1) (Entered: 02/11/2025) |
|---|---|---|
| 02/11/2025 | | Case randomly reassigned to Judge Amir H. Ali pursuant to 12 Order dated 2/11/2025. Judge Loren L. AliKhan is no longer assigned to the case. (ztnr) (Entered: 02/12/2025) |
| 02/12/2025 | | MINUTE ORDER. The Court will hold a telephonic motion hearing in No. 25-cv-00400 and No. 25-cv-00402 on February 12, 2025, at 1:30 p.m. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Signed by Judge Amir H. Ali on 2/12/2025. (lcaha2) Modified on 2/12/2025. (zalh) (Entered: 02/12/2025) |
| 02/12/2025 | 13 | MOTION for Temporary Restraining Order by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Memorandum in Support, # 2 Declaration Declaration of Mitchell Warren, # 3 Exhibit Exhibit A to Warren Declaration, # 4 Declaration Declaration of Andrew Sullivan, # 5 Exhibit Exhibit A to Sullivan Declaration, # 6 Text of Proposed Order)(Sansone, Nicolas) (Entered: 02/12/2025) |
| 02/12/2025 | 14 | NOTICE OF RELATED CASE by All Defendants. Case related to Case No. 1:25cv352. (Edelman, Christopher) (Entered: 02/12/2025) |
| 02/12/2025 | | Minute Entry for telephonic proceeding held before Judge Amir H. Ali: Motion Hearing held on 2/12/2025 re 13 Plaintiff's Motion for a Temporary Restraining Order. Oral arguments heard. The Court takes the motion under advisement. A written order is forthcoming via Chambers. The Court orders the parties to submit a proposed order by 4:30 PM today. (Court Reporter: William Zaremba) (zalh) (Entered: 02/12/2025) |
| 02/12/2025 | 15 | NOTICE *Related to February 12, 2025 Hearing* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D - Proposed Order)(Edelman, Christopher) (Entered: 02/12/2025) |
| 02/12/2025 | 16 | NOTICE of Proposed Order by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC. re 13 MOTION for Temporary Restraining Order , Motion Hearing, (Attachments: # 1 Text of Proposed Order)(Sansone, Nicolas) (Entered: 02/12/2025) |
| 02/13/2025 | 17 | ORDER granting in part and denying in part Plaintiffs' 13 motion for a temporary restraining order. See document for details. Signed by Judge Amir H. Ali on 2/13/2025. (lcaha2) (Entered: 02/13/2025) |
| 02/14/2025 | 18 | TRANSCRIPT OF STATUS CONFERENCE - MOTIONS - TEMPORARY RESTRAINING ORDER VIA ZOOM TELECONFERENCE PROCEEDINGS before Judge Amir H. Ali held on February 12, 2025; Page Numbers: 1-74. Court Reporter/Transcriber: William Zaremba; Email: William_Zaremba@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from |

A203

| | | |
|---|---|---|
| | | this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/7/2025. Redacted Transcript Deadline set for 3/17/2025. Release of Transcript Restriction set for 5/15/2025.(Zaremba, William) (Entered: 02/14/2025) |
| 02/14/2025 | 19 | Joint STATUS REPORT by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 02/14/2025) |
| 02/14/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 19 joint status report proposing a briefing schedule. Defendants shall respond to Plaintiffs' 13 motion for preliminary relief by February 21, 2025. Plaintiffs shall reply by 12:00 p.m. on February 27, 2025. Signed by Judge Amir H. Ali on 2/14/2025. (lcaha2) (Entered: 02/14/2025) |
| 02/16/2025 | 20 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 2/11/2025. Answer due for ALL FEDERAL DEFENDANTS by 4/12/2025. (Attachments: # 1 Exhibit Acceptance of Summons)(Bateman, Lauren) (Entered: 02/16/2025) |
| 02/18/2025 | 21 | NOTICE of Appearance by Indraneel Sur on behalf of All Defendants (Sur, Indraneel) (Entered: 02/18/2025) |
| 02/18/2025 | 22 | STATUS REPORT *regarding Compliance* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Exhibit USAID & State Decl, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit OMB Decl)(Sur, Indraneel) (Entered: 02/18/2025) |
| 02/19/2025 | 23 | Unopposed MOTION for Leave to File *Amicus Curiae Brief* by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order)(Gorod, Brianne) (Entered: 02/19/2025) |
| 02/19/2025 | 24 | NOTICE of Appearance by Brianne Jenna Gorod on behalf of CONSTITUTIONAL ACCOUNTABILITY CENTER (Gorod, Brianne) (Entered: 02/19/2025) |
| 02/19/2025 | 25 | NOTICE of Appearance by Miriam Becker-Cohen on behalf of CONSTITUTIONAL ACCOUNTABILITY CENTER (Becker-Cohen, Miriam) (Entered: 02/19/2025) |
| 02/19/2025 | 26 | Emergency MOTION for Contempt by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Exhibit Third Declaration of Mitchell Warren, # 2 Exhibit Third Declaration of Andrew Sullivan, # 3 Exhibit Declaration of Jessica Doe, # 4 Text of Proposed Order Proposed Order) (Bateman, Lauren) (Entered: 02/19/2025) |
| 02/19/2025 | | MINUTE ORDER. Defendants are directed to respond to Plaintiffs' 26 emergency motion for contempt by 1:00 p.m. on February 20, 2025. Signed by Judge Amir H. Ali on 2/19/2025. (lcaha2) (Entered: 02/19/2025) |
| 02/20/2025 | 27 | ERRATA *to ECF 26* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 02/20/2025) |
| 02/20/2025 | 28 | RESPONSE re 26 Emergency MOTION for Contempt filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL |

