ORAL ARGUMENT NOT YET SCHEDULED

Nos. 25-5317, 25-5319 (consol.)

# In the United States Court of Appeals for the District of Columbia Circuit

---

AIDS VACCINE ADVOCACY COALITION, *et al.*,

*Plaintiffs-Appellees*,

*v.*

DEPARTMENT OF STATE, *et al.*,

*Defendants-Appellants.*

---

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court for the District of Columbia

---

## OPPOSITION TO EMERGENCY MOTION TO STAY

---

Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine
Advocacy Coalition, et al.*

Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001

*Counsel for Global Health Council, et al.*

**TABLE OF CONTENTS**

INTRODUCTION ..............................................................................1

STATEMENT ...................................................................................3

ARGUMENT ....................................................................................6

    A.   Defendants Have Not Made a Strong Showing that They Are
        Likely to Succeed on the Merits ...........................................6

        1.   The Court's opinion permits claims based on violations of
             appropriations acts ........................................................6

        2.   The ICA does not preclude Plaintiffs' APA claims.....................8

        3.   The appropriations acts mandate that Defendants
             obligate the full amounts specified ...............................11

        4.   Defendants have unlawfully withheld or unreasonably
             delayed obligation of the funds ....................................17

        5.   Defendants' actions are final, contrary to law, and
             arbitrary and capricious.............................................19

    B.   Defendants Will Not Be Irreparably Harmed Absent a Stay ........22

    C.   The Equities and Public Interest Do Not Support a Stay...............25

CONCLUSION.................................................................................25

CERTIFICATE OF COMPLIANCE ................................................27

CERTIFICATE OF SERVICE .........................................................28

# INTRODUCTION

This Court should deny Defendants' motion. There is no "emergency" in Defendants being required to comply with unambiguous statutory mandates that Congress imposed on them long ago. As the district court explained, any "time pressure" Defendants face is "a circumstance of their own creation." A38 n.9. It exists only because they failed to act earlier to fulfill their legal duties.

Plaintiffs' claims are straightforward. The Further Consolidated Appropriations Act of 2024 ("2024 Appropriations Act") and prior appropriations acts mandate that USAID and the State Department obligate particular amounts of foreign assistance funds, for particular purposes, by a particular date: September 30, 2025. Congress did not give the agencies discretion to obligate less than the full amounts appropriated, and it used particularly express language providing that "specifically designated" amounts of money—or "not less than" specific amounts—"shall be made available" for specific purposes. Plaintiffs' claims rest only on these appropriations acts.

It is Defendants that rely on the Impoundment Control Act (ICA) as a defense, but their arguments lack merit. The ICA does not impliedly preclude Plaintiffs from bringing Administrative Procedure Act (APA) claims for violations of the appropriations acts. The Supreme Court has established the right

1

of private plaintiffs to bring such claims, and the ICA provides that "[n]othing contained in this Act … affect[s] in any way the claims … of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3).

The President's submission of a rescission proposal to Congress under the ICA also does not eliminate Defendants' duty under the appropriations acts to obligate funds before they expire. Defendants point to no statutory text that says that, and the ICA itself says the opposite: "Nothing contained in this Act … supersed[es] any provision of law which requires the obligation of budget authority." *Id.* Defendants ignore this controlling provision.

On the equities, the purported harms Defendants invoke are self-inflicted or non-existent. The injunction does not preclude Congress from acting on the rescission proposal, and it expressly does not require Defendants to obligate funds if Congress rescinds them before September 30. Defendants' obligation of funds through agreements with foreign countries is their own choice. And the injunction does not limit Defendants' ability to obligate appropriated funds however they wish, subject to purposes Congress prescribed. Defendants' motion should be denied.

## STATEMENT

1. In the 2024 Appropriations Act, Congress appropriated more than $30 billion in non-military foreign assistance funding to USAID and the State Department across fifteen broad categories of purposes. Pub. L. No. 118-47, div. F, tits. II–III, 138 Stat. 460, 740-49 (2024).

Within the fifteen categories, the 2024 Appropriations Act further specified subcategories of purposes for which USAID and State must obligate specific or minimum amounts of funds. In Section 7019(a), Congress provided that "funds appropriated by this Act under title III through V *shall be made available in the amounts specifically designated* in the respective tables included in the explanation statement." *Id.* § 7019(a), 138 Stat. at 771 (emphasis added). Those tables include line items with specific amounts that must be obligated for defined purposes. *See GHC* ECF 145-1. In Sections 7030-7061, Congress mandates that "not less than" specific amounts of funds "shall be made available" for particular purposes.