A204

| | | DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 02/20/2025) |
|---|---|---|
| 02/20/2025 | 29 | REPLY to opposition to motion re 26 Motion for Contempt, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 02/20/2025) |
| 02/20/2025 | 30 | ORDER. Plaintiffs' 26 motion for contempt and to enforce the Court's temporary restraining order is granted in part and denied in part. See document for details. Signed by Judge Amir H. Ali on 2/20/2025. (lcaha2) (Entered: 02/20/2025) |
| 02/21/2025 | | MINUTE ORDER. The parties in this case and No. 25-cv-00402 shall meet and confer and file a consolidated joint status report by February 26, 2025, at 12:00 p.m., addressing Defendants' "prompt compliance with the order." Defendants' Br., ECF No. 28 at 8. Signed by Judge Amir H. Ali on 2/21/2025. (lcaha2) (Entered: 02/21/2025) |
| 02/21/2025 | 31 | STANDING ORDER. The parties are ordered to comply with the directives set forth in the attached standing order. See document for details. Signed by Judge Amir H. Ali on 2/21/2025. (lcaha2) (Entered: 02/21/2025) |
| 02/21/2025 | 32 | MOTION to Clarify re 30 Order on Motion for Contempt, 17 Order on Motion for TRO, Set/Reset Deadlines , MOTION to Stay by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 02/21/2025) |
| 02/21/2025 | 33 | Memorandum in opposition to re 13 Motion for TRO, *combined with opposition in No.402* filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 02/21/2025) |
| 02/22/2025 | 34 | ORDER. To the extent Defendants' 32 motion to clarify is not mooted by the discussion herein, it is denied, and Defendants' motion to stay the Court's TRO pending an emergency appeal is also denied. See document for details. Signed by Judge Amir H. Ali on 2/22/2025. (lcaha3) (Entered: 02/22/2025) |
| 02/24/2025 | | MINUTE ORDER. The Court is in receipt of the emergency motion to enforce filed in No. 25-cv-00402. The Court will hold a telephonic status hearing on February 25, 2025, at 11:00 a.m. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Signed by Judge Amir H. Ali on 2/24/2025. (lcaha1) Modified on 2/25/2025. (zalh) (Entered: 02/24/2025) |
| 02/25/2025 | | Set/Reset Hearings: Status Conference set for 2/25/2025 at 11:00 AM via teleconference before Judge Amir H. Ali. (zalh) (Entered: 02/25/2025) |
| 02/25/2025 | 35 | TRANSCRIPT OF MOTION HEARING before Judge Amir H. Ali held on February 25, 2025; Page Numbers: 1-60. Date of Issuance: 2/25/2025. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the |

A205

| | | |
|---|---|---|
| | | public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/18/2025. Redacted Transcript Deadline set for 3/28/2025. Release of Transcript Restriction set for 5/26/2025.(Wayne, Bryan) (Main Document 35 replaced on 2/25/2025) (znbn). (Entered: 02/25/2025) |
| 02/25/2025 | | Minute Entry and Order for Proceedings held before Judge Amir H. Ali: Status Conference held via Zoom on 2/25/2025. Oral motion by the Plaintiff for " Emergency MOTION to Enforce Temporary Restraining Order", HEARD and GRANTED for the reasons stated on the record after oral argument. The restrained defendants are ORDERED to comply as discussed by 11:59 p.m. on February 26, 2025. (Court Reporter Bryan Wayne) (znbn) (Entered: 02/25/2025) |
| 02/25/2025 | 36 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to Status Conference, by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) Modified event on 2/26/2025 (mg). (Entered: 02/25/2025) |
| 02/25/2025 | 37 | MOTION to Stay re Status Conference, by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Declaration)(Sur, Indraneel) (Entered: 02/25/2025) |
| 02/25/2025 | | USCA Case Number 25-5046 for 36 Notice of Appeal to DC Circuit Court, filed by DONALD TRUMP, RUSSELL VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, UNITED STATES DEPARTMENT OF STATE. (mg) (Entered: 02/26/2025) |
| 02/26/2025 | 38 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 36 Notice of Interlocutory Appeal to DC Circuit Court,. (mg) (Entered: 02/26/2025) |
| 02/26/2025 | 39 | ORDER denying Defendants' 37 motion to stay. See document for details. Defendants shall promptly file notice of this order with the Court of Appeals. Signed by Judge Amir H. Ali on 2/26/2025. (lcaha2) (Entered: 02/26/2025) |
| 02/26/2025 | 40 | Joint STATUS REPORT by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Exhibit Clara Doe Decl., # 2 Exhibit Ellie Doe Decl., # 3 Exhibit Della Doe Decl., # 4 Exhibit Zahra Doe Decl., # 5 Exhibit Sandra Doe Decl.)(Bateman, Lauren) (Entered: 02/26/2025) |
| 02/26/2025 | 41 | LARGE ADDITIONAL ATTACHMENT(S) *Defense Exhibits A and B* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP 40 Status Report, filed by JOURNALISM DEVELOPMENT NETWORK, INC., AIDS VACCINE ADVOCACY COALITION. (Attachments: # 1 Declaration)(Sur, Indraneel) (Entered: 02/26/2025) |
| 02/26/2025 | 42 | LARGE ADDITIONAL ATTACHMENT(S) *Defense Exhibit C* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP 40 Status Report, filed by JOURNALISM |