On his first day in office, the President issued an executive order purporting to immediately freeze all foreign assistance funding. Exec. Order No. 14,169 at § 2, 90 Fed. Reg. 8619 (Jan. 20, 2025). To implement the order, the

Secretary of State and officials at USAID issued a series of agency memo-
randa immediately halting virtually all foreign assistance funding. *See, e.g.*,
TRO Order 3-4, *GHC* ECF No. 21.

In its March 10, 2025 preliminary injunction, the district court found,
based on the government's official statements and actions, that Defendants
had "no intent to spend" the full amounts of funds appropriated. *GHC* ECF 60
at 31. Defendants have not disputed that fact. On the contrary, even after
March 10 injunction, the government continued to make clear its intent to per-
manently impound the foreign assistance funds. *See* A18-19.

In recent weeks, Defendants have represented that nearly $12 billion in
foreign assistance appropriations from the 2024 Appropriations Act remain
unobligated and will expire on September 30, 2025. *GHC* ECF No. 145. To
date, Defendants have refused to provide information on the amount of foreign
assistance funds from earlier appropriations acts that remain unobligated and
will expire on September 30, or their plans (if any) with respect to those expir-
ing funds. *Id.* at 4.

As for the 2024 Appropriations Act, Defendants recently stated that
they intend to obligate $6.5 billion of expiring funds. *Id.* at 3-4. Defendants also
confirmed that (at least before September 3) they had decided not to obligate

4

the funds in the specific and minimum amounts that Congress required for particular purposes. *See id.* at 4.

For the remaining $4 billion in expiring 2024 funds, Defendants have made clear that they plan to permanently impound these funds through a "pocket rescission." As they previewed in an August 26 Supreme Court filing, Defendants intended to wait until less than 45 days remain before the end of the fiscal year, propose a rescission, and then "allow those funds to expire without obligation if Congress does not act before that date." App. to Stay at 33, *Trump v. Global Health Council*, No. 25A227 (U.S. Aug. 26, 2025). On August 28, Defendants executed this strategy: President Trump submitted a special message to Congress proposing to rescind more than $4 billion in expiring 2024 funds.

2. After this Court substantially amended its prior opinion to leave open Plaintiffs' claims based on violations of the appropriations acts, and the en banc court denied rehearing on that basis, Plaintiffs moved expeditiously for injunctive relief.

The district court granted Plaintiffs' motion. Finding Plaintiffs likely to succeed on the merits of each of their claims, that the record—as supplemented on remand—established that Plaintiffs face irreparable harm absent

5

a preliminary injunction, and that the balance of the equities and the public interest favored an injunction, the Court entered a preliminary injunction requiring the agency Defendants, in relevant part, "to make available for obligation and obligate, by September 30, 2025, for the uses and purposes specified by Congress," the expiring funds from the 2024 Appropriations Acts and prior acts. A41-42.

## ARGUMENT

Defendants cannot establish any of the four factors necessary to justify an emergency stay pending appeal.

### A.    Defendants Have Not Made a Strong Showing that They Are Likely to Succeed on the Merits

####    1.    *The Court's opinion permits claims based on violations of appropriations acts*

Plaintiffs' claims underlying the preliminary injunction rest solely on violations of the 2024 Appropriations Act and prior appropriations acts—not the ICA. These claims are straightforward. The 2024 Appropriations Act and prior acts mandate that Defendants obligate specific amounts of money, for specific purposes, by September 30, 2025. Defendants' duty to comply with these duly-enacted laws remains unless and until Congress enacts new legislation amending or repealing them.

Plaintiffs' claims do not rely on the ICA. The ICA is relevant only insofar as *the government* raises it as a *defense* to the alleged violations of the 2024 Appropriations Act and prior appropriations acts, arguing that the submission of a "special message" precludes APA review and relieves Defendants of their statutory duties to obligate funds. But no more than a federal defense creates a federal cause of action, Defendants' ICA defense does not convert Plaintiffs' appropriations-law claims into ICA claims.