A206

| | | DEVELOPMENT NETWORK, INC., AIDS VACCINE ADVOCACY COALITION. (Sur, Indraneel) (Entered: 02/26/2025) |
|---|---|---|
| 02/26/2025 | 43 | NOTICE *by Defense in Clarification* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP re 40 Status Report, (Sur, Indraneel) (Entered: 02/26/2025) |
| 02/27/2025 | 44 | MOTION for Leave to File *Supplement to the Record* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Text of Proposed Order Proposed Order)(Bateman, Lauren) (Entered: 02/27/2025) |
| 02/27/2025 | 45 | REPLY to opposition to motion re 13 Motion for TRO, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 02/27/2025) |
| 03/03/2025 | 46 | MOTION for Leave to File *Supplement to the Record* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Exhibit Bateman Declaration, # 2 Text of Proposed Order Proposed Order)(Bateman, Lauren) (Entered: 03/03/2025) |
| 03/03/2025 | | MINUTE ORDER. The Court's hearing on preliminary injunction motions in this case and No. 25-cv-00402, planned for March 4, 2025, will be held on March 6, 2025, at 2:00 p.m. in Courtroom 19- In Person before Judge Amir H. Ali. The Court will consider the parties' arguments and issue an opinion thereafter with full dispatch. The expiration date for the Court's temporary restraining order remains 11:59 p.m. on March 10, 2025, or the date the Court resolves the preliminary injunction motions, whichever is sooner. Signed by Judge Amir H. Ali on 3/3/2025. (lcaha2) Modified on 3/4/2025. (zalh) (Entered: 03/03/2025) |
| 03/03/2025 | 47 | MOTION for Leave to File *Partially Opposed Surreply* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Proposed Surreply, # 2 Declaration, # 3 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/03/2025) |
| 03/05/2025 | | MINUTE ORDER. The parties shall meet and confer and file a joint status report by 11:00 a.m. tomorrow proposing a schedule for Defendants to come into compliance with the Court's temporary restraining order ("TRO") and the Court's February 25, 2025, order enforcing the TRO. The joint status report need not address compliance with the February 25, 2025, order for the period that the order was subject to administrative stay; however, it should address steps taken during all other periods up until the filing of the joint status report and include specificity with respect to milestones and timelines for Defendants coming into compliance thereafter. The parties' proposed schedule should account for the length of time that has passed since the TRO was entered and the feasibility of any compliance timelines.<br><br>At the preliminary injunction hearing tomorrow, the parties should be prepared to address the substantive arguments at issue in the preliminary injunction motions. The Court will hear argument from all parties; however, Plaintiffs in the two cases are encouraged to coordinate to avoid duplicative arguments and will be given the opportunity to propose a division of the issues between counsel. The parties should also be prepared to discuss the steps Defendants have taken to come into compliance with the Court's orders, including any further steps that were executed following the parties' joint status report, as well as the parties' proposed schedule for Defendants coming into compliance. Signed by Judge Amir H. Ali on 3/5/2025. (lcaha2) (Entered: 03/05/2025) |

| | | |
|---|---|---|
| 03/05/2025 | | MINUTE ORDER. A public access line will be provided for tomorrow's preliminary injunction hearing. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 3/5/2025. (lcaha2) (Entered: 03/05/2025) |
| 03/05/2025 | 48 | Consent MOTION for Leave to File *Response to Plaintiffs' Supplemental Materials* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Response to Plaintiffs' Supplemental Materials, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/05/2025) |
| 03/06/2025 | 49 | Joint STATUS REPORT by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 03/06/2025) |
| 03/06/2025 | 50 | ENTERED IN ERROR.....NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP (Lowry, Faith) Modified on 3/6/2025; entered in error at the request of counsel (zdp). (Entered: 03/06/2025) |
| 03/06/2025 | 51 | NOTICE OF SUPPLEMENTAL AUTHORITY by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP (Sur, Indraneel) (Entered: 03/06/2025) |
| 03/06/2025 | | Minute Entry for proceedings held before Judge Amir H. Ali: Motion Hearing held on 3/6/2025. Oral arguments on preliminary injunction motions heard. (Court Reporter Sonja Reeves) (znbn) (Entered: 03/06/2025) |
| 03/07/2025 | 52 | NOTICE *regarding Court inquiry of March 6, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP re 49 Status Report (Sur, Indraneel) (Entered: 03/07/2025) |
| 03/07/2025 | 53 | NOTICE *as to Outstanding Invoices* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC. (Bateman, Lauren) (Entered: 03/07/2025) |
| 03/07/2025 | | MINUTE ORDER. As discussed at yesterday's hearing, the Court believes it would be helpful to have additional information to serve as benchmarks in assessing feasibility in reaching compliance with the TRO. These benchmarks will allow the Court to continue to provide clarity as to what is needed for compliance with the TRO, while ensuring that due regard is given to feasibility. As the parties discussed, such benchmarks would also be pertinent to the Court's consideration of any relief to be granted in a preliminary injunction. The Court is in receipt of Defendants' 52 notice stating that they are not currently able to provide information regarding the number of payments processed for Plaintiffs as it relates to Defendants' paragraph 10 in the parties' 49 joint status report, and may need until noon on Monday to provide this information. If Plaintiffs can offer any information or estimate as to how many outstanding invoices were processed in the period described, they should provide that information to the Court as soon as possible. |

A208

| | | |
|---|---|---|
| | | Furthermore, in the interest of facilitating the Court's ruling with respect to enabling letter of credit drawdown and reimbursement requests for Plaintiffs and their members, the parties shall confer and file a brief joint status report by 5:00 p.m. today addressing whether such requests have been enabled and, if not, the agreed upon timeline for doing so. Signed by Judge Amir H. Ali on 3/7/2025. (lcaha2) (Entered: 03/07/2025) |
| 03/07/2025 | 54 | STATUS REPORT *in response to Order of March 7, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 03/07/2025) |
| 03/07/2025 | 55 | Unopposed MOTION for Leave to File *Supplement to the Record* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Affidavit Second Declaration of Jessica Doe, # 2 Text of Proposed Order)(Bateman, Lauren) (Entered: 03/07/2025) |
| 03/08/2025 | 56 | TRANSCRIPT OF MOTION HEARING, ORAL ARGUMENT ON PRELIMINARY INJUNCTION, before Judge Amir H. Ali held on March 6, 2025; Page Numbers: 1-176. Date of Issuance:March 7, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 3/29/2025. Redacted Transcript Deadline set for 4/8/2025. Release of Transcript Restriction set for 6/6/2025.(Reeves, Sonja) (Main Document 56 replaced on 3/10/2025) (ztnr). (Entered: 03/08/2025) |
| 03/09/2025 | 57 | Consent MOTION for Leave to File *response to supplemental matter* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Proposed Response, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 03/09/2025) |
| 03/09/2025 | 58 | NOTICE *of supplemental material* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP re 42 Large Additional Attachment(s), (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Sur, Indraneel) (Entered: 03/09/2025) |
| 03/10/2025 | 59 | NOTICE of Supplemental Authority *regarding ruling in 25-cv-469* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP re 51 NOTICE OF SUPPLEMENTAL AUTHORITY (Attachments: # 1 Exhibit)(Sur, Indraneel) Modified event title on 3/11/2025 (znmw). (Entered: 03/10/2025) |