Defendants are thus wrong that "[t]he district court's new injunction plainly is barred by this Court's prior decision," which precluded APA claims to enforce *the ICA*. Mot. 3. This Court amended its opinion to make clear that the Court's holding was limited to whether there was a cause of action to challenge violations of the ICA, and that the Court "[did] not decide whether the ICA precludes suits under the APA to enforce appropriations acts," Am. Op. 29 n.17. Nowhere in the amended opinion did this Court foreclose any judicial review of "the proper understanding of the ICA," as Defendants now posit. Mot. 3. The Court held that Plaintiffs did not have an affirmative cause of action to challenge ICA violations, and nothing more.

7

2.      *The ICA does not preclude Plaintiffs' APA claims*

Plaintiffs maintain a cause of action under the APA to challenge Defendants' violations of the 2024 Appropriations Act and prior appropriations acts, as well as Defendants' arbitrary and capricious decision not to spend the funds regardless of whether the acts mandate their expenditure. Nothing about the ICA or the President's submission of a special message precludes these causes of action.

There is a long history of private plaintiffs successfully challenging the Executive's refusal to spend funds as required under an appropriations act, including under the APA. Almost 200 years ago, the Supreme Court approved a writ of mandamus compelling an agency to release appropriated funds, in an action brought by a private party. *Kendall v. United States ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838).

Nearly 150 years later, the Supreme Court in *Train v. City of New York* reaffirmed the ability of a private party to compel an agency—through an APA action—to comply with a congressional mandate to spend the full sums as Congress directed. 420 U.S. 35 (1975); *see City of New York v. Ruckelshaus*, 358 F. Supp. 669, 673 (D.D.C. 1973) (noting that the Plaintiffs in Train brought an APA claim). Numerous other pre-ICA cases sustained impoundment claims

8

brought by private parties. *See, e.g.*, *Guadamuz v. Ash*, 368 F. Supp. 1233 (D.D.C. 1973); *Louisiana. v. Weinberger*, 369 F. Supp. 856 (E.D. La. 1973); *Nat'l Council of Cmty. Mental Health Ctrs. v. Weinberger*, 361 F. Supp. 897 (D.D.C. 1973); *State Highway Comm'n v. Volpe*, 479 F.2d 1099 (8th Cir. 1973). On top of this long history, the APA carries "a strong presumption of reviewability that can be rebutted only by a clear showing that judicial review would be inappropriate." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C. Cir. 1983) (quotations omitted).

There is no evidence that Congress intended the ICA to strip private plaintiffs of their well-settled ability to bring APA challenges to violations of appropriations acts. The ICA explicitly provides the opposite: "[n]othing contained in this Act … shall be construed as … affecting in any way the claims or defenses of any party to litigation concerning any impoundment." 2 U.S.C. § 681(3). Defendants' stay motion does not even mention § 681(3). *See* A14.

Defendants' argument, moreover, "would upend the objectives of the ICA." *Id.* at 15. It would transform the ICA from a law meant to *prevent* unauthorized impoundments to one that facilitates them by making them harder to challenge. Congress did not "enact[] a self-defeating statute." *Borden v. United States*, 593 U.S. 420, 460 (2021) (quotations omitted).

Defendants indeed conceded in opposing *en banc* rehearing that § 681(3) and cases such as *Train* establish that the ICA does not prohibit private plaintiffs from bringing APA claims for violations of appropriations acts. Defendants expressly stated that "a court could enjoin a refusal to spend appropriated funds where the relevant statutes required that the funds be spent," and that "[n]either the ICA, nor the panel's ruling … , affects any 'preexisting right' that 'injured private parties' may have to enforce statutory obligations through a suit under the APA." *En Banc* Resp. at 15-16, No. 25-5097 (Aug. 20, 2025). Defendants were correct then.

That the President has since submitted a special message to Congress requesting that it rescind some of the relevant funds does not matter. To start, it has no impact on Plaintiffs' claims as to the more than $6.5 billion in expiring funds not included in the special message.

For the more than $4 billion in funds included in the special message, again, § 681(3) expressly provides that nothing in the ICA (including the President's transmission of a rescission proposal) "affect[s]" the right of litigants to challenge a refusal to spend appropriations. Defendants point to nothing in the ICA's text providing otherwise. *Cf.* Mot. 15-17. Their arguments rest on policy concerns and speculation about Congress' intent, but "[o]nly the written

word is the law," *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020). Moreover, Defendants' purported concerns (at 16-17) about pretermitting "interbranch dialogue" are unfounded, given that the injunction requires obligation by September 30 only if Congress has *not* enacted rescission legislation by then. *See* A41-42.