A209

| 03/10/2025 | | MINUTE ORDER. The Constitutional Accountability Center's 23 motion for leave to file an amicus curiae brief; Plaintiffs' 44 46 55 motions for leave to supplement the record; Defendants' 47 motion for leave to file a sur-reply; and Defendants' 48 57 motions for leave to respond to Plaintiffs' supplemental materials are granted. Signed by Judge Amir H. Ali on 3/10/2025. (lcaha3) (Entered: 03/10/2025) |
|---|---|---|
| 03/10/2025 | 60 | MEMORANDUM OPINION AND ORDER. Plaintiffs' 13 motion for a preliminary injunction is granted in part and denied in part. See document for details. The parties shall file a joint status report by March 14, 2025, that apprises the Court of Defendants' compliance with this order and proposes a schedule for next steps in this matter. Signed by Judge Amir H. Ali on 3/10/2025. (lcaha2) (Entered: 03/10/2025) |
| 03/10/2025 | 61 | AMICUS BRIEF by CONSTITUTIONAL ACCOUNTABILITY CENTER. (mg) (Entered: 03/11/2025) |
| 03/10/2025 | 62 | SUPPLEMENTAL DECLARATION of Andrew Sullivan re 40 Status Report, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Exhibit)(mg) Modified docket text on 3/12/2025 (mg). (Entered: 03/11/2025) |
| 03/10/2025 | 63 | SUPPLEMENTAL DECLARATION of Lauren Bateman re 40 Status Report, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (mg) Modified docket text on 3/12/2025 (mg). (Entered: 03/11/2025) |
| 03/10/2025 | 64 | SUPPLEMENTAL DECLARATION of Jessica Doe re 40 Status Report, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (mg) Modified docket text on 3/12/2025 (mg). (Entered: 03/11/2025) |
| 03/10/2025 | 65 | SURREPLY to re 13 MOTION for Temporary Restraining Order filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Attachments: # 1 Exhibit)(mg) (Entered: 03/11/2025) |
| 03/10/2025 | 66 | RESPONSE re 63 Supplemental Memorandum, 62 Supplemental Memorandum, filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (mg) Modified docket text on 3/12/2025 (mg). (Entered: 03/11/2025) |
| 03/10/2025 | 67 | RESPONSE re 64 filed by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (mg) Modified link on 3/12/2025 (mg). (Entered: 03/11/2025) |
| 03/11/2025 | | Set/Reset Deadlines: Joint Status Report due by 3/14/2025. (zalh) (Entered: 03/11/2025) |
| 03/14/2025 | 68 | Joint STATUS REPORT *under Order of March 10, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 03/14/2025) |
| 03/17/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 68 joint status report. The Court's March 10, 2025, preliminary injunction adopted a feasibility benchmark of approximately 300 payments per day. By March 19, 2025, Defendants shall submit a status report which includes the updated total number of payments for work completed prior to February 13, 2025 (1) which have been processed since March 10 for Plaintiffs; (2) which have been processed since March 10 for non-Plaintiffs; and (3) which remain to |

A210

| | | |
|---|---|---|
| | | be processed for Plaintiffs and non-Plaintiffs. Defendants' status report shall include a proposed timeline for processing the remaining payments that is consistent with the Court's benchmark. Signed by Judge Amir H. Ali on 3/17/2025. (lcaha2) (Entered: 03/17/2025) |
| 03/19/2025 | 69 | STATUS REPORT *under Order of March 17, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 03/19/2025) |
| 03/24/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 69 status report. Defendants propose to submit another status report by March 27, 2025. Defendants shall file another status report by March 27, 2025, which includes the same information as directed in the Court's March 17, 2025, minute order, and every seven days thereafter until otherwise ordered by the Court. Signed by Judge Amir H. Ali on 3/24/2025. (lcaha2) (Entered: 03/24/2025) |
| 03/26/2025 | 70 | RESPONSE *to Defendants' Status Report re* 69 filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Affidavit Fourth Declaration of Andrew Sullivan, # 2 Affidavit Third Declaration of Mitchell Warren)(Bateman, Lauren) Modified on 3/31/2025 to add link (mg). (Entered: 03/26/2025) |
| 03/27/2025 | 71 | STATUS REPORT *respecting Order of March 24, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 03/27/2025) |
| 03/28/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 71 status report. Defendants' proposed timeline appears consistent with the Court's feasibility benchmark with respect to work completed prior to February 13, 2025. To the extent the parties have outstanding disputes regarding Defendants' compliance, or further information required from Plaintiffs in order for Defendants to meaningfully comply, as it relates to terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, the parties shall meet and confer and attempt to resolve such issues. In their next status report, Defendants shall also include (1) the steps they have taken to date to comply with the preliminary injunction's directive that Defendants "are enjoined from unlawfully impounding congressionally appropriated foreign aid funds and shall make available for obligation the full amount of funds that Congress appropriated for foreign assistance programs in the Further Consolidated Appropriations Act of 2024," and (2) any next steps necessary to come into compliance with that aspect of the Court's preliminary injunction. Signed by Judge Amir H. Ali on 3/28/2025. (lcaha2) (Entered: 03/28/2025) |
| 04/01/2025 | 72 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 60 Memorandum & Opinion, by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO A. RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) Modified event on 4/2/2025 (mg). (Entered: 04/01/2025) |
| 04/02/2025 | 73 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 72 Notice of Appeal to DC Circuit Court,. (mg) (Entered: 04/02/2025) |