### 3. The appropriations acts mandate that Defendants obligate the full amounts specified

The 2024 Appropriations Act, and the prior appropriations acts that provided foreign assistance funds that will soon expire, mandate that Defendants obligate all of the funds that Congress appropriated for specific foreign assistance purposes. Defendants' radical theory (at 23-24) that appropriations are merely "authorizations to spend" up to the appropriated amount is contrary to this Court's binding precedent and the plain text of the appropriations laws.

Sections 7030 to 7061 mandate that "not less than" specific amounts "shall be made available for" hundreds of different foreign aid purposes. And Section 7019(a) mandates that foreign assistance funds appropriated in the act "shall be made available *in the amounts specifically designated*" in certain tables appended to the act. *Id.* § 7019(a), 138 Stat. at 771 (emphasis added). Congress provided that Defendants may not deviate from these amounts at all for Global Health Program, "may only deviate up to" 5 percent for certain

11

funds in the Economic Support Fund, and "may only deviate up to 10 percent" for all other amounts listed in the table for specific purposes. *Id.* §§ 7019(b), (d)(2), (3).

Defendants have no meaningful response to these provisions. Their motion entirely ignores Sections 7030 to 7061. As for Section 7019(a)'s tables, Defendants assert that this provision is "not a direction that the Executive Branch expend all of the appropriated funds." Mot. 25. But a mandate to make funds available in "amounts specifically designated" for particular purposes is a directive to spend specific amounts of funds for those purposes. For that same reason, Defendants' citation (at 25) to the GAO Redbook for the notion that "shall be available" can be ambiguous is inapt; the language here is "shall be *made* available," and the funds shall be made available in precise dollar "amounts specifically designated," subject to maximum "deviations." That language is unambiguous.

Moreover, for all the foreign assistance funds appropriated in the fifteen relevant categories in Titles III and IV, Congress's appropriation is a mandate that the agency obligate the full amounts provided. This Court has held that an appropriation is a mandate that the Executive Branch spend "the full amount appropriated by Congress for a particular project or program," and

12

that neither the President nor any agency has "unilateral authority to refuse to spend the funds." *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013). Defendants do not address *Aiken*'s controlling holding, which reflects Congress's settled practice in crafting appropriations laws. When Congress gives agencies discretion to spend less than the full appropriated amount, it uses hallmark permissive language—such as appropriating "up to," "not more than," or "sums not exceeding" specific amounts. Examples of such language "abound in our history." *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 442 (2024) (Kagan, J., concurring) (cleaned up); *see also id.* at 432-33 (majority op.); *see* 2 GAO, Principles of Federal Appropriations Law, 6-28 (3d ed. Jan. 2004). Congress uses this language for a reason. Without it, Congress understands that the default rule applies: The agency must spend the full amount.

The ICA, too, "operates on th[is] premise." GAO, B-329092 (Dec. 12, 2017). The ICA creates a procedure for the President to follow when he desires that funds "be rescinded for fiscal or other policy reasons" 2 U.S.C. § 683(a). "If the President could simply decline to spend those funds" because an appropriations on its own does not compel spending the full amounts, "there

would be no need to propose a rescission and get Congress's approval—the President could simply do nothing and let the funds expire unspent." A25.[1]

Congress used the hallmark "not to exceed" language over 200 times in the 2024 Appropriations Act alone. Yet, across fifteen categories of foreign-assistance appropriations in the 2024 Appropriations Act, Congress nowhere used such discretionary language. *See* 138 Stat. at 740-49. Defendants therefore must spend "the full amount appropriated by Congress" for each of the fifteen categories." *Aiken Cnty.*, 725 F.3d at 261 n.1.

The government also claims that, even if the appropriations acts did require Defendants to obligate the full amounts appropriated, the President's submission of a special message to Congress under the ICA relieves them of that duty. This argument has no bearing on the more than $6.5 billion in funds not included in the special message. And the argument has no merit for the funds included in the rescission proposal.

---

[1] The district court's reference to the ICA in this context does not mean that Plaintiffs' claims rested on the ICA, as Defendants suggest. It simply means that the text of one statute (the ICA) is helpful in understanding the proper construction of the different statutes upon which Plaintiffs base their claims (the 2024 Appropriations Act and prior appropriations acts). *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("Congress is aware of existing law when it passes legislation.").