| 04/02/2025 | | USCA Case Number 25-5098 for 72 Notice of Appeal to DC Circuit Court, filed by DONALD TRUMP, MARCO A. RUBIO, RUSSELL VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT & BUDGET, UNITED STATES DEPARTMENT OF STATE. (mg) (Entered: 04/02/2025) |
|---|---|---|
| 04/03/2025 | 74 | STATUS REPORT by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 04/03/2025) |
| 04/03/2025 | 75 | STATUS REPORT *under Order of March 28, 2025* by UNITED STATES DEPARTMENT OF STATE, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO A. RUBIO, OFFICE OF MANAGEMENT & BUDGET, RUSSELL VOUGHT, DONALD TRUMP. (Sur, Indraneel) (Entered: 04/03/2025) |
| 04/08/2025 | 76 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint,, *or to otherwise respond to Complaint* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 04/08/2025) |
| 04/09/2025 | | MINUTE ORDER. Defendants' 76 unopposed motion for an extension of time to respond to the complaint is granted. Defendants shall respond to the complaint by May 13, 2025. Signed by Judge Amir H. Ali on 4/9/2025. (lcaha2) (Entered: 04/09/2025) |
| 04/10/2025 | 77 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 04/10/2025) |
| 04/11/2025 | 78 | Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order Prp Order re Unopposed Stay Mot Pending Decision on Rule 62.1 Mot)(Sur, Indraneel) (Entered: 04/11/2025) |
| 04/11/2025 | | MINUTE ORDER. Defendants' 78 unopposed motion for a partial administrative stay of this Court's March 10, 2025, preliminary injunction is granted. Pending this Court's ruling on Defendants' 78 motion for an indicative ruling, the preliminary injunction's requirement that "the Restrained Defendants shall not withhold payments or letter of credit drawdowns for work completed prior to February 13, 2025," as to "any grants, cooperative agreements, or contracts for foreign assistance" is stayed except as it relates to Plaintiffs in No. 25-cv-00400 and No. 25-cv-00402. Plaintiffs shall respond to Defendants' motion for an indicative ruling by April 16, 2025. Defendants shall file any reply by April 18, 2025.<br><br>Defendants' April 10, 2025, status report states that they expect to be in full compliance with the preliminary injunction as it relates to payments to Plaintiffs by April 25, 2025. Defendants' April 3, 2025, status report also states that they are engaged in a programmatic review of foreign assistance programs related to the obligation of appropriated foreign assistance funds and that the review will be complete by April 19, 2025. Defendants' status reports should continue to provide updates on these topics and any other updates related to compliance with the preliminary injunction. Signed by Judge Amir H. Ali on 4/11/2025. (lcaha2) Modified on 4/16/2025. (zalh) (Entered: 04/11/2025) |
| 04/11/2025 | | MINUTE ORDER. The Court will hold a status conference on May 6, 2025, at 2:30 p.m. in Courtroom 19. Signed by Judge Amir H. Ali on 4/11/2025. (lcaha2) (Entered: |

A212

| | | |
|---|---|---|
| | | 04/11/2025) |
| 04/11/2025 | 79 | Unopposed MOTION for Extension of Time to *Respond to Motion for Indicative Ruling* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Attachments: # 1 Text of Proposed Order)(Zieve, Allison) (Entered: 04/11/2025) |
| 04/14/2025 | | MINUTE ORDER. Plaintiffs' 79 unopposed motion for an extension of time is granted. Plaintiffs shall respond to Defendants' 78 motion for an indicative ruling by April 25, 2025. Defendants shall file any reply by May 2, 2025. Signed by Judge Amir H. Ali on 4/14/2025. (lcaha2) (Entered: 04/14/2025) |
| 04/17/2025 | 80 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 04/17/2025) |
| 04/22/2025 | 81 | MANDATE of USCA as to 36 Notice of Appeal to DC Circuit Court, filed by DONALD TRUMP, MARCO A. RUBIO, RUSSELL VOUGHT, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT & BUDGET, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 25-5046. (Attachments: # 1 USCA Order 2/26/2025)(mg) (Entered: 04/23/2025) |
| 04/24/2025 | 82 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 04/24/2025) |
| 04/25/2025 | 83 | Memorandum in opposition to re 78 Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling* filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC.. (Bateman, Lauren) (Entered: 04/25/2025) |
| 04/29/2025 | 84 | Unopposed MOTION for Extension of Time to *respond to amended complaint* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 04/29/2025) |
| 04/29/2025 | | MINUTE ORDER. Defendants' 84 unopposed motion for an extension of time to respond to the expected amended complaint is granted. Defendants shall respond to the amended complaint by June 3, 2025. Signed by Judge Amir H. Ali on 4/29/2025. (lcaha2) (Entered: 04/29/2025) |
| 05/01/2025 | 85 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/01/2025) |
| 05/02/2025 | | MINUTE ORDER. The Court has scheduled a status conference for May 6, 2025, at 2:30 p.m. The parties should be prepared to discuss developments in the case since the preliminary injunction was issued. Each party will also be given an opportunity to make submissions on Defendants' 78 motion for an indicative ruling. Signed by Judge Amir H. Ali on 5/2/2025. (lcaha2) (Entered: 05/02/2025) |
| 05/02/2025 | 86 | AMENDED COMPLAINT against All Defendants filed by JOURNALISM DEVELOPMENT NETWORK, INC., AIDS VACCINE ADVOCACY COALITION, The Center for Victims of Torture.(Bateman, Lauren) (Entered: 05/02/2025) |

A213

| 05/02/2025 | 87 | REPLY to opposition to motion re 78 Motion to Stay, filed by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/02/2025) |
|---|---|---|
| 05/04/2025 | 88 | NOTICE OF SUPPLEMENTAL AUTHORITY by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit CADC No. 25-5144 Order (May 3, 2025))(Sur, Indraneel) (Entered: 05/04/2025) |
| 05/06/2025 | | MINUTE ORDER. A public access line will be provided for today's status conference and motion hearing. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 5/6/2025. (lcaha2) (Entered: 05/06/2025) |
| 05/06/2025 | | Minute Entry for proceedings held before Judge Amir H. Ali: Motion Hearing held on 5/6/2025 re 78 Unopposed MOTION to Stay re 60 Memorandum & Opinion, *and Opposed Motion for Rule 62.1 Indicative Ruling*. Oral arguments heard. The Court takes the motion under advisement. (Court Reporter: Stacy Johns) (zalh) (Entered: 05/07/2025) |
| 05/08/2025 | 89 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/08/2025) |
| 05/12/2025 | 90 | NOTICE *of Supplemental Filings* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture (Bateman, Lauren) (Entered: 05/12/2025) |
| 05/13/2025 | 91 | ORDER. Defendants' 78 motion for an indicative ruling is denied. The administrative stay entered by the Court on April 11, 2025, is vacated. See document for details. Signed by Judge Amir H. Ali on 5/13/2025. (lcaha2) (Entered: 05/13/2025) |
| 05/15/2025 | 92 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/15/2025) |
| 05/22/2025 | 93 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/22/2025) |
| 05/29/2025 | 94 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 05/29/2025) |
| 06/03/2025 | 95 | STRICKEN PURSUANT TO MINUTE ORDER FILED ON 6/5/2025.....MOTION to Dismiss *under Rule 12(b)(1) or 12(b)(6)* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, |