The ICA's plain text refutes Defendants' theory. Congress provided in the ICA: "Nothing contained in this Act . . . shall be construed as . . . superseding any provision of law which requires the obligation of budget authority." *Id.* § 681(4). The 2024 Appropriations Act and prior acts "require[] the obligation of budget authority" before that budget authority expires on September 30, 2025, and nothing in the ICA—including its provisions permitting the President to propose a rescission—"supersedes" those "provisions of law" in the appropriations acts. Only by repealing those laws through new legislation could Congress supersede them. Just as they fail to address § 681(3), Defendants fail to address § 681(4).

Defendants point to no contrary statutory supporting their theory. They assert that "the President is not required to make funds available for obligation unless and until the statutory period [of 45 days] expires." Mot. 18. But they quote no statutory language that says that, and there is none. Defendants cite § 683(b), but that provision nowhere states that an agency need not comply with an appropriation law's requirement to obligate funds before their expiration date. In fact, the statute makes clear that funds must "be made available for obligation" unless and until Congress has "completed action on a rescission

15

bill." Funds cannot be "made available for obligation" if they have expired. *See* GAO, B-330330, at 5 (Dec. 10, 2018) (rejecting pocket-rescissions theory).

If there were any ambiguity, constitutional avoidance resolves it in Plaintiffs' favor. Defendants' theory that the President may unilaterally propose a rescission that causes the funds to expire unless Congress affirmatively votes down the proposal is a near-replica of the Line-Item Veto Act of 1996, struck down in *Clinton v. City of New York*, 524 U.S. 417 (1998). Just like Defendants' theory of the ICA here, the Line-Item Veto Act allowed the President to send a special message to Congress that he intended to cancel appropriations, and the cancellation would be effective unless Congress affirmatively stepped in and passed a disapproval bill. *Id.* at 436-37. Defendants' pocket rescissions paradigm would be unconstitutional for all the same reasons as the Line-Item Veto Act. It would provide the executive, without clear authorization, an "[e]xtraordinary grant[]" of authority to nullify congressional funding decisions through unilateral legislative proposals. *W. Virginia v. EPA*, 597 U.S. 697, 728 (2022). And it would have absurd consequences, permitting the President to impound funds by waiting until just before they lapsed—a day, an hour, even a minute before expiration—unless Congress voted down the proposal in the seconds or minutes permitted.

16

4.    *Defendants have unlawfully withheld or unreasonably delayed obligation of the funds*

Defendants do not contest that, if the appropriation provisions at issue are mandatory, and if the ICA does not preclude Plaintiffs' claims, then Plaintiffs have a valid cause of action and are entitled to relief under the APA or, alternatively, through mandamus.

As to the APA, Defendants contest that there is a challengeable final agency action for purposes of their 5 U.S.C. § 706(2) claims (which is wrong), but they acknowledge (at 21) that finality is not necessary for Plaintiffs' claim under 5 U.S.C. § 706(1) for agency action "unlawfully withheld or unreasonably delayed," which is an independent basis for the district court's injunction. See A28-31.

Defendants do not challenge the district court's analysis under § 706(1). As the court explained, relief is warranted here under both prongs of § 706(1): Defendants' decision not to spend these funds as Congress has directed is agency action "unlawfully withheld" (Defendants have made clear they will not spend these funds as Congress directed) and "unreasonably delayed" (Defendants have stalled obligating these funds for Congress's specified purposes, and they will expire in less than a month). A28. In concluding that Defendants' action was unreasonably delayed, the court found that the six "TRAC factors"

weighed heavily against them. A28 (applying *Telecommunications Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")). Defendants dispute none of the district court's analysis of the *TRAC* factors, and have thus forfeited any argument about how they apply here.

Nor do Defendants dispute the district court's conclusion that, if no APA relief were available, Plaintiffs would be entitled to mandamus in the alternative. A29-31. The court recognized Defendants' "clear, long-recognized duty to spend the funds Congress appropriates for specific purposes," and found a "sufficiently egregious" delay "to warrant mandamus." A30. The court rejected Defendants' argument below—which they have not renewed in this Court and have therefore waived—that "the appropriations acts do not 'impose an enforceable duty to [*Plaintiffs*].'" *Id.* (emphasis added). The court found this case indistinguishable from *Aiken*, where petitioners "had nuclear waste stored in their states due to the absence of a long-term storage site," A30. Despite petitioners' lack of any express statutory right, *see* 42 U.S.C. § 10134, this Court "granted mandamus to compel the commission to resume processing a license application for such a site." *Id.*

Again, Defendants challenge none of this analysis. If they are wrong about the meaning of the appropriations laws and the significance of the ICA,

relief is undisputedly warranted under § 706(1) or alternatively under the Mandamus Act.