A214

| | | RUSSELL VOUGHT. (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Sur, Indraneel) Modified on 6/6/2025. (zalh) (Entered: 06/03/2025) |
|---|---|---|
| 06/04/2025 | 96 | MOTION to Strike 95 MOTION to Dismiss *under Rule 12(b)(1) or 12(b)(6)* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Text of Proposed Order) (Bateman, Lauren) (Entered: 06/04/2025) |
| 06/04/2025 | 97 | RESPONSE re 96 MOTION to Strike 95 MOTION to Dismiss *under Rule 12(b)(1) or 12(b)(6)* filed by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 06/04/2025) |
| 06/05/2025 | 98 | REPLY to opposition to motion re 96 Motion to Strike, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Bateman, Lauren) (Entered: 06/05/2025) |
| 06/05/2025 | | MINUTE ORDER. Plaintiffs' 96 motion to strike is granted in part and denied in part. Defendants' 95 motion to dismiss is stricken for failure to comply with Local Civil Rule 7(e). By June 12, 2025, Defendants may either (1) file individual motions of no more than forty-five pages in each of the two cases, or (2) file a consolidated motion of no more than sixty-five pages. Plaintiffs in the two cases may either (1) file individual oppositions of no more than forty-five pages, or (2) file a consolidated opposition of no more than sixty-five pages. Any future enlargements requested in this case shall be accompanied by a motion submitted at least five days before the relevant filing deadline.<br><br>Pursuant to Local Civil Rule 7(b) and (d), Plaintiffs' oppositions are due fourteen days after service of Defendants' renewed motions; Defendants' replies are due seven days after service of the oppositions. Signed by Judge Amir H. Ali on 6/5/2025. (lcaha2) (Entered: 06/05/2025) |
| 06/05/2025 | 99 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 06/05/2025) |
| 06/12/2025 | 100 | NOTICE of Appearance by Joshua Nathaniel Schopf on behalf of All Defendants (Schopf, Joshua) (Entered: 06/12/2025) |
| 06/12/2025 | 101 | Amended MOTION to Dismiss for Lack of Jurisdiction *combined with No. 25-cv-402*, Amended MOTION to Dismiss *combined with No. 25-cv-402* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Appendix, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 06/12/2025) |
| 06/12/2025 | 102 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 06/12/2025) |
| 06/12/2025 | 103 | MOTION to Compel *Production of the Administrative Record* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Text of Proposed Order)(Bateman, Lauren) (Entered: 06/12/2025) |

A215

| 06/13/2025 | 104 | MOTION to Enforce *Preliminary Injunction* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Text of Proposed Order)(Bateman, Lauren) (Entered: 06/13/2025) |
|---|---|---|
| 06/16/2025 | | MINUTE ORDER. The Court is in receipt of Plaintiffs' 104 motion to enforce the preliminary injunction. Defendants shall respond to the motion by June 23, 2025. Defendants' response shall include specific details about what steps they have taken to date to come into compliance with the portion of the Court's preliminary injunction order addressing the unlawful impoundment of congressionally appropriated foreign aid funds. Defendants' response shall also include specific details about what steps Defendants intend to take prior to September 30, 2025, to ensure compliance with the preliminary injunction. Plaintiffs shall file any reply by June 27, 2025. Signed by Judge Amir H. Ali on 6/16/2025. (lcaha2) (Entered: 06/16/2025) |
| 06/20/2025 | 105 | STATUS REPORT by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 06/20/2025) |
| 06/23/2025 | | MINUTE ORDER. Plaintiffs' deadline to respond to Defendants' 101 motion to dismiss is extended to July 17, 2025. Signed by Judge Amir H. Ali on 6/23/2025. (lcaha2) (Entered: 06/23/2025) |
| 06/23/2025 | 106 | Memorandum in opposition to re 104 MOTION to Enforce *Preliminary Injunction* filed by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Declaration Declaration ISO opposition)(Sur, Indraneel) (Entered: 06/23/2025) |
| 06/26/2025 | 107 | Memorandum in opposition to re 103 MOTION to Compel *Production of the Administrative Record* filed by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 06/26/2025) |
| 06/26/2025 | 108 | STATUS REPORT by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 06/26/2025) |
| 06/27/2025 | 109 | REPLY to opposition to motion re 104 Motion to Enforce *Preliminary Injunction* filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Declaration Jeff Doe)(Bateman, Lauren) (Entered: 06/27/2025) |
| 07/01/2025 | 110 | NOTICE OF SUPPLEMENTAL AUTHORITY by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit 2025 WL 1773631)(Sur, Indraneel) (Entered: 07/01/2025) |
| 07/03/2025 | 111 | REPLY to opposition to motion re 103 Motion to Compel *Production of the Administrative Record* filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Bateman, Lauren) (Entered: 07/03/2025) |