     5.     *Defendants' actions are final, contrary to law, and arbitrary and capricious*

Defendants' "unilateral decision not to spend the funds Congress has directed in the appropriations acts" is *also* final agency action that is both contrary to law and arbitrary and capricious under § 706(2). *Contra* Mot. 21 (quoting A18).

To begin, Defendants do not dispute that USAID and the State Department have conclusively decided not to obligate the approximately $4 billion in expiring appropriations identified in the special message. *See* Mot. 21-22. Indeed, they have openly stated (including to the Supreme Court) that they intend to "allow [the] funds to expire without obligation," regardless of whether Congress rescinds the duly enacted appropriations through legislation. App. to Stay at 33, *Trump v. Global Health Council*, No. 25A227 (U.S. Aug. 26, 2025); *see* A18-20. That decision is plainly "final" for purposes of § 706(2) because it is "definitive and has a direct and immediate effect on [Plaintiffs'] day-to-day business," which will be permanently prevented from competing for those expiring funds. *Reliable Automatic Sprinkler Co., Inc. v. Consumer*

*Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (cleaned up). Defendants do not contend otherwise.

As for the other expiring appropriations, Defendants assert (at 22) that "the government still must decide exactly how to obligate the funds" and "has until September 30 to do so." As an initial matter, Defendants do not dispute that they will not obligate expiring funds from appropriations acts *prior* to 2024; they do not deny the district court's finding that they "intend not to spend those funds" A19 n.4.

As for the 2024 appropriations, Defendants have steadfastly disputed that Sections 7019(a) and 7030-7060 of the 2024 Appropriations Act require them to spend the specific or minimum amounts that Congress required be spent for particular purposes in those provisions. Defs.' Opp. at 19-22, *GHC* ECF 135. And just last night, Defendants made clear that—before the injunction—they had decided not to obligate the $6.5 billion in funds in accord with Sections 7019(a) and 7030-7060. Defendants stated that they had decided to use funding "instruments" that "may not specifically address or identify funds for individual earmarks and allocations." JSR at 3, *GHC* ECF 145. The 2024 Appropriations Act requires that—by September 30, 2024—the specific and minimum amounts prescribed in Sections 7019(a) and 7030-7060 "shall be

20

made available" for the specific purposes detailed in those provisions. Defendants had decided *not* to comply with those requirements, and that decision is final.

That final, "unilateral decision not to spend the funds Congress has directed in the appropriations acts" (A18) is contrary to law under § 706(2). *See* A21-26. Separately, Defendants do not contest—and thus waive their ability to contest—that their decision not to obligate the funds is *also* arbitrary and capricious, regardless of whether the appropriations laws impose mandatory commands.[2] The district court determined that Defendants had failed to provide any "explanation for the decision to ignore billions of dollars in appropriated funds rather than obligate them in a manner that aligns with both Congress's stated purposes and the Executive's priorities." A27. And Defendants had also failed to "consider[] the reliance interests of Plaintiffs and other organizations, or the beneficiaries of their services, who have relied on the agencies' longstanding policies and practices." *Id.* Defendants do not dispute either of these determinations, and this Court can uphold the district court's injunction on that basis alone.

---

[2] Defendants also did not contest the district court's arbitrary-and-capricious holding in their motion to stay filed in district court. *See* Fed. R. App. P. 8(a).

Instead, Defendants narrowly challenge the ability of courts to "subject agencies' decisions to withhold funds included in [a rescission package] to arbitrary-and-capricious review" because "the President has determined that the funds should be rescinded." Mot. 19. But it is well-established that agency action taken to implement presidential directives remains reviewable under the APA, except in narrow cases where "the President has final constitutional or statutory responsibility for the final step necessary for the agency action directly to affect the parties." *Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996); *see, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 780, 784-85 (D.C. Cir. 2012). The President has neither constitutional nor statutory responsibility for the final step necessary to obligate or not obligate appropriated funds. Defendants' failure to explain their decision is arbitrary and capricious.