A216

| | | |
|---|---|---|
| 07/03/2025 | 112 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/03/2025) |
| 07/07/2025 | 113 | RESPONSE re 110 NOTICE OF SUPPLEMENTAL AUTHORITY, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Declaration Declaration of Scott Roehm, # 2 Declaration Fifth Declaration of Andrew Sullivan, # 3 Declaration Fifth Declaration of Mitchell Warren)(Sansone, Nicolas) (Entered: 07/07/2025) |
| 07/10/2025 | 114 | STATUS REPORT *per Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/10/2025) |
| 07/10/2025 | 115 | Unopposed MOTION for Leave to File *surreply re AVAC Plaintiffs' motion to enforce* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 prp surreply, # 2 Text of Proposed Order)(Sur, Indraneel) (Entered: 07/10/2025) |
| 07/15/2025 | | MINUTE ORDER. The briefing schedule on Defendants' 101 motion to dismiss is held in abeyance pending the D.C. Circuit's ruling on Defendants' appeal of the preliminary injunction. Within three days of the D.C. Circuit's decision in the pending appeal, the parties shall submit a joint status report proposing a new briefing schedule. Signed by Judge Amir H. Ali on 7/15/2025. (lcaha2) (Entered: 07/15/2025) |
| 07/16/2025 | 116 | SUPPLEMENTAL MEMORANDUM to re 103 MOTION to Compel *Production of the Administrative Record* filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Sansone, Nicolas) (Entered: 07/16/2025) |
| 07/17/2025 | 117 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/17/2025) |
| 07/21/2025 | | MINUTE ORDER. Defendants' 115 unopposed motion for leave to file a sur-reply regarding Plaintiffs' 104 motion to enforce the preliminary injunction is granted. Signed by Judge Amir H. Ali on 7/21/2025. (lcaha2) (Entered: 07/21/2025) |
| 07/21/2025 | 118 | ORDER. Plaintiffs' 104 motion to enforce the preliminary injunction is granted in part and denied in part. See document for details. Defendants shall file any response to Plaintiffs' request to depose their declarant in aid of enforcing the preliminary injunction by July 23, 2025, and Plaintiffs shall file any reply by July 25, 2025. Signed by Judge Amir H. Ali on 7/21/2025. (lcaha2) (Entered: 07/21/2025) |
| 07/21/2025 | 123 | SURREPLY to re 104 MOTION to Enforce *Preliminary Injunction* filed by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (mg) (Entered: 08/04/2025) |
| 07/23/2025 | 119 | ENTERED IN ERROR.....SUPPLEMENTAL MEMORANDUM to re 118 Order on Motion to Enforce,, Set/Reset Deadlines, *in further opposition to GHC Motion to Enforce* filed by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, |

A217

| | | UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) Modified on 7/24/2025 (mg). (Entered: 07/23/2025) |
|---|---|---|
| 07/24/2025 | | NOTICE OF ERROR regarding 119 Supplemental Memorandum,. The following error(s) need correction: Incorrect case caption/case number. Please refile. Incorrect case. Please refile. (mg) (Entered: 07/24/2025) |
| 07/24/2025 | 120 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/24/2025) |
| 07/25/2025 | 121 | ERRATA *regarding caption of Defendants' supp. br.* by OFFICE OF MANAGEMENT & BUDGET, MARCO RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT re 118 Order on Motion to Enforce,, Set/Reset Deadlines,. (Attachments: # 1 Errata Supp.Br. In Opp'n To GHC Pls' Mot)(Sur, Indraneel) (Entered: 07/25/2025) |
| 07/31/2025 | 122 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 07/31/2025) |
| 08/07/2025 | 124 | STATUS REPORT by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 08/07/2025) |
| 08/08/2025 | 125 | NOTICE OF WITHDRAWAL OF APPEARANCE as to OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. Attorney Christopher D. Edelman terminated. (Edelman, Christopher) (Entered: 08/08/2025) |
| 08/11/2025 | 126 | MOTION to Clarify re 118 Order on Motion to Enforce,, Set/Reset Deadlines by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/11/2025) |
| 08/14/2025 | 127 | STATUS REPORT by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Schopf, Joshua) (Entered: 08/14/2025) |
| 08/15/2025 | 128 | MOTION to Stay re 60 Memorandum & Opinion, *for partial stay pending D.C. Circuit mandate issuance* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Attachments: # 1 Text of Proposed Order)(Sur, Indraneel) (Entered: 08/15/2025) |
| 08/15/2025 | | MINUTE ORDER. The Court is in receipt of Defendants' 128 motion for partial stay of preliminary injunction pending issuance of D.C. Circuit mandate. Plaintiffs shall respond to the motion by August 19, 2025. Defendants shall file any reply by August 20, 2025. Signed by Judge Amir H. Ali on 8/15/2025. (lcaha2) (Entered: 08/15/2025) |

A218

| 08/18/2025 | 129 | Joint STATUS REPORT by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Bateman, Lauren) (Entered: 08/18/2025) |
|---|---|---|
| 08/19/2025 | | MINUTE ORDER. The Court is in receipt of the parties' 129 joint status report. Within three days of the D.C. Circuit's disposition of Plaintiffs' pending petition for en banc rehearing, the parties shall submit a joint status report proposing a new briefing schedule on Defendants' 101 motion to dismiss. Signed by Judge Amir H. Ali on 8/19/2025. (lcaha2) (Entered: 08/19/2025) |
| 08/19/2025 | 130 | RESPONSE re 128 MOTION to Stay re 60 Memorandum & Opinion, *for partial stay pending D.C. Circuit mandate issuance* filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Bateman, Lauren) (Entered: 08/19/2025) |
| 08/20/2025 | | MINUTE ORDER. The Court will hold a status conference on August 25, 2025, at 1:30 p.m. in Courtroom 19. Defendants are reminded, consistent with the en banc D.C. Circuit's order this morning, that "the preliminary injunction that requires the government to obligate the appropriated funds remains in effect." Order, *Glob. Health Council v. Trump*, No. 25-5097 (D.C. Cir. Aug. 20, 2025). Defendants accordingly remain under the obligation to take steps to comply with the preliminary injunction absent further order of the Circuit or this Court. Defendants have previously represented it remains feasible to comply with the requirement to obligate the appropriated funds and that they have developed a plan to do so.