## B.    Defendants Will Not Be Irreparably Harmed Absent a Stay

Defendants contend that the preliminary injunction inflicts irreparable harm because it requires them to obligate funds by September 30, even as Congress is "mulling over" the President's proposal to rescind some of those funds. Mot. 9, 10-11. But the appropriations acts require Defendants to obligate the funds by September 30, and Defendants have been subject to those

22

requirements for the months or years since their enactment. The government suffers no harm from following the law unless and until Congress amends it.

With regard to the approximately $4 billion in funds that are the subject of the President's rescission proposal, Defendants' claims of harms to "an on-going inter-Branch dialogue," Mot. 10-11, ring hollow. A rescission proposal could have been made at any time, including as part of the proposal Congress acted on just months ago, but the current proposal was deliberately timed to ensure that the 45-day period for Congress to act would extend beyond the funds' September 30 expiration date. As Defendants argued to the Supreme Court, absent an injunction ordering them to obligate the funds before they expire, "the President would be able to propose rescissions for the funds that are set to expire on September 30, 2025, and allow those funds to expire without obligation if Congress does not act before that date." App. to Stay at 33, Trump v. Global Health Council, No. 25A227 (U.S. Aug. 26, 2025). The White House put it more starkly, claiming that "it doesn't matter" what Congress does. Jennifer Scholtes & Kyle Cheney, *White House declares $4.9B in foreign aid unilaterally canceled in end-run around Congress' funding power*, Politico (Aug. 29, 2025), https://bit.ly/4mLICwZ. That is a monologue, not a dialogue.

Defendants also claim generically that the injunction harms U.S. foreign policy, but articulates no specific (much less irreparable) interference. Mot. 11-12. Defendants have indicated that their plan for compliance with the injunction would be to obligate some of the funds at issue into bilateral agreements with foreign states. *See* A50-52; Mot. 11-12. But neither the injunction nor the appropriations acts require Defendants to obligate funds through such agreement; that is Defendants' own choice. Regardless, Defendants have not explained how merely entering into negotiations with foreign partners would constitute irreparable harm. Defendants express concern about "reneg[ing]" on commitments to negotiating partners if the government ultimately obtains relief or Congress rescinds the funds. Mot. 12. But negotiations by their nature are subject to judicial and legislative developments, and there is no reason why the United States could not inform its negotiating partners of those contingencies here.

As for the approximately $6.5 billion in expiring funds that Defendants intend—and expect—to be able to obligate by September 30, A159, Defendants do not claim they will be harmed by being required to obligate those funds for the specific programs and purposes set out in the appropriations laws. Defendants contend only that they will suffer irreparable harm from "significant

24

oversight" by the district court over their expenditure of funds. Mot. 13. But the district court has expressly disclaimed any intention to micromanage Defendants' decisions about how to spend the funds. *See* A38, A40.

And Defendants offer no basis to conclude that they would not recoup any funds obligated now, if it ultimately prevails on appeal. Contrary to Defendants' suggestion, recoupment has nothing to do with the size or solvency of Plaintiffs or their members. The injunction requires Defendants to obligate the funds, not disburse them. *See* A41. And Defendants have indicated that, if required, they would obligate funds primarily through inter-agency and bilateral agreements, not to implementing partners directly.

### C.    The Equities and Public Interest Do Not Support a Stay

Finally, the balance of the equities (as well as the government's litigation conduct) weighs against even an administrative stay for the reasons stated by the district court. *See* A38 n.9.

## CONCLUSION

Defendants' motion should be denied.

Dated: September 5, 2025

Respectfully Submitted,

/s/ *Lauren E. Bateman*
Lauren E. Bateman
Nicolas A. Sansone
Allison M. Zieve
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for AIDS Vaccine*
*Advocacy Coalition, et al.*

/s/ *Daniel F. Jacobson*
Daniel F. Jacobson
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(301) 823-1148

William C. Perdue
Sally L. Pei
Stephen K. Wirth
Samuel F. Callahan
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000

*Counsel for Global Health Council,*
*et al.*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), that the attached brief contains 5,107 words and complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century font.

Dated: September 5, 2025                    */s/ Daniel F. Jacobson*
                                            Daniel F. Jacobson

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2025, I caused the foregoing document to be electronically filed using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 5, 2025                    */s/ Daniel F. Jacobson*
                                            Daniel F. Jacobson