Defendants should be prepared to discuss at the hearing what steps they have taken and need to take to ensure that compliance remains feasible. Signed by Judge Amir H. Ali on 8/20/2025. (lcaha2) (Entered: 08/20/2025) |
| 08/20/2025 | 131 | REPLY to opposition to motion re 128 Motion to Stay, filed by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/20/2025) |
| 08/21/2025 | 132 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/21/2025) |
| 08/25/2025 | 133 | NOTICE *of recent filing in D.C. Circuit* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit)(Sur, Indraneel) (Entered: 08/25/2025) |
| 08/25/2025 | | Minute Entry for proceedings held before Judge Amir H. Ali: Status Conference held on 8/25/2025. The Court Heard Oral Arguments From The Parties. (Court Reporter SONJA REEVES.) (mac) (Entered: 08/25/2025) |
| 08/25/2025 | 134 | RESPONSE re 126 MOTION to Clarify re 118 Order on Motion to Enforce,, Set/Reset Deadlines, filed by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Bateman, Lauren) (Entered: 08/25/2025) |
| 08/25/2025 | 135 | ORDER. Defendants' 128 motion for partial stay of preliminary injunction pending issuance of D.C. Circuit mandate is denied. See document for details. The parties shall |

| | | |
|---|---|---|
| | | promptly file notice of this order with the Court of Appeals. Signed by Judge Amir H. Ali on 8/25/2025. (lcaha2) (Entered: 08/25/2025) |
| 08/25/2025 | 136 | NOTICE *Regarding Global Health Council Plaintiffs' Conditional Motion to Clarify and For Indicative Ruling* by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture (Bateman, Lauren) (Entered: 08/25/2025) |
| 08/26/2025 | 137 | TRANSCRIPT OF STATUS CONFERENCE before Judge Amir H. Ali held on August 25, 2025; Page Numbers: 1-60. Date of Issuance: August 26, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/16/2025. Redacted Transcript Deadline set for 9/26/2025. Release of Transcript Restriction set for 11/24/2025.(Reeves, Sonja) (Entered: 08/26/2025) |
| 08/28/2025 | 138 | TRANSCRIPT OF PROCEEDINGS before Judge Amir H. Ali held on May 6, 2025. Page Numbers: 1-85. Date of Issuance: August 28, 2025. Court Reporter: Stacy Johns. Email address: Stacy_Johns@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/18/2025. Redacted Transcript Deadline set for 9/28/2025. Release of Transcript Restriction set for 11/26/2025.(Johns, Stacy) (Entered: 08/28/2025) |
| 08/28/2025 | 139 | STATUS REPORT *under Minute Order* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/28/2025) |
| 08/28/2025 | 144 | MANDATE of USCA as to 72 Notice of Appeal to DC Circuit Court, filed by MARCO A. RUBIO, RUSSELL VOUGHT, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, OFFICE OF MANAGEMENT & |

A220

| | | |
|---|---|---|
| | | BUDGET, UNITED STATES DEPARTMENT OF STATE ; USCA Case Number 25-5098. (Attachments: # 1 USCA Judgment 8/28/2025)(mg) (Entered: 09/03/2025) |
| 08/29/2025 | 140 | NOTICE *of Transmittal of Special Message* by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT (Attachments: # 1 Exhibit House Letter, # 2 Exhibit Senate Letter, # 3 Exhibit Package Enclosure)(Sur, Indraneel) (Entered: 08/29/2025) |
| 08/29/2025 | | MINUTE ORDER. The Court will hold a telephonic status conference today at 2:30 p.m. to discuss the parties' proposed next steps in light of the D.C. Circuit's issuance of its amended opinion and mandate. A public access line will be provided for the conference. The information for the public access line is as follows: the toll-free number is 833-990-9400, and the Meeting ID is 771021014. Persons remotely accessing court proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. *See In re: Prohibition on Photographing, Recording, Broadcasting, and Livestreaming Judicial Proceedings*, Standing Order 24-31 (JEB) (Sept. 18, 2024). Signed by Judge Amir H. Ali on 8/29/2025. (lcaha2) (Entered: 08/29/2025) |
| 08/29/2025 | | Minute Entry for telephonic proceedings held before Judge Amir H. Ali: Status Conference held on 8/29/2025. The Court And The Parties Discussed The Current Posture Of This Matter. (Court Reporter SONJA REEVES.) (mac) (Entered: 08/29/2025) |
| 08/29/2025 | 141 | TRANSCRIPT OF REMOTE PROCEEDINGS VIA TELECONFERENCE, STATUS CONFERENCE, before Judge Amir H. Ali held on August 29, 2025; Page Numbers: 1-34. Date of Issuance: August 29, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/19/2025. Redacted Transcript Deadline set for 9/29/2025. Release of Transcript Restriction set for 11/27/2025.(Reeves, Sonja) (Entered: 08/29/2025) |
| 08/31/2025 | 142 | REPLY to opposition to motion re 126 Motion to Clarify, filed by OFFICE OF MANAGEMENT & BUDGET, MARCO A. RUBIO, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT. (Sur, Indraneel) (Entered: 08/31/2025) |
| 09/01/2025 | 143 | MOTION for Preliminary Injunction by AIDS VACCINE ADVOCACY COALITION, JOURNALISM DEVELOPMENT NETWORK, INC., The Center for Victims of Torture. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Exhibit A, Second Decl. of Scott Roehm, # 3 Text of Proposed Order)(Bateman, Lauren) (Entered: 09/01/2025) |

A221

| 09/03/2025 | 145 | MEMORANDUM OPINION AND ORDER. Plaintiffs' 143 motion for preliminary injunction is granted. See document for details. Signed by Judge Amir H. Ali on 9/3/2025. (lcaha2) (Entered: 09/03/2025) |
| 09/04/2025 | 146 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 145 Memorandum & Opinion by OFFICE OF MANAGEMENT & BUDGET, UNITED STATES DEPARTMENT OF STATE, RUSSELL VOUGHT, DONALD J. TRUMP, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, MARCO A. RUBIO. Fee Status: No Fee Paid. Parties have been notified. (Sur, Indraneel) (Entered: 09/04/2025) |

| PACER Service Center | | | |
| Transaction Receipt | | | |
| 09/04/2025 14:34:14 | | | |
| PACER Login: | bjspringer | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:25-cv-00400-AHA |
| Billable Pages: | 22 | Cost: | 2.20 |

A